SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
GREGORY F. HURLEY, Cal. Bar No. 126791
ghurley@sheppardmullin.com
MICHAEL J. CHILLEEN, Cal. Bar No. 210704
mchilleen@sheppardmullin.com
BRADLEY J. LEIMKUHLER, Cal. Bar No. 261024
bleimkuhler@sheppardmullin.com
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1993
Telephone: 714.513.5100
Facsimile: 714.513.5130

LOS ANGELES COUNTY,
OFFICE OF THE COUNTY COUNSEL
Mary C. Wickham, Cal. Bar No. 145664
Rodrigo A. Castro-Silva, Cal. Bar No. 185251
rcastro-silva@counsel.lacounty.gov
Brandon Nichols, Cal. Bar No. 187188
bnichols@counsel.lacounty.gov
500 W. Temple Street, Rm. 648
Los Angeles, CA 90012
Telephone: 213.974.1811
Facsimile: 213.626.7446

Attorneys for Defendants,
COUNTY OF LOS ANGELES
AND LOS ANGELES COUNTY
SHERIFF JIM MCDONNELL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES AND LOS ANGELES COUNTY SHERIFF JIM MCDONNELL, in his Official Capacity,<br><br>Defendants.<br><br>TERESA POWERS, DAVID PENN, TIMOTHY POLK, MARK SARNI, DERRICK THOMAS, DARSEL WHITFIELD, ROYAL WILLIAMS, AND LEPRIEST VALENTINE,<br><br>Movants. | Case No. 2:15-cv-05903-DDP-JEM<br>Judge: Hon. Dean D. Pregerson<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISQUALIFY MUNGER, TOLLES & OLSON, LLP AS COUNSEL FOR PROPOSED INTERVENORS**<br><br>Date: November 16, 2015<br>Time: 10:00 a.m.<br>Crtm: 3<br><br><br><br>Complaint Filed: August 5, 2015<br>Trial Date: None Set |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION. .................................................................................................1

II. SUMMARY OF RELEVANT FACTS AND PROCEDURAL HISTORY. .............................................................................................................1

    A. THE DEPARTMENT OF JUSTICE INVESTIGATIONS INTO THE COUNTY JAILS. ..........................................................................1

    B. THE CITIZEN'S COMMISSION ON JAIL VIOLENCE. ....................2

    C. REPRESENTATION AGREEMENTS BETWEEN THE MUNGER FIRM AND THE COUNTY. .................................................4

    D. CONCLUSION REGARDING RELEVANT FACTS. .........................5

III. THE MUNGER FIRM SHOULD BE DISQUALIFIED UNDER THE MARCH 1, 2012 AND JANUARY 7, 2013 AGREEMENTS ASSOCIATED WITH THEIR LEGAL REPRESENTATION OF THE COUNTY REGARDING THE CCJV. ............................................................6

    A. THE MARCH 1, 2012 AGREEMENT. ...................................................6

    B. THE JANUARY 7, 2013 AGREEMENT. ...............................................9

IV. EVEN IGNORING THE AGREEMENTS DISCUSSED ABOVE, THE MUNGER FIRM SHOULD BE DISQUALIFIED UNDER THE CALIFORNIA RULES OF PROFESSIONAL CONDUCT BECAUSE OF THEIR PRIOR REPRESENTATION OF THE COUNTY .....................10

V. ETHICAL SCREENING IS NOT AN ADEQUATE CURE OF THE MUNGER FIRM'S CONFLICT OF INTEREST ............................................13

VI. PROPOSED INTERVENORS WILL SUFFER NO PREJUDICE IF THE MUNGER FIRM IS DISQUALIFIED .......................................................14

VII. CONCLUSION. ..................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Airport Car Rental Antitrust Litigation*
  470 F.Supp. 495 (D.C. Cal. 1979) ......................................................................... 14

*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*
  2 Cal.4th 342 (1992) ............................................................................................. 10

*Cho v. Superior Court*
  39 Cal.App.4th 113 (1995) ................................................................................... 13

*CLK, Inc. v. Am. Commercial Capital, LLC*
  No. G033048, 2004 WL 2284271 (Cal. Ct. App. Oct. 12, 2004) ........................ 10

*In re Coordinated Pretrial Proceedings*
  658 F.2d 1355 (9th Cir. 1981) .............................................................................. 11

*In re Corrugated Container Antitrust Life*
  659 F.2d 1341 (5th Cir. 1981) .............................................................................. 15

*David Welch Co. v. Erskine & Tulley*
  203 Cal. App. 3d 884 (1988) ................................................................................ 12

*Elan Transdermal, Ltd. v. Cygnus Therapeutic Sys.*
  809F. Supp. 1383 (N.D. Cal. 1992) ..................................................................... 14

*Fund of Funds. Ltd. v. Arthur Anderson & Co.*
  567 F.2d 225 (2nd Cir. 1977) ............................................................................... 15

*Gas-A-Tron of Arizona v. Union Oil Co.*
  534 F.2d 1322 (9th Cir. 1976) .............................................................................. 13

*Gilbert v. National Corp. for Housing Partnerships*
  71 Cal. App. 4th 1240 (1999) ............................................................................... 15

*Kaiser v. AT & T*
  2002 WL 1362054 (D.Ariz. Apr. 5, 2002) ........................................................... 11

*Klein v. Super. Ct. (Thomas)*
  198 Cal. App. 3d 894 (1988) ................................................................................ 13

*Largo Concrete, Inc. v. Liberty Mut. Fire Ins. Co.*
   No. C 07-4651 CRB, 2007 U.S. Dist. LEXIS 95690
   (N.D. Cal. Dec. 31, 2007) ................................................................................. 14

*MMR/Wallace Power & Indus., Inc. v. Thames Assoc.*
   764 F. Supp. 712 (D. Conn. 1991) .................................................................... 11

*People ex rel. Dept. of Corps, v. Speedee Oil Change Sys., Inc.*
   20 Cal. 4th 1135 (1999) ......................................................................... 12, 13, 15

*Richards v. Holsum Bakery, Inc.*
   2009 WL 3740725 (D.Ariz. Nov. 5, 2009) ................................................. 11, 13

*Roosevelt Irr. Dist. v. Salt River Project Agr. Imp. & Power Dist.*
   810 F. Supp. 2d 929 (D. Ariz. 2011) ................................................................. 11

*Rosas, et al. v. Baca*
   Case No. CV 12-00428 DDP ............................................................................... 2

*Rosas v. McDonnell*
   U.S.D.C Case No. CV 12-00428 DDP ....................................... 2, 5, 8, 9, 10, 12

*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*
   100 Cal. App. 4th 44 (2002) .............................................................................. 10

*Trone v. Smith*
   621 F.2d 994 (9th Cir. 1980) ....................................................................... 12, 15

*William H. Raley Co. v. Super. Ct. (Carroll)*
   149 Cal. App. 3d 1042 (1983) ..................................................................... 13, 14

Statutes

42 U.S.C. § 1997 ........................................................................................................ 1, 2

Other Authorities

American Bar Association ............................................................................................ 11

California Rule of Professional Conduct 3-310(E) ....................................... 1, 11, 12

California Rules of Professional Conduct, Rules 3-310(E) and 3-700(B) .............. 15

Case 2:15-cv-05903-DDP-JEM   Document 44-1   Filed 10/16/15   Page 5 of 20   Page ID #:1003

-iv-

Local Rule 83-3.1.2 ........................................................................................ 11

Notice of Related Case, Page 2:8-18 ................................................................ 10

United States Constitution ................................................................................. 7

SMRH:473440733.1                         MEMORANDUM OF POINTS & AUTHORITIES
                                         IN SUPPORT OF MOTION TO DISQUALIFY

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction.

By this Motion, Defendants County of Los Angeles ("the County") and Sheriff Jim McDonnell, in his official capacity only (collectively "Defendants"), seek an order disqualifying Munger, Tolles & Olson, LLP ("the Munger firm") as counsel for the Proposed Intervenors in this action. As set forth in greater detail below, a conflict of interest exists with respect to the Munger firm's involvement in this case given its prior legal representation of the County.

Specifically, the County retained the Munger firm to provide legal services to the County's Citizens' Commission on Jail Violence ("CCJV"), a body which was created by the County to investigate the treatment of inmates in the Los Angeles County jails, including inmates with mental health issues. As part of this prior representation, the Munger firm and the County executed two agreements which, in conjunction with California Rule of Professional Conduct 3-310(E), prohibit the continued representation of Proposed Intervenors by the Munger firm.

Accordingly, the County respectfully requests that the Court grant this Motion and disqualify the Munger firm from representing Proposed Intervenors, who still have experienced attorneys from Public Counsel to represent their interests herein.

## II. Summary Of Relevant Facts And Procedural History.

### A. The Department Of Justice Investigations Into The County Jails.

This action and the settlement between the Parties herein stems from an investigation pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997, opened in June 1996, by the Department of Justice regarding the treatment of inmates in the County jails. (*See*, Docket No. 14, 4:18-21.) "In December, 2002, following extensive negotiations and additional site visits, the Parties entered into a Memorandum of Agreement (MOA) that outlined a series of reforms to ensure that adequate and reasonable mental health care services are provided at the jails." (*Id.* at 4:1-4.) Separate and apart from the investigation into mental health issues, DOJ opened another CRIPA investigation into allegations

-1-

of the use of excessive force against inmates, including those with mental illness. (*Id*. at 4:15-18.) The issues involved in that investigation were resolved, in part, by a settlement in *Rosas v. McDonnell*, U.S.D.C Case No. CV 12-00428 DDP (SHx), in which the County agreed to implement all of the recommendations from CCJV, as well as adopt significant reforms to its policies and procedures governing the use of force against inmates, including those with mental illness. The Settlement Agreement herein addresses and extends certain aspects of the *Rosas* settlement and resolves both of DOJ's CRIPA investigations. (*Id*. at 5:1-8.)

Despite significant progress, in June 2014, DOJ notified the County of alleged systematic deficiencies associated with the provision of mental health care to County jail inmates and, after extensive subsequent negotiations, in August 2015, the County and DOJ entered into a comprehensive settlement agreement ("the Settlement Agreement") that "addresses the remaining allegations of suicide prevention and mental health care at the jails" and "the remedial measures in the Implementation Plan of the *Rosas* settlement agreement…regarding alleged excessive force against prisoners at all of the Jails." (*Id*.)

The Settlement Agreement was approved by this Court on September 3, 2015. (*See*, Docket No. 13.) On September 28, 2015, Proposed Intervenors filed a Motion to Intervene in this action with the stated intention of modifying the Settlement Agreement. (*See*, Docket No. 17.)

**B.    The Citizen's Commission On Jail Violence.**

In October 2011, the Los Angeles County Board of Supervisors ("the Board") formed the CCJV which was charged with reviewing the Sheriff's Department's policies and procedures associated with the treatment of inmates in County jail and developing proposed corrective action as necessary. (*See*, Exhibit "A" – CCJV Report, September 28, 2012 Cover Letter to the Board.) A partner from the Munger firm, Richard Drooyan, was appointed as the general counsel to CCJV, and the Munger firm "host[ed] and hous[ed] the Commission and its staff." (*Id*. – fn mentioning the Munger firm specifically.)

-2-

The CCJV investigation, like the two CRIPA investigations, included both the issues of the treatment of inmates with mental illness and excessive force, a fact that is evidenced by the numerous references in the final CCJV report regarding mental health issues including, for example, the following:

- The introduction to the CCJV Report notes, "[h]istorically, the greatest number of force incidents have taken place, for example, on the floors in MCJ that house the most dangerous and violent inmates or in the areas of the jail housing **mentally ill inmates**." (Exhibit "A" - CCJV Report, p. 9, emphasis added.)

- In Chapter 2, the CCJV Report discusses reports by the Dr. Terry Kupers, a mental health expert retained by the ACLU, regarding "**mistreatment of inmates with mental illness**." (*Id*. at p. 24, emphasis added.)

- Third Finding of the CCJV was an acknowledgement of the CRIPA investigation by the DOJ that lead to the instant Settlement Agreement. *(Id.* at p. 27-28.)

- Additional references to mental health treatment in the CCJV Report include, for example, all of the following: p. 26 (discussing mental health treatment resources); p. 51 (discussing special populations in the jails, including the mentally ill); p. 59 (discussing jail training specific to the mentally ill); pp. 124 and 136 (discussing increased training for jail staff working with the mentally ill); and p. 131 (discussing the assignment of certain jail staff to housing areas for the mentally ill).

- Much of the information gathered and assessed by the CCJV and its counsel, including massive amounts of documents from the Sheriff's Department and communications with its employees, involved treatment of jail inmates with mental illness. (*See e.g.*, Exhibit "B" - CCJV Meeting Minutes dated March 2, 2012, April 16, 2012, July 6, 2012, and August 3, 2012.)

-3-

Based on the above, during the course of its legal representation of the County, the Munger firm obtained, reviewed, and used confidential information from the Sheriff's Department about mental health treatment and use of force that is directly implicated in the instant matter.

### C. Representation Agreements Between The Munger Firm And The County.

On March 1, 2012, the County and the Munger firm entered into an Agreement for Special Legal Services ("the March 1, 2012 Agreement") for the CCJV. The March 1, 2012 Agreement includes a section entitled "Conflict of Interest", in which the County agreed to waive potential conflicts with the Munger firm with the exception of the following two circumstances:

> (i) during the duration of this Agreement, the County is not waiving any conflicts in any matters in which Munger, Tolles represents a client adverse to a County Entity that arises out of or is based upon any alleged action or inaction by the Sheriff's Department, or any Sheriff's Department deputy or employee, or that arises out of or is based upon the operations of any Los Angeles County Jail facility; and
>
> (ii) for five years after the termination of this Agreement, the County is not waiving any conflicts in any matter in which Munger, Tolles represents a client that is adverse to a County Entity if the matter is substantially related to the Subject Matter.

(*See*, Exhibit "C" – March 1, 2012 Agreement, Page 4, Section 4.1(i) and (ii).)

The Agreement further provides that "[a]ny Munger, Tolles attorneys who serve as General Counsel, Deputy General Counsel or Counsel to the CCJV shall not work on a matter that is substantially related to the Subject Matter and shall be ethically screened from any such Munger Tolles matter in the future." (*Id.* at 4.1.)

Also, the March 1, 2012 Agreement imposes confidentiality objections that "survive…the termination or expiration" of the Agreement. (*See*, *Id*, Page 4, Section 3.6.) While the Subject Matter of the March 1, 2012 Agreement was

limited, on its face, to issues involving allegations of excessive force in the jails, the CCJV investigation, and the advice of counsel who participated therein (including those from the Munger firm), went beyond the subject of excessive force into, for example, mental health issues.

In addition to the March 1, 2012 Agreement, the County and the Munger firm entered into a second Agreement for Special Legal Services related to the implementation of recommendations made by the CCJV dated January 7, 2013 ("the January 7, 2013 Agreement"). The scope of this second Agreement was far broader that the scope of the March 1, 2012 Agreement, because it addressed all of the CCJV recommendations, including those beyond excessive force.

The January 7, 2013 Agreement also includes a conflicts of interest section in which the County waived potential conflicts except in the following situations:

> (i)   during the duration of Munger, Tolles' services under this Agreement in any pending or future matter arising out of…(a) alleged actions or inactions of the Sheriff's Department, or (b) the operations of any Los Angeles County jail" and in which the County, the Sheriff's Department, or the Board of Supervisors is a party and has interests adverse to those of Munger Tolles' client; and (ii) for five years after the termination of Munger Tolles' services pursuant to this Agreement in any matter arising out of facts or circumstances that Drooyan evaluated in his service as Implementation Monitor and in which the County, Sheriff's Department, or the Board of Supervisors is a party and has interests adverse to those of Munger, Tolles' client.

(*See*, Exhibit "D" – January 7, 2013 Agreement, Page 5, Section 4.0.; *see also* Exhibit "E" – November 18, 2013 Amendment).

### D.   Conclusion Regarding Relevant Facts.

As explained above, the CCJV and *Rosas* are directly related to DOJ's CRIPA investigations against the County and the Settlement Agreement in this case resolves those investigations. Accordingly, all three matters – CCJV, *Rosas*, and this case are all substantially related. While Proposed Intervenors may argue that

they are not, in reality, what Plaintiffs are seeking here *is* substantially related, because they are seeking to mandate mental health care from the beginning of inmates' incarceration, all the way through their release from custody.

### III. The Munger Firm Should Be Disqualified Under The March 1, 2012 and January 7, 2013 Agreements Associated With Their Legal Representation Of The County Regarding The CCJV.

Before addressing the law governing conflicts of interest and disqualification based thereon, the Munger firm should be disqualified based purely on the agreements they executed when they agreed to legally represent the County as part of CCJV.

As set forth above, the Munger firm and the County executed two agreements regarding the Munger firm's representation of the County, both of which include language designed to avoid the potential scenario with which the County is now faced – a conflict of interest created by the Munger firm's representation of a client with adverse interests in a case involving the operation of the County jails. While the County certainly was not contemplating that the Munger firm would initiate suit against the County when it entered into the above-referenced agreements, both the March 1, 2012 and January 7, 2013 Agreements include express language stating that the County would not waive any conflicts in two scenarios in which the Munger firm is involved. These scenarios are present in this case and are addressed below.

#### A. The March 1, 2012 Agreement.

The March 1, 2012 Agreement recognizes two situations where the County would not waive a conflict associated with the Munger firm's involvement in future litigation. The first provision is triggered if "Munger, Tolles represents a client adverse to a County Entity that arises out of or is based upon any alleged action or inaction by the Sheriff's Department, or any Sheriff's Department deputy or employee, or that arises out of or is based upon the operations of any Los Angeles County Jail facility." This provision applies to the period of time between March 1, 2012 and December 31, 2012. The County does not have any information at this

-6-

time as to when the Munger firm's representation of Proposed Intervenors began, but it is worth pointing out that, according to the allegations in the proposed First Amended Complaint in Intervention ("FAC in Intervention"), which Defendants accept as true for purposes of this Motion, Proposed Intervenors' incarceration histories easily extend to the period of time when the March 1, 2012 Agreement was in effect. (*See generally*, Docket No. 37-1 FAC in Intervention, allegations regarding Proposed Intervenors' incarceration histories, ¶¶ 12-17.) As such, there is the potential that the above language requires the disqualification of the Munger firm.

The second clause in the conflict section states that "for five years after the termination of this Agreement, the County is not waiving any conflicts in any matter in which Munger, Tolles represents a client that is adverse to a County Entity if the matter is substantially related to the Subject Matter."
(*See*, Exhibit "C" – March 1, 2012 Agreement, Page 4, Section 4.1(i) and (ii).)

This provision is enforceable until December 31, 2017, and under its express language, the Munger firm must be disqualified if two conditions are met.

First, the Munger firm must represent a client whose interests are adverse to the County. Here, it is undisputed that Proposed Intervenors' interests are adverse to the County, especially given Proposed Intervenors' recent lodging of the FAC in Intervention, in which Proposed Intervenors have added claims under the Fourteenth and Eighth Amendments to the United States Constitution. (*See*, Docket No. 37.) This first requirement is clearly satisfied.

Second, the matter in question must be substantially related to the "Subject Matter" of the CCJV.[1] This requirement too, is satisfied. The CCJV involved investigation into excessive force against inmates in County jail, including those with mental illness. (*See above*, Section III-B, listing references to mental health

---

[1] The March 1, 2012 Agreement defines "Subject Matter" as "advising the CCJV about the nature, depth, and cause of inappropriate use of force in Los Angeles County jails." (*Id*. at Section 1.1.)

-7-

treatment in the CCJV Report.)   Proposed Intervenors will undoubtedly attempt to characterize both their claims in intervention and the CCJV investigation narrowly[2], but the Court should see through this likely strategy.

Even a cursory review of the Settlement Agreement between DOJ and the County reveals that this case involves a broad array of allegations and claims including, without limitation, use of force issues and mental health treatment for inmates generally.  (*See*, Docket No. 14, ¶¶ 11, 12 – "This Agreement also extends the remedial measures in the Implementation Plan of the *Rosas* settlement agreement to fully resolve the Department of Justice's CRIPA findings regarding alleged mistreatment of prisoners with mental illness and claims under Section 14141 regarding alleged excessive force against prisoners at all of the jails."; *see also*, Exhibit "F" – Implementation Plan from *Rosas*, Section 4 – Use of Force on Mental Ill Prisoners.)

Essentially, this case is about both mental health treatment for County jail inmates and the use of force in the jails generally, which falls squarely within the definition of the "Subject Matter" of the March 1, 2012 Agreement.

Thus, by the plain language of the Settlement Agreement in this case between DOJ and the County, the Munger firm is barred from representing Proposed

---

[2] For example, Defendants anticipate that Proposed Intervenors will assert that their claims only relate to "discharge planning."  However, Proposed Intervenors' use of the term "discharge planning" is a misnomer.  A careful review of Proposed Intervenors' modifications to the Settlement Agreement reveal an intention to fundamentally change the delivery of services to all inmates with "mental health needs" from the very beginning of their incarceration throughout their release and beyond.

Essentially, Proposed Intervenors are attempting to shape the County's policies as they relate to the provision of mental health care in County jail.  (*See* Docket No. 35 - Proposed Revisions to the Settlement Agreement herein.)  In addition, Proposed Intervenors will likely argue that this case is only about mental health treatment in the jails, and not excessive force, but that fact is conclusively rebutted by the Complaint (Docket No. 1).¶

-8-

Intervenors because the subject of this case is substantially related to CCJV and the *Rosas* case.

### B. The January 7, 2013 Agreement.

Like the March 1, 2012 Agreement, the January 7, 2013 Agreement also includes a conflicts of interest section in which the County waived potential conflicts except in the following situations:

> (i) during the duration of Munger, Tolles' services under this Agreement in any pending or future matter arising out of…(a) alleged actions or inactions of the Sheriff's Department, or (b) the operations of any Los Angeles County jail" and in which the County, the Sheriff's Department, or the Board of Supervisors is a party and has interests adverse to those of Munger Tolles' client; and (ii) for five years after the termination of Munger Tolles' services pursuant to this Agreement in any matter arising out of facts or circumstances that Drooyan evaluated in his service as Implementation Monitor and in which the County, Sheriff's Department, or the Board of Supervisors is a party and has interests adverse to those of Munger, Tolles' client.

(*See*, Exhibit "D" – January 7, 2013 Agreement, Page 5, Section 4.0.)

Here again, given the vague and ambiguous nature of Proposed Intervenors' allegations regarding their incarceration histories, there is a possibility that Section (i) applies, but Defendants do not have adequate information to confirm the dates of the Munger firm's representation of the Proposed Intervenors. As set forth below, the law in the Ninth Circuit favors disqualification in the case of ambiguity to preserve the integrity of the judicial system.

Under Section (ii), in similar fashion to the March 1, 2012 Agreement, the relevant questions are whether the issues in this case "arise out of facts or circumstances that Drooyan evaluated in his service as Implementation Monitor" and whether the County has interests adverse to the Munger firm's clients. Here again, there is no doubt that the County's interests are adverse to Proposed Intervenors. Indeed, both the County and the United States have made very clear

-9-

that neither Party believes there is any basis for the Court to allow intervention. Second and as also discussed above, this case, CCJV, and *Rosas* are all interrelated and involve claims based on, and allegations of, use of excessive force and treatment of inmates with mental illness in County jail. (*See*, Docket No. 3, Notice of Related Case, Page 2:8-18 – "Similar to *Rosas*, this Complaint alleges, in part, that the Los Angeles County Sheriff's Department has engaged in a pattern or practice of conduct by Sheriff's Department custody staff of using excessive force against prisoners in the Jails, including prisoners with mental illness…Additionally, the Settlement Agreement in this case incorporates certain provisions from the Rosas settlement, and extends those provisions to all jail facilities.")

As set forth above, this case is based on allegations, and involves claims of, use of excessive force in the Los Angeles County jail systems, which is exactly what is covered (based on the definition of the "Subject Matter") of both the Agreements the Munger firm executed with the County associated with their legal representation of the County as part of the CCJV.[3]

## IV. Even Ignoring The Agreements Discussed Above, The Munger Firm Should Be Disqualified Under The California Rules Of Professional Conduct Because Of Their Prior Representation Of The County.

The Munger firm does not dispute that it provided legal representation to the County during the CCJV and afterwards, during the implementation of its

---

[3] To the extent Proposed Intervenors argue that the Munger firm can simply terminate the March 1, 2012 Agreement (as stated in Section 4.3), that provision of the Agreement would render it illusory and unenforceable. This argument is offered as an anticipatory defense against the well-established rule that contracts giving one party "discretionary power affecting the rights of another" are to be interpreted in light of the good faith and fair dealing covenant "to limit that discretion in order to create a binding contract and avoid a finding that the promise is illusory." *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342, 372 (1992); *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 57 (2002); *CLK, Inc. v. Am. Commercial Capital, LLC*, No. G033048, 2004 WL 2284271, at *3 (Cal. Ct. App. Oct. 12, 2004).

-10-

1  recommendations.  Accordingly, even ignoring the agreements between the County
2  and the Munger firm discussed above, the question this Court must answer is
3  whether that prior representation creates an appearance of impropriety warranting
4  the disqualification of the Munger firm from this case.

5  It is hornbook law that Federal district courts have responsibility for
6  controlling the conduct of lawyers practicing before them.  *See*, *In re Coordinated
7  Pretrial Proceedings,* 658 F.2d 1355, 1358 (9th Cir. 1981); *see also*, *MMR/Wallace
8  Power & Indus., Inc. v. Thames Assoc,* 764 F. Supp. 712, 717 (D. Conn.
9  1991)("[f]ederal courts have inherent authority to discipline attorneys who appear
10 before them for conduct deemed inconsistent with the ethical standards imposed by
11 the court").  The professional practice of attorneys in the Central District is
12 governed by the California Rules of Professional Conduct.  *See*, Central District
13 Local Rule 83-3.1.2 (adopting the California Rules of Professional Conduct).  In
14 evaluating the conduct of lawyers, this Court may also consider the American Bar
   Association Model Code of Professional Conduct as guidance.  *Id.*

15 It is well-established that any uncertainty in the facts underlying alleged
16 unethical conduct, or whether such conduct should result in disqualification, must be
17 resolved in favor of disqualification.  Indeed, "close or doubtful cases must be
18 resolved in favor of disqualification in order to preserve the integrity of the judicial
19 system."  *Richards v. Holsum Bakery, Inc.,* 2009 WL 3740725, at *6 (D.Ariz. Nov.
20 5, 2009); *see also, Kaiser v. AT & T,* 2002 WL 1362054, at *5 (D.Ariz. Apr. 5,
21 2002) (same) (quoting *Palmer v. The Pioneer Hotel & Casino,* 19 F.Supp.2d 1157,
22 1162 (D.Nev. 1998); *see also*, *Roosevelt Irr. Dist. v. Salt River Project Agr. Imp. &
23 Power Dist.*, 810 F. Supp. 2d 929, 944 (D. Ariz. 2011).

24 Under California Rule of Professional Conduct 3-310(E), an attorney may not
25 represent a new client whose interests are adverse to those of a former client on a
26 matter in which the attorney has obtained confidential information.  The Rule
27 provides:
28

-11-

> A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

Cal. R. Prof. Conduct 3-310(E).

In interpreting Rule 3-310(E), the California Supreme Court has held that, "[w]here an attorney successively represents clients with adverse interests, and where the subjects of the two representations are substantially related, the need to protect the first client's confidential information requires that the attorney be disqualified from the second representation." *SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th at 1146. The purpose of this rule is to protect the confidential relationship between attorney and client, a relationship which continues even after the formal relationship ends. *David Welch Co. v. Erskine & Tulley*, 203 Cal. App. 3d 884, 891 (1988).

In addition, Canon 9 of the Model Code states that "a lawyer should avoid ***even the appearance*** of professional impropriety." Model Code Canon 9 (1979)(emphasis added). The Ninth Circuit Court of Appeals has construed this rule to require disqualification based on prior employment wherever "the former representation is 'substantially related' to the current representation" and the current representation is adverse to the former representation. *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980). As expressed in *Trone*, "the underlying concern is the possibility, or appearance of the possibility, that the attorney may have received confidential information during the prior representation that would be relevant to the subsequent matter in which disqualification is sought." *Id.* at 999.

Here, it is undisputed that the Munger firm represented the County and was provided with access to confidential records of the County through that representation. It is further undisputed that both this case and the CCJV are substantially related because both this case and CCJV, as well as *Rosas*, involve issues related to both excessive force and the welfare of inmates with mental health

-12-

issues in Los Angeles County jail. Given these facts, the Munger firm's continued involvement in this case certainly creates an appearance of impropriety, warranting their disqualification, especially considering that "close or doubtful cases must be resolved in favor of disqualification in order to preserve the integrity of the judicial system." *Richards, Inc.,* 2009 WL 3740725, at *6.

## V. Ethical Screening Is Not An Adequate Cure Of The Munger Firm's Conflict Of Interest.

Defendants anticipate that Proposed Intervenors will assert that the lawyers from the Munger firm who represented the CCJV can be ethically screened from this case. In fact, counsel from the Munger firm made such an argument at the October 9, 2015 status conference in this matter.

However, when there is an apparent ethical conflict based upon the use of confidential information, "[n]o amount of assurances or screening procedures, no 'code of silence,' could ever convince the opposing party that the confidences would not be used to its disadvantage .... No one could have confidence in the integrity of a legal process in which this is permitted to occur without the parties' consent." *Cho v. Superior Court,* 39 Cal.App.4th 113, 125 (1995). Indeed, this Court should not hesitate to disqualify conflicted counsel, since "[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." *People ex rel. Dept. of Corps, v. Speedee Oil Change Sys., Inc.,* 20 Cal. 4th 1135, 1145 (1999). **The concerns over ethical conflicts are so pronounced that long ago the Ninth Circuit held that "a court may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety."** *Gas-A-Tron of Arizona v. Union Oil Co.,* 534 F.2d 1322, 1324-25 (9th Cir. 1976)(emphasis added).

As a general rule in California, where an attorney is disqualified from representation, the entire law firm is vicariously disqualified as well. *See, Klein v. Super. Ct. (Thomas)*, 198 Cal. App. 3d 894, 909, 912-913 (1988); *William H. Raley Co. v. Super. Ct. (Carroll)*, 149 Cal. App. 3d 1042, 1048-1049 (1983); *Global Van*

*Lines*, 144 Cal. App. 3d 483 (1983). The rule of vicarious disqualification is based upon the doctrine of imputed knowledge. "The imputed knowledge theory holds that knowledge by any member of a law firm is knowledge by all of the attorneys in the firm, partners as well as associates." *Rosenfeld Constr. Co.*, 235 Cal. App. 3d at 573. As explained in *Adams*, "[c]ourts have based this rule on the practical impossibility of a private law firm creating an 'ethical wall' around an attorney who has been exposed to confidential information about the former client by screening him off from the firm's representation of the former client's adversary." *Adams*, 86 Cal. App. 4th at 1333. "Once the attorney is shown to have had probable access to former client confidences, the court will impute such knowledge to the entire firm, prohibiting all members of the firm from participating in the case." (*Id.*) The vicarious representation rule applies even when the conflicted attorney provided the former representation as a member of another firm. *Largo Concrete, Inc. v. Liberty Mut. Fire Ins. Co.*, No. C 07-4651 CRB, 2007 U.S. Dist. LEXIS 95690, at *9-10 (N.D. Cal. Dec. 31, 2007).

When one attorney has a proven conflict, the entire firm must be disqualified. *In re Airport Car Rental Antitrust Litigation,* 470 F.Supp. 495, 501-502 (D.C. Cal. 1979). "[T]he presumption of shared confidences is based on the common-sense notion that people who work in close quarters talk with each other, and sometimes about their work." *Elan Transdermal, Ltd. v. Cygnus Therapeutic Sys.,* 809 F. Supp. 1383, 1390 (N.D. Cal. 1992).

Here, as set forth above, because lawyers from the Munger firm were admittedly provided with access to substantial confidential information from the County as part of the CCJV, which addressed both use of force and mental health care in the jails, the entire Munger firm should be disqualified.

### VI. Proposed Intervenors Will Suffer No Prejudice If The Munger Firm Is Disqualified.

California and Federal courts have consistently recognized that in the face of conflicts, ethical considerations must outweigh the harm to litigants who lose

-14-

counsel of their first choice, ***even when such a loss would result in great prejudice.*** See, *SpeeDee Oil,* 20 Cal. 4th at 1145-46; *Gilbert v. National Corp. for Housing Partnerships.,* 71 Cal. App. 4th 1240, 1255-56 (1999) (disqualification ordered on eve of trial despite strong showing of prejudice by plaintiff opposing motion); *In re Corrugated Container Antitrust Life.,* 659 F.2d 1341, 1348 (5th Cir. 1981) (image of legal profession outweighs right of litigant to choose counsel); *Trone v. Smith.,* 621 F.2d 994, 1002 (9th Cir. 1980) (imputed disqualification proper regardless of harm to litigant); *Fund of Funds. Ltd. v. Arthur Anderson & Co.,* 567 F.2d 225, 236-37 (2nd Cir. 1977) (maintaining public trust in bar outweighs client's right to choose counsel).

Here, if the Munger firm is disqualified, Proposed Intervenors will suffer little, if any, prejudice. First, the involvement of Proposed Intervenors has only recently come up meaning, the Munger firm has little investment in this case at this time. Second, Proposed Intervenors they are represented by Public Counsel, who is capable of adequately representing their interests.

## VII. <u>Conclusion.</u>

Pursuant to the agreements they executed with the County for the provision of legal services related to the CCJV, as well as the California Rules of Professional Conduct, Rules 3-310(E) and 3-700(B), the Munger firm must be disqualified from representing Proposed Intervenors in this matter.

Dated: October 16, 2015

                                SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                By       /s/ *Gregory F. Hurley*
                            GREGORY F. HURLEY

                            Attorneys for Defendants,
                         COUNTY OF LOS ANGELES
               AND LOS ANGELES COUNTY SHERIFF
                         JIM MCDONNELL