1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   GREGORY F. HURLEY, Cal. Bar No. 126791
2  ghurley@sheppardmullin.com
   MICHAEL J. CHILLEEN, Cal. Bar No. 210704
3  mchilleen@sheppardmullin.com
   BRADLEY J. LEIMKUHLER, Cal. Bar No. 261024
4  bleimkuhler@sheppardmullin.com
   650 Town Center Drive, 4th Floor
5  Costa Mesa, California 92626-1993
   Telephone:  714.513.5100
6  Facsimile:  714.513.5130

7  LOS ANGELES COUNTY,
   OFFICE OF THE COUNTY COUNSEL
8  Mary C. Wickham, Cal. Bar No. 145664
   Rodrigo A. Castro-Silva, Cal. Bar No. 185251
9  rcastro-silva@counsel.lacounty.gov
   Brandon Nichols, Cal. Bar No. 187188
10 bnichols@counsel.lacounty.gov
   500 W. Temple Street, Rm. 648
11 Los Angeles, CA 90012
   Telephone:  213.974.1811
12 Facsimile:  213.626.7446

13 Attorneys for Defendants,
   COUNTY OF LOS ANGELES
14 AND LOS ANGELES COUNTY
   SHERIFF JIM MCDONNELL
15
                    UNITED STATES DISTRICT COURT
16
         CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
17

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:15-cv-05903-DDP-JEM |
| Plaintiff, | Judge:  Hon. Dean D. Pregerson |
| v. | **DEFENDANTS' OPPOSITION TO MOTION TO INTERVENE** |
| COUNTY OF LOS ANGELES AND LOS ANGELES COUNTY SHERIFF JIM MCDONNELL, in his Official Capacity, | Date:    November 3, 2015<br>Time:    10:00 a.m.<br>Crtm:    3 |
| Defendants. | |
| TERESA POWERS, DAVID PENN, TIMOTHY POLK, MARK SARNI, DERRICK THOMAS, DARSEL WHITFIELD, ROYAL WILLIAMS, AND LEPRIEST VALENTINE, | |
| Movants. | Complaint Filed:   August 5, 2015<br>Trial Date:          None Set |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................1

FACTUAL BACKGROUND....................................................................................1

I.      PROCEDURAL HISTORY. ..........................................................................1

ARGUMENT............................................................................................................2

I.      INTERVENORS MUST HAVE INDEPENDENT STANDING. .................2

II.     MOVANTS LACK STANDING BECAUSE THEY ARE NOT
        INCARCERATED. ........................................................................................3

III.    MOVANTS' CLAIMS ARE NOT RIPE........................................................5

IV.     EVEN IF MOVANTS HAD STANDING AND THEIR CLAIMS
        WERE RIPE, THEY HAVE STILL NOT MET THE
        REQUIREMENTS FOR INTERVENTION UNDER RULE 24. ................10

        A.      Standard For Intervention Under Rule 24............................................10

        B.      Movants Have Not And Cannot Meet The Requirements For
                Intervention. .......................................................................................11

V.      MOVANTS HAVE FAILED TO EXHAUST ADMINISTRATIVE
        REMEDIES. .................................................................................................14

CONCLUSION......................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                  **Page(s)**

*Abbott Labs. v. Gardner*
   387 U.S. 136 (1967) ...............................................................................6

*Aguilar v. Woodring*
   2008 WL 4375757 (C.D. Cal. 2008) ......................................................7

*Alaniz v. Tillie Lewis Foods*
   572 F.2d 657 (9th Cir. 1978) ...............................................................13

*Artway v. Attorney General of State of N.J.*
   81 F.3d 1235 (3d Cir. 1996) ..............................................................7, 8

*Bova v. City of Midfield*
   564 F.3d 1093 (9th Cir. 2009) ............................................................5, 6

*California v. Sanders*
   430 U.S. 99 (1972) .................................................................................6

*Calloway v. Thomas*
   2009 WL 1925225 (D. Or. 2009) .......................................................5, 7

*Curry v. Regents of the Univ. of Minn.*
   167 F.3d 420 (8th Cir. 1999) .................................................................3

*Johnson v. Pearson*
   316 F. Supp. 2d 307 (E.D. Va. 2004) .....................................................6

*Jones v. Caddo Parish School Board*
   735 F.2d 923 (5th Cir. 1984) ...............................................................11

*Kifer v. Ellsworth*
   346 F.3d 1155 (7th Cir. 2003) ............................................................4, 5

*League of United Latin Am. Citizens v. Wilson*
   131 F.3d 1297 (9th Cir. 1997) .............................................................10

*Lujan v. Defenders of Wildlife*

    504 U.S. 555 (1992) ........................................................................................3

*Mannick v. Kaiser Foundation Health Plan*

    2006 WL 2168877 (N.D. Cal. 2006) ...............................................................9

*Marks v. Clark*

    2009 WL 2566957 (W.D. Wash. 2009) .......................................................3, 4

*Martin v. Sargent*

    780 F.2d 1334 (8th Cir. 1985) .......................................................................3

*McInnis-Misenor v. Maine Medical Center*

    319 F.3d 63 (1st Cir. 2003) .........................................................................5, 8

*Michigan Association for Retarded Citizens v. Smith*

    657 F.2d 102 (6th Cir. 1981) .......................................................................11

*Municipality of Anchorage v. United States*

    980 F.2d 1320 (9th Cir. 1992) .......................................................................6

*Prete v. Bradbury*

    438 F.3d 949 (9th Cir. 2005) .........................................................................2

*Ragsdale v. Turnock*

    941 F.2d 501 (7th Cir. 1991) .......................................................................11

*S.H. v. Stickrath*

    251 F.R.D. 293 (2008) .................................................................................11

*Thompson v. Smith*

    2008 WL 1734495 (E.D. Cal. 2008) ..............................................................7

*U.S. v. Foundas*

    610 F.2d 298 (5th Cir. 1980) .........................................................................8

*United States of America v. Bogard*

    187 F.3d 643 (8th Cir. 1999) .......................................................................3, 5

*United States of America v. The County of Crittenden*

    Case No. 3:89-CV-00141-GH (E.D. Arkansas, Dec. 16, 1998) ..................11, 14

-iii-

OPPOSITION TO MOTION TO INTERVENE

1    *United States v. State of Oregon*

2        913 F.2d 576 (9th Cir. 1990) ................................................................. 13

3    *Warner v. Sherrer*

4        2005 WL 2416972 ................................................................................... 6

5    **Statutes**

6    42 U.S.C. § 1983 ..................................................................................... 14

7    42 U.S.C. § 1997 ..................................................................................... 14

8    42 U.S.C. § 1997e(a) .............................................................................. 14

9    ADA .......................................................................................... 1, 5, 8, 9, 14

10   **Other Authorities**

11   F.R.C.P. 24 ........................................................................... 1, 2, 10, 13

12   F.R.C.P. 24(a)(1), (2) ............................................................................. 10

13   F.R.C.P. 24(b)(1)(A),(B) ....................................................................... 10

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-iv-

**INTRODUCTION**

Over 15 years ago, the United States of America ("DOJ") instituted an investigation and eventually filed a lawsuit under the Civil Rights of Institutionalized Persons Act ("CRIPA") regarding the condition of the Los Angeles County Jails.  After painstaking negotiations over a one-year period, the DOJ and the County of Los Angeles (and the Los Angeles County Sheriff) ("County") reached a complex and comprehensive settlement agreement for injunctive relief which was approved by the Court in September 2015.  Now, Movants -- former inmates -- seek to intervene to modify the settlement agreement and start the whole process over again alleging violations of the ADA.

As explained below, the Court should deny intervention for several, independent reasons.  First, under black-letter law, Movants lack standing to assert injunctive relief claims because they are not currently incarcerated.  Second, Movants' claims are not ripe for judicial review.  The provision in the settlement agreement that Movants are attempting to alter is not even in effect yet and thus none of the Movants has ever been subjected to its policies and procedures.  There is absolutely no factual record regarding whether or how this provision will actually be applied to Movants, if ever.  Third, even if Movants had standing and their claims were ripe, they have not and cannot meet the requirements for mandatory or permissive intervention under Rule 24.  Finally, intervention must be denied because Movants have failed to exhaust their administrative remedies.

**FACTUAL BACKGROUND**

**I.    PROCEDURAL HISTORY.**

In June 1996, the DOJ notified the County that it was opening an investigation under CRIPA.  (Docket 14 at ¶7).  In September 1997, the DOJ issued a findings letter regarding mental health care for inmates at the Jails.  (Id. at ¶8).  In December 2002, the Parties entered into a Memorandum of Agreement ("MOA")

-1-

OPPOSITION TO MOTION TO INTERVENE

1   with respect to the mental health care services provided at the Los Angeles County

2   Jails.  (Id. at ¶9).

3            On June 4, 2014, the DOJ sent a letter notifying the County that it believed its

4   mental health care services were inadequate.  (Docket 14 at ¶10).  On August 5,

5   2015, the DOJ filed this lawsuit alleging violations under CRIPA (Docket 1) and

6   simultaneously lodged with the Court the Parties' settlement agreement (Docket 4).

7   The settlement agreement involved "mental health care at the Jails resulting from

8   the partial implementation of the 2002 MOA and current conditions within the

9   Jails."  (Docket 14 at ¶12).  The Court approved the settlement agreement on

10  September 3, 2015.  (Docket 13 and 14).  Almost two months after the initiation of

11  this lawsuit, on September 28, 2015, Movants filed a motion to intervene to modify

12  the settlement agreement.  (Docket 17).

**ARGUMENT**

**I.      INTERVENORS MUST HAVE INDEPENDENT STANDING.**

15           There is a split of authority regarding whether intervenors must independently

16  satisfy Article III standing or can "piggyback" off the standing of the existing

17  parties. *See, e.g., Prete v. Bradbury*, 438 F.3d 949, 971, fn. 8, (9th Cir. 2005).  The

18  Ninth Circuit has not decided the issue.  *Id.*

19           However, it is well established that once a lawsuit settles between the original

20  parties, the intervenor must have independent standing:

21           "Once the district court approves the consent decree, however, the

22           original case or controversy evaporates, and an intervenor…must assert

23           an independent case or controversy in order to maintain standing.

24           *Diamond v. Charles*, 476 U.S. 54, 68, 106 S.Ct. 1697, 1706, 90

25           L.Ed.2d 48 (1986) ('An intervenor's right to continue a suit in the

26           absence of the party on whose side intervention was permitted is

27           contingent upon a showing by the intervenor that he fulfills the

28           requirements of Art. III.').  The mere existence of a permanent

-2-

1    injunction or consent decree thus is insufficient to provide an ongoing

2    case or controversy upon which an intevenor may ride 'piggyback.'"

3  *Florida Wildlife Federation*, 647 F.3d 1296, 1302 (11th Cir. 2011).

4    Thus, in this case, since the Court has already approved the settlement

5  agreement between the parties, Movants must independently satisfy Article III

6  standing.  (Docket 13 and 14).

7  **II.    MOVANTS LACK STANDING BECAUSE THEY ARE NOT**

8  **INCARCERATED.**

9    To demonstrate standing, a plaintiff must show an injury to a legally protected

10  interest that is "concrete, particularized, and either actual or imminent."  *Curry v.*

11  *Regents of the Univ. of Minn.*, 167 F.3d 420, 422 (8th Cir. 1999).  The purpose of

12  the imminence requirement is "to ensure that the alleged injury is not too

13  speculative…[and] that the injury is certainly impending."  *Lujan v. Defenders of*

14  *Wildlife*, 504 U.S. 555, 564, fn. 2 (1992).  The plaintiff must also show that the

15  alleged injury is fairly traceable to the defendant's conduct and that a favorable

16  decision will likely redress the injury.  *Id*. at 560-561.

17    Under well-established law, former inmates lack standing to seek injunctive

18  or declaratory relief to improve prison conditions.  *See, e.g., Martin v. Sargent*, 780

19  F.2d 1334, 1337 (8th Cir. 1985) ("Appellant brings several claims against Sargent

20  for injunctive and declaratory relief to improve the general conditions as

21  Cummins…Appellant is now imprisoned in the Wrigthsville Unit.  Thus, his claims

22  for injunctive relief are moot.  For the same reason, he does not have standing to

23  seek declaratory relief"); *Marks v. Clark*, 2009 WL 2566957, *5 (W.D. Wash. 2009)

24  (holding that plaintiff lacked standing because he was released from jail and that his

25  "argument that he might be taken into custody" in the future was pure "conjecture").

26    The following cases illustrate this basic point.  In *United States of America v.*

27  *Bogard,* 187 F.3d 643 (8th Cir. 1999), Holbrook, a former inmate, moved to

28  intervene in ongoing CRIPA litigation between the United States and Crittenden

-3-

OPPOSITION TO MOTION TO INTERVENE

1  County involving the conditions at Crittenden County Jail.  Holbrook had been

2  incarcerated at the jail during the time the government and the county were

3  implementing a consent decree.  *Id*. at \*1.  The 8th Circuit held that Holbrook's

4  motion to intervene was properly denied because – as a former inmate – he lacked

5  standing as a matter of law:

6      "We agree with the district court that Holbrook lacked standing to

7      intervene in this equitable action.  Because Holbrook was no longer

8      incarcerated at the jail when he moved to intervene, he could not show

9      he suffered an injury greater than that suffered by other concerned

10     Crittenden County residents."

11  *Id.* at \*1.

12     Likewise, in *Kifer v. Ellsworth*, 346 F.3d 1155 (7th Cir. 2003), Kifer, a

13  former inmate, moved to intervene to modify a class action settlement agreement

14  regarding the conditions at the Vanderburgh County Indiana Jail.  The 7th Circuit,

15  Posner, Circuit Judge, held that Kifer lacked standing as a former inmate and

16  rejected outright his argument that the prospect of him getting arrested in the future

17  was sufficient to confer standing:

18     "Kifer's appeal from the denial of his motion to intervene is moot,

19     because, as we pointed out earlier, he cannot benefit from an order to

20     improve conditions in a jail in which he is no longer being held.  He

21     says that he's still a resident of Vanderburgh County and may be

22     arrested and taken to the county jail at any time, but that contingency –

23     which if taken seriously would entitle the entire county population,

24     indeed perhaps the entire American population (since anyone might

25     some day find himself in the Vanderburgh County Jail), to join the

26     class – is too remote to keep his claim alive."

27  *Id*. at 1157.

28

-4-

1    In this case, as in *Bogard* and *Kifer,* Movants lack standing.  Movants

2 concede that none of them are currently incarcerated at the Los Angeles County

3 Jails.  (Docket 17-3 at ¶¶10-17).  Movants' conjecture that they will likely be

4 incarcerated again at some future, unspecified time is insufficient to confer standing.

5 *Kifer, supra* at 1157.

6 **III.    MOVANTS' CLAIMS ARE NOT RIPE.**

7    The claims that Movants seek to bring in this action are not yet ripe for

8 adjudication – making their intervention in this matter inappropriate.  Through this

9 action, Movants broadly seek to challenge discharge planning for the treatment and

10 care of mentally disabled individuals at the Los Angeles County Jails.  However,

11 none of the Movants have ever been provided or denied treatment pursuant to the

12 policies in the settlement agreement, the policies have not yet been implemented by

13 the County, and whether Movants will ever be subject to these policies depends

14 entirely on contingent future events – i.e. future imprisonment in the Los Angeles

15 County Jails.  "The ADA does not permit private plaintiffs to bring claims as private

16 attorneys general to vindicate other people's injuries." *McInnis-Misenor v. Maine*

17 *Medical Center*, 319 F.3d 63, 69 (1st Cir. 2003).

18    "While standing is primarily concerned with *who* is a proper party to litigate a

19 particular matter, ripeness addresses *when* litigation may occur.'" *Bova v. City of*

20 *Midfield*, 564 F.3d 1093, 1096 (9th Cir. 2009), *quoting Lee v. Oregon*, 107 F.3d

21 1382, 1387 (9th Cir. 1997), *cert. denied*, 522 U.S. 927 (1997).  "To meet the

22 ripeness standard, petitioner must demonstrate a specific present harm, or the threat

23 of specific future harm." *Calloway v. Thomas*, 2009 WL 1925225, *4 (D. Or.

24 2009), *citing Laird v. Tatum*, 408 U.S. 1, 14 (1972).  "A claim is not ripe for

25 adjudication if it rests upon some contingent future event." *Id*., *citing Texas v.*

26 *United States*, 523 U.S. 296, 300 (1988); *Bova*, 564 F.3d at 1093.  "This is so

27 because, if the contingent events do not occur, the plaintiff will likely not have

28 suffered an injury that is concrete and particularized enough to establish the first

-5-

1    element of standing." *Bova*, 564 F.3d at 1096 (case unripe where claimed injury –

2    denial of health insurance – had not yet occurred and was contingent on (1)

3    Plaintiff's retirement and (2) official denial – events that might not occur).

4         The ripeness doctrine seeks "to prevent the courts, through avoidance of

5    entangling themselves in abstract disagreements over administrative policies, and

6    also to protect the agencies from judicial interference until an administrative

7    decision has been formalized and its effects felt in a concrete way by the challenging

8    parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), *overruled on other*

9    *grounds*, *California v. Sanders*, 430 U.S. 99 (1972).  In evaluating ripeness, the

10   court must consider the "fitness of the issues for review and the hardship of the

11   parties withholding consideration." *Id*.; *see also Municipality of Anchorage v.*

12   *United States*, 980 F.2d 1320, 1323 (9th Cir. 1992).

13        First, none of Movants are in the Los Angeles County Jails.  Therefore,

14   Movants' claims, which are limited to declaratory and injunctive relief, are unripe

15   (or moot) as a matter of law to challenge the policies or procedures in the jails.

16   "When an inmate is dismissed from a prison system, there is no longer a substantial

17   controversy between the parties having adverse legal interests, of sufficient

18   immediacy and reality to warrant the issuance of injunctive or declaratory relief."

19   *Johnson v. Pearson*, 316 F. Supp. 2d 307, 315 (E.D. Va.  2004), *citing Inmates v.*

20   *Owens*, 561 F.2d 560, 562 (4th Cir. 1977) (citing *Golden v. Zwickler*, 394 U.S. 103,

21   108 (1969); *see also Warner v. Sherrer*, 2005 WL 2416972, *1 at fn.3 (D.N.J. 2005)

22   (finding injunctive relief claims regarding prison conditions moot due to release).

23        Second, courts routinely dismiss challenges to rules and regulations

24   governing prisons, where their application to a plaintiff was contingent on future

25   events.  Moreover, courts have been reticent to pass judgment on a policy or

26   procedure where there is no factual record by which to evaluate a particular claim.

27   The following cases are illustrative.

28

SMRH:473485792.1                                                    OPPOSITION TO MOTION TO INTERVENE

In *Calloway v. Thomas*, 2009 WL 1925225 (D. Or. 2009), a district court held that an inmate's claim that the defendant agency would not consider early placement at a residential reentry center pursuant to recently adopted changes to the placement review process was not ripe for review. The court reasoned that the claims were unripe because they had not yet been applied to petitioner (and may never be):

> "With respect to petitioner's claims that the BOC refuses to consider inmates for twelve months RRC time, I conclude they are not ripe. Petitioner appears to concede that he has not received pre-release RRC placement review under the October 2008 regulations, the April 14 Memorandum, or Programs Statement 7310.04, implementing § 3624(c), because two years remain before his projected release date. A review of the record demonstrates that these rules have not been applied to petitioner in a concrete and particularized way. Because petitioner is not presently entitled to a RRC assessment under § 3624(c), he has not demonstrated a specific present objective harm or a specific future harm. Indeed, his projected release date is tentative as some intervening event may impact when he receives that review."

*Id.* at *4 (emphasis added); *see also Thompson v. Smith*, 2008 WL 1734495, *4 (E.D. Cal. 2008), *adopted in full*, 2008 WL 1970318 (E.D. Cal. 2008) (inmate's claim demanding immediate assessment for RRC placement not yet ripe); *Aguilar v. Woodring*, 2008 WL 4375757, *3-4 (C.D. Cal. 2008) (same). By comparison, the *Calloway* court *did* find that his claim that the fact he was denied review under previous regulations was, in fact, ripe because he had actually been impacted by them. *Id.* at *6.

Similarly, in *Artway v. Attorney General of State of N.J.*, 81 F.3d 1235, 1246-52 (3d Cir. 1996), the Third Circuit found that a sex offender who had been released from prison did not have a ripe claim to challenge a statute that would require

SMRH:473485792.1                                          OPPOSITION TO MOTION TO INTERVENE

1   notification to private citizens *if* the local prosecutor should determine that he

2   presented a moderate or high risk of offending again.  The court found that it was a

3   matter of speculation whether a moderate or high risk determination would ever be

4   made – there was no present hardship and plaintiff could seek an injunction in the

5   future if he returned to the state, registered, and a notification determination were

6   made.  Moreover, there were no facts to illuminate the operation or possible effects

7   of the notification provisions.  *Id*. at 1246-52; *see also U.S. v. Foundas*, 610 F.2d

8   298, 301 (5th Cir. 1980) (challenge was not ripe where it was a matter of

9   speculation whether parole guidelines to criminal defendant would be helpful or

10  harmful as she had yet to serve her term because she might be released soon after

11  imprisonment or the guidelines might be changed before she became parole

12  eligible).

13          As another example in the ADA context (outside of the prison system), in

14  *McInnis-Misenor v. Maine Medical Center*, 319 F.3d 63 (1st Cir. 2003), the court

15  dismissed an ADA plaintiff's barrier claims as unripe because they were contingent

16  on speculative future events.  In *McInnis-Misenor*, the plaintiff was a woman

17  seeking to have a second child (but not yet pregnant) who sued a hospital that

18  handled high-risk deliveries to make the bathrooms wheelchair accessible.  The First

19  Circuit affirmed the district court's conclusion that the case was not ripe for

20  adjudication – despite the fact the woman had previously been treated at the hospital

21  during her first pregnancy.  The court reasoned that her claims for injunctive relief

22  were premature by explaining:  "[Plaintiff] may never become pregnant, or she may

23  not deliver, or MMC may have a new facility by then and so that the claimed injury

24  may never come to pass.  The conditional nature of the claims counseled in favor of

25  the district court refusing to entertain jurisdiction at this point."  *Id*. at 73.

26          Each of the aforementioned cases illustrate that the case Movants seek to

27  bring before the Court is not yet ripe for adjudication.

28

-8-

1   First, the provision agreed upon in the settlement agreement is not scheduled

2   to take effect until January 2016.  (Docket 14 at ¶115).  Therefore, none of the

3   Movants have been provided, or denied, services pursuant to the settlement

4   agreement.  Moreover, it is not certain that the policies currently outlined in the

5   settlement agreement will be the final policies that will go into effect.  *(*Docket 14 at

6   ¶119 (noting that the DOJ and County can agree to make changes to the settlement

7   agreement by written stipulation).

8   Second, it is entirely speculative at this point whether any of the Movants

9   will ever be subject to mental health services pursuant to the settlement agreement.

10  It is unknown at this time whether any of the Movants will be incarcerated again.  It

11  is possible that Movants may find effective treatment, never be arrested again,

12  relocate out of the area, fall ill, or be incarcerated elsewhere.  It is further unknown

13  whether any of the Movants will be adversely (and specifically) impacted by the

14  precise policies challenged in the motion to intervene.  For instance, it is

15  hypothetical whether Movants will be imprisoned for more or less than seven days,

16  will be denied access to discharge planning, will fail to be meaningfully connected

17  to a service provider, or will be determined to be in "intense need for assistance"

18  and referred to restrictive institutional settings.

19  The factual record is entirely absent of how these policies will actually be laid

20  out or applied to one of the particular Movants, if ever.  As if to highlight these

21  problems, Movants' motion frequently resorts to strawman speculative arguments

22  regarding how the policies in the settlement agreement will be actually implemented

23  by the County.  (*See, e.g.,* Docket No. 17 at 26 (describing imagined horrors caused

24  by hypothetical distribution of pamphlets)).

25  Further, in order to even state a "reasonable modification" policy claim under

26  the ADA, a plaintiff bears the burden of showing that he requested a modification,

27  that the requested modification was reasonable, and that the requested modification

28  was denied.  *See, e.g., Mannick v. Kaiser Foundation Health Plan*, 2006 WL

-9-

1    2168877 (N.D. Cal. 2006).  The factual record before the Court is devoid of any

2    evidence that Movants ever requested that the County modify its policies to

3    accommodate their specific needs or that their requests were denied.

4         Quite simply, there is no present hardship being experienced by Movants as a

5    result of the settlement agreement; any future hardship is speculative and contingent

6    on events that may or may not come to pass.  There is also no prejudice to Movants

7    seeking an injunction in the future.  Movants have identified no case or controversy

8    that is ripe for this Court to review and, therefore, the motion to intervene must be

9    denied.

10   **IV.   EVEN IF MOVANTS HAD STANDING AND THEIR CLAIMS WERE**
     **RIPE, THEY HAVE STILL NOT MET THE REQUIREMENTS FOR**
11   **INTERVENTION UNDER RULE 24.**
12

13        **A.   Standard For Intervention Under Rule 24.**

14        To meet the requirements of mandatory intervention, an intervenor must

15   show: "(1)…an unconditional right to intervene by a federal statute; or (2)…an

16   interest relating to the property or transaction that is the subject of the action, and is

17   so situated that disposing of the action may as a practical matter impair or impede

18   the movant's ability to protect its interest, unless existing parties adequately

19   represent that interest."  F.R.C.P. 24(a)(1), (2).

20        To meet the requirements of permissive intervention, an intervenor must

21   show: (1) a conditional right to intervene by a federal statute; or (2) a claim or

22   defense that shares with the main action a common question of law or fact.  F.R.C.P.

23   24(b)(1)(A),(B).

24        Rule 24 also requires that the application be timely.  Three factors should be

25   considered: (1) the stage of the proceeding; (2) the prejudice to other parties; and (3)

26   the reason for and length of the delay.  *League of United Latin Am. Citizens v.*

27   *Wilson*, 131 F.3d 1297, 1301 (9th Cir. 1997).

28

-10-

1    "The purpose of the "timeliness inquiry is to prevent a tardy intervenor from

2    derailing a lawsuit within sight of the terminal…A motion to intervene filed during

3    the final stages of a proceeding is not favorably viewed."  *S.H. v. Stickrath*, 251

4    F.R.D. 293, 297 (2008).

5         Prejudice exists when an intervenor files his application after settlement has

6    been reached.  *See, e.g., Ragsdale v. Turnock*, 941 F.2d 501, 504 (7th Cir. 1991)

7    ("Once parties have invested time and effort into settling a case it would be

8    prejudicial to allow intervention"); *Jones v. Caddo Parish School Board*, 735 F.2d

9    923, 935 (5th Cir. 1984) ("Prejudice to the United States and the School Board is

10   apparent.  After nearly a year's negotiations they have finally arrived at a complex,

11   interrelated settlement and consent decree disposing of the lawsuit between the two

12   of them"); *Michigan Association for Retarded Citizens v. Smith*, 657 F.2d 102, 105

13   (6th Cir. 1981) ("allowing intervention at this point, would seriously delay the

14   parties' ability to implement the provision of the Consent decree, and this delay

15   would necessarily work to the detriment of the individuals for whose welfare this

16   suit was instituted").

17   **B.    Movants Have Not And Cannot Meet The Requirements For**

18   **Intervention.**

19        Intervention is not warranted in this settled CRIPA litigation.  The case of

20   *United States of America v. The County of Crittenden*, Case No. 3:89-CV-00141-GH

21   (E.D. Arkansas, Dec. 16, 1998) is illustrative.  (Copy of Opinion attached as Exhibit

22   A to Chilleen Decl.).  There, the United States filed a CRIPA lawsuit against the

23   County of Crittenden.  The district court later approved a consent decree requiring

24   the defendants to take certain remedial actions at the detention facility and to submit

25   periodic compliance reports.  *Id*. at 1.

26        A former inmate sought to intervene.  The district court concluded that he

27   lacked standing since he was no longer incarcerated at the facility.  *Id*. at 2.  In

28

-11-

SMRH:473485792.1                                          OPPOSITION TO MOTION TO INTERVENE

1    addition, assuming *arguendo* that he had standing, the district court concluded that

2    that neither mandatory nor permissive intervention was warranted.  *Id*.

3           With respect to mandatory intervention, the district court concluded that the

4    former inmate had not shown that his interests would be impaired if intervention

5    were not allowed because he could initiate a separate action:

6           "Hollbrook has not demonstrated that any claim he has against

7           defendant would be impaired by disposition of this case.  That is,

8           Hollbrook may file an individual action under 42 U.S.C. § 1983.  The

9           present litigation would not impede his right to do so."

10   *Id.* at 3.

11          The district court also concluded that the former inmate's rights were

12   adequately protected given that the United States is presumed to adequately

13   represent all of its citizens:

14          "Furthermore, Holbrook has not demonstrated that his rights as a

15          former inmate are not adequately represented by the United States.

16          When one of the parties to the litigation is an arm or agency of the

17          government and the case concerns a matter of 'sovereign interest,' an

18          intervener has a greater burden of showing that his or her interests are

19          not adequately represented by the parties as the government is

20          'presumed to represent the interests of all its citizens.'  *Mausolf v.*

21          *Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996).  Here, Hollbrook's

22          interests are a concern of the United States, which as <u>parens</u> <u>patriae</u>, it

23          is charged with protecting.  Therefore, the presumption of adequate

24          representation applies unless Hollbrook makes a strong showing of

25          inadequate representation."

26   *Id*. at 3.

27          With respect to permissive intervention, the district court concluded that there

28   was not sufficient commonality between a possible damages action and the

-12-

OPPOSITION TO MOTION TO INTERVENE

1    equitable action under CRIPA and, even if commonality existed, intervention was

2    not warranted due to the prejudice that would be caused by allowing intervention

3    after a consent decree had already been approved. *Id*. at 3-4.

4          In this case, Movants are tardy and do not meet the requirements of Rule 24.

5    As explained above, the DOJ's CRIPA investigation began in September 1997 and

6    resulted in the 2002 MOA, the June 4, 2014 Letter, and the August 5, 2015

7    settlement agreement.  Despite the fact that the CRIPA investigation began 18 years

8    ago, Movants did not seek to intervene until the end of September 2015 after the

9    Court approved the parties' settlement agreement.  Movants have not offered any

10   justification for their dilatory conduct.  *See, e.g., Alaniz v. Tillie Lewis Foods*, 572

11   F.2d 657, 659 (9th Cir. 1978) ("Intervention after entry of a consent decree is

12   reserved for exceptional cases…The crux of appellants' argument is that they did

13   not know the settlement decree would be to their detriment.  But surely they knew

14   the risks.  To protect their interests, appellants should have joined the negotiations

15   before the suit was settled"); *CE Design LTD*, 2012 WL 2976909, *10 (N.D. Ill.

16   2012) (court rejected intervenors' argument that they were entitled to see the actual

17   settlement agreement before deciding whether their interests were impaired –

18   "people potentially affected by the decision can't sit on the sidelines, as if

19   intervention were a petition for rehearing") *citing United States v. Blagojevich*, 612

20   F.3d 558, 561 (7th Cir. 2010).

21         Under these circumstances, Movants' motion is untimely and it would be

22   severely prejudicial to allow intervention at this late juncture since the Parties would

23   have to start the settlement process over again with Movants having to acquiesce in

24   any potential resolution.  *See, e.g., United States v. State of Oregon*, 913 F.2d 576,

25   588-589 (9th Cir. 1990) (no abuse of discretion by court's finding undue prejudice

26   when intervention sought after settlement involving delicate compromise following

27   four years of negotiation).

28

-13-

1    In addition, Movants have failed to show that their interests would be

2  impaired or prejudiced as required for mandatory intervention.  As in *The County of*

3  *Crittenden* case, Movants can simply file a separate lawsuit.  There is no need to

4  complicate and disrupt this lawsuit by injecting a new party after a settlement

5  agreement has been reached and approved by the Court.  Moreover, Movants have

6  failed to meet their heavy burden to show that the DOJ does not adequately

7  represent their interests.  The DOJ drafts ADA guidelines, regulations, and manuals

8  to assist individuals and public and private entities in understanding their rights and

9  obligations under the Act.  Certainly, the DOJ is in a good position to ensure that the

10  settlement agreement does not violate the ADA.  Moreover, the Court approved the

11  settlement agreement and was thus satisfied that it did not violate any laws.[1]

12    Finally, Movants have failed to establish a common question of fact or law as

13  required for permissive intervention.  This was a CRIPA lawsuit – not an ADA

14  lawsuit.  The DOJ's complaint alleged inadequate mental health and protective

15  services, inadequate housekeeping, sanitation, and maintenance, and excessive

16  force.  (Docket 1 at ¶¶22-26).  Nowhere did the DOJ allege any ADA violations.

17  **V.    MOVANTS HAVE FAILED TO EXHAUST ADMINISTRATIVE**

18  **REMEDIES.**

19    42 U.S.C. § 1997 provides that: "No action shall be brought with respect to

20  prison conditions under section 1983 of this title, *or any other Federal law*, by a

21  prisoner confined in any jail, prison, or other correctional facility until such

22  administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

23    In this case, Movants concede that they have not exhausted any administrative

24  remedies, but will likely argue that they do not have to because they are not

25  currently incarcerated.  However, Movants cannot have it both ways – either they

26  _____

27  [1] Unfortunately, an application for intervention is not to be resolved by the ultimate
28  merits of the claims the intervenors seek to assert.

-14-

1  must be considered "prisoners" for purposes of having to exhaust administrative

2  remedies or they lack standing because they are not currently incarcerated.  Either

3  way, their motion to intervene must be denied.

4                                              **CONCLUSION**

5         For all of the above reasons, Defendants respectfully request that Movants'

6  motion to intervene be denied in its entirety.

7

8  Dated:  October 21, 2015

9                                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

10

11                              By          /s/ *Gregory F. Hurley*
                                            GREGORY F. HURLEY
12

13                                          Attorneys for Defendants,
                                            COUNTY OF LOS ANGELES
14                                          AND LOS ANGELES COUNTY SHERIFF
                                            JIM MCDONNELL
15

16

17

18

19

20

21

22

23

24

25

26

27

28

-15-