BRADLEY S. PHILLIPS (State Bar No. 85263)
brad.phillips@mto.com
GRANT A. DAVIS-DENNY (State Bar No. 229335)
grant.davis-denny@mto.com
EMILY R.D. MURPHY (State Bar No. 291022)
emily.murphy@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071-1560
Telephone:   (213) 683-9100
Facsimile:    (213) 687-3702

MARK D. ROSENBAUM (SBN 59940)
mrosenbaum@publiccounsel.org
GARY BLASI (SBN 70190)
gblasi@publiccounsel.org
ANNE RICHARDSON (SBN 151541)
arichardson@publiccounsel.org
ADELAIDE ANDERSON (SBN 270966)
aanderson@publiccounsel.org
ALISA HARTZ (SBN 285141)
ahartz@publiccounsel.org
PUBLIC COUNSEL LAW CENTER
610 S. Ardmore Avenue
Los Angeles, California 90005
Telephone:   (213) 385-2977
Facsimile:    (213) 385-9089

Attorneys for Plaintiff-Intervenors

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF LOS ANGELES AND LOS ANGELES COUNTY SHERIFF JIM MCDONNELL, in his Official Capacity ,<br><br>Defendants.<br><br>TERESA POWERS, DAVID PENN, TIMOTHY POLK, MARK SARNI, DERRICK THOMAS, DARSEL WHITFIELD, ROYAL WILLIAMS, AND LEPRIEST VALENTINE<br><br>Plaintiff-Intervenors. | Case No. 15-cv-05903<br><br>**OPPOSITION TO MOTION TO DISQUALIFY MUNGER, TOLLES & OLSON LLP AS COUNSEL FOR PROPOSED INTERVENORS**<br><br>Date:    November 16, 2015<br>Time:   10:00 am<br>Crtrm.: 3<br><br>Judge:  Hon. Dean D. Pregerson |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................... 1

II.   STATEMENT OF FACTS ....................................................... 2

    A.    Plaintiff-Intervenors Seek Intervention Limited to the Issue of
        Discharge Planning for Prisoners with Mental-Health Needs. ............... 2

    B.    Munger Tolles's Representation of the Citizens' Commission on
        Jail Violence Did Not Include Work Concerning Discharge
        Planning. ........................................................................ 4

    C.    Munger, Tolles's Agreements with the County and the CCJV ............... 5

        1.    The SLS Agreement .................................................. 5

        2.    The IM Agreement ................................................... 7

III.  ARGUMENT ........................................................................ 8

    A.    Legal Standards on Motion to Disqualify Counsel ....................... 8

    B.    No Successive-Representation Conflict Exists, Even Setting
        Aside The County's Broad Conflict Waivers ......................... 10

    C.    The County Has Expressly Waived Any Purported Conflict of
        Interest. ......................................................................... 13

        1.    The SLS Agreement .................................................. 15

        2.    The IM Agreement ................................................... 18

IV.   CONCLUSION ..................................................................... 19

# TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*Advanced Messaging Tech., Inc. v. EasyLink Serv. Int'l Corp.,*
   913 F. Supp. 2d 900 (C.D. Cal. 2012) ....................................................16

*Concat LP v. Unilever, PLC,*
   350 F. Supp. 2d 796 (N.D. Cal. 2004) .....................................................8

*In re County of Los Angeles,*
   223 F.3d 990 (9th Cir. 2000) ...................................................................9

*Crenshaw v. MONY Life Ins. Co.,*
   318 F. Supp. 2d 1015 (S.D. Cal. 2004) ....................................................8

*Fabric Selection, Inc. v. Wal-Mart Stores, Inc.,*
   2009 WL 3876281 (C.D. Cal. Nov. 17, 2009)............................... 9, passim

*McElroy v. Pacific Autism Center for Education,*
   2015 WL 2251057 (N.D. Cal. May 13, 2015)........................................12

*O'Shea v. Epson America, Inc.,*
   2010 WL 2305863 (C.D. Cal. June 4, 2010) ............................................8

*Optyl Eyewear Fashion International Corp. v. Style Cos.,*
   760 F.2d 1045 (9th Cir. 1985) .............................................................8, 9

*So v. Land Base, LLC,*
   2010 WL 3075641 (C.D. Cal. Aug. 4, 2010)............................................8

*Visa U.S.A., Inc. v. First Data Corp.,*
   241 F. Supp. 2d 1100 (N.D. Cal. 2003) .............................................10, 18

*Western Sugar Coop. v. Archer-Daniels-Midland Co.,*
   2015 WL 690306 (C.D. Cal. 2015)....................................................10, 18

*Yumul v. Smart Balance, Inc.,*
   2010 WL 4352723 (C.D. Cal. Oct. 8, 2010)............................................8

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

**STATE CASES**

4

*Carma Developers (California) v. Marathon Development California,*
5  *Inc.,*
   2 Cal. 4th 342 (1992) ...................................................................16, 17
6

7  *In re Charlisse C.,*
   45 Cal. 4th 145 (2008) ........................................................................12
8

9  *City & County of San Francisco v. Cobra Solutions, Inc.,*
   38 Cal. 4th 839 (2006) ..........................................................................9
10

   *CLK, Inc. v. American Commercial Capital, LLC,*
11   2004 WL 2284271 (Cal. Ct. App. Oct. 12, 2004) (not officially
12   published)..............................................................................................18

13 *Gregori v. Bank of America,*
   207 Cal. App. 3d 291 (1989) .................................................................9
14

15 *H.F. Ahmanson & Co. v. Salomon Bros., Inc.,*
   229 Cal. App. 3d 1445 (1991) ..........................................................9, 12
16

17 *Kirk v. First Am Title Ins. Co.,*
   183 Cal. App. 4th 776 (2010) ..............................................................16
18

19 *Saint Teresa Citizen Action Group v. City of San Jose,*
   114 Cal. App. 4th 689 (2003) ................................................................9
20

21 *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.,*
   100 Cal. App. 4th 44 (2002) ...........................................................17, 18
22

23 *Third Story Music, Inc. v .Waits,*
   41 Cal. App. 4th 798 (1995) .................................................................18

24

25

26

27

28

OPPOSITION TO MOTION TO DISQUALIFY

# I.     **INTRODUCTION**

The motion of the County of Los Angeles ("the County") to disqualify Munger, Tolles & Olson LLP ("Munger, Tolles") from providing pro bono representation to the mentally disabled homeless individuals who are Plaintiff-Intervenors is totally and completely without merit, for two reasons.

*First, Munger, Tolles's current representation of Plaintiff-Intervenors is not substantially related to its prior representation of the Citizens' Commission on Jail Violence ("CCJV"), the Los Angeles County Board of Supervisors, or the County.* The current representation relates solely to discharge planning for inmates with mental-health needs, whereas the prior representations related solely to the inappropriate use of force in County jails.  The factual and legal issues involved in the two representations are entirely different. The mere fact that both representations involve the general subjects of the jails and mental health is not sufficient to make them substantially related for purposes of disqualification, which is disfavored and to be imposed only where absolutely necessary.  And the County cannot create a substantial relationship by wrongly characterizing Munger, Tolles's current representation as related to this *entire* case, rather than only discharge planning.

*Second, the County expressly waived the alleged conflict.*  Both representation agreements between Munger, Tolles and the County contain broad waivers of actual and potential conflicts arising from Munger, Tolles's pro bono representation of the CCJV and Richard Drooyan's service as Implementation Monitor ("IM") for the County Board of Supervisors.  The only exceptions to those waivers (other than an irrelevant exception for simultaneous adverse representation) are for future adverse representations that are substantially related to Munger, Tolles's work for the CCJV or that involve facts and circumstances evaluated by Mr. Drooyan as Implementation Monitor.  Neither exception applies here.

The agreement applicable to Munger, Tolles's representation of the CCJV—the Agreement for Special Legal Services ("SLS Agreement")—expressly waived any successive-representation conflicts except those arising from a future representation that is substantially related to the inappropriate use of force in the County jails.  As noted above, Munger, Tolles's current representation of Plaintiff-Intervenors is not substantially related to that subject.  Moreover, even if there were a substantial relationship, any conflict has been waived by the County under the SLS Agreement so long as *either*: (1) Munger, Tolles ethically screens the lawyers who worked on the CCJV matter from the current matter, which screening has occurred; *or* (2) Munger, Tolles terminates the SLS Agreement, in which case the County expressly agreed that Munger, Tolles may continue its new representation notwithstanding any conflict.

The agreement applicable to Mr. Drooyan's role as Implementation Monitor ("IM Agreement") likewise waived successive-representation conflicts except where the subsequent matter arose out of facts or circumstances that Drooyan evaluated. This facts-and-circumstances exception to the County's broad conflict waiver does not apply because it is undisputed that Mr. Drooyan, in his role as Implementation Monitor, did not evaluate facts or circumstances related to discharge planning.  Mr. Drooyan has submitted a declaration to that effect and there is no contrary evidence.

II.    **STATEMENT OF FACTS**

A.    **Plaintiff-Intervenors Seek Intervention Limited to the Issue of Discharge Planning for Prisoners with Mental-Health Needs.**

Plaintiff-Intervenors have been very clear from the outset:  they seek to intervene in this matter for the sole purpose of addressing legal deficiencies in Paragraph 34 of the Settlement, which relates to discharge planning for prisoners with mental-health needs.  In their motion to intervene, Plaintiff-Intervenors stated that "[t]he Court should grant Plaintiff-Intervenors leave to intervene in this action

*for the limited purpose of correcting the ADA violations in Paragraph 34 of the Settlement.*"  Motion to Intervene at 8:8-10; *see also id.* at 10:21-23 ("Plaintiff-Intervenors only seek to intervene for the limited purpose of addressing the unlawful provisions of Paragraph 34 of the Settlement.  Implementation of the remainder of the Settlement can proceed apace.").[1]  Counsel for Plaintiff-Intervenors reiterated this point during both the October 1, 2015 and the October 9 status conferences.  Declaration of Bradley S. Phillips, Exh. A (Transcript of Proceedings of October 1, 2015), at 14:21 – 16:4; *id.*, Exh. B (Transcript of Proceedings, October 9, 2015), at 7:17 – 8:1.  Thus, Munger, Tolles's representation of Plaintiff-Intervenors is limited to the subject of discharge planning for prisoners with mental-health needs.

The County urges the Court to "see through" Plaintiff-Intervenors' "attempt to characterize … their claims in intervention … narrowly."  Motion at 8:1-3.  The County's only purported evidence that Plaintiff-Intervenors' claims are broad is Proposed Intervenors' Proposed Revisions to Paragraph 34 and Appendices.  *See id.* at 8 n.2.  Plaintiff-Intervenors encourage the Court to, as the County urges, *id.*, carefully review that document, which addresses exclusively discharge planning for prisoners with mental-health needs.  Plaintiff-Intervenors do propose that such planning should begin "at the time of an incarcerated individual's assessment and admission to mental health care and … continue throughout service delivery until implementation of the plan upon the prisoner's release from incarceration."  Proposed Revisions ¶ 34(a)(i).  That does not change the incontrovertible fact that the Proposed Revisions relate exclusively to discharge planning and no other aspect of the treatment of prisoners.  In particular, neither Plaintiff-Intervenors' Proposed Complaint in Intervention, their Motion to Intervene, nor their Proposed Revisions to Paragraph 34 contains any discussion whatsoever of the use of force against inmates in Los Angeles County jails.  Indeed, the County does not claim otherwise.

---

[1] Unless otherwise indicated, all emphases are added.

**B.**   **Munger Tolles's Representation of the Citizens' Commission on Jail Violence Did Not Include Work Concerning Discharge Planning.**

It is undisputed that Munger Tolles's representation of the CCJV did not include work concerning discharge planning for prisoners with mental-health needs. The County does not even assert that it did.  With this opposition, Plaintiff-Intervenors submit numerous declarations from individuals with personal knowledge of the work of the CCJV and of its counsel, including the General Counsel (Richard Drooyan) and several of the Deputy General Counsels and Counsels, including lawyers at Kendall, Brill & Kelly LLP; Latham & Watkins; O'Melveny & Myers LLP; Proskauer Rose LLP; and White & Case LLP, as well as Ms. Godley of Munger, Tolles.  Each of those declarants attests that his or her work as counsel to the CCJV did not relate to discharge planning for prisoners with mental-health needs.  Declaration of Richard E. Drooyan ¶ 6; Declaration of Tamerlin J. Godley ¶ 3; Declaration of Fernando L. Aenlle-Rocha ¶ 3; Declaration of Bert E. Deixler ¶ 3; Declaration of Nancy Sher Cohen ¶ 3; Declaration of Robert M. Swerdlow ¶ 3; Declaration of David Schindler ¶ 3.  Each further attests that he or she did not receive any confidential information concerning that subject.  Drooyan Decl. ¶ 6; Godley Decl. ¶ 3; Aenlle-Rocha Decl. ¶ 3; Deixler Decl. ¶ 3; Cohen Decl. ¶ 3; Swerdlow Decl. ¶ 3; Schindler Decl. ¶ 3.  Mr. Drooyan, who served both as General Counsel to the CCJV and as Implementation Monitor with regard to the CCJV's recommendations, attests that he did not, during the course of his work as Implementation Monitor for the Board of Supervisors, evaluate facts and circumstances related to discharge planning for prisoners with mental-health needs. Drooyan Decl. ¶ 7.  He further attests that he did not receive confidential information concerning that subject. *Ibid.*  The County, although it presumably has access to any number of individuals with knowledge of the work of the CCJV, has provided no contrary evidence whatsoever.

The County does repeatedly assert, correctly, that the work of the CCJV included investigation of issues related to the treatment of inmates with mental-health issues.  As noted in the CCJV's report and the County's motion, such inmates are, sadly, especially prone to being victims of the inappropriate use of force in County jails.  *See, e.g.*, Castro-Silva Decl. Exh. A p. 9.  But nowhere does the County assert—because it cannot truthfully do so—that the CCJV's work included anything related to *discharge planning* for such inmates.  None of the references to mental health issues in the final CCJV report that are cited by the County (Motion at 3:1-22) are related to discharge planning, and Plaintiff-Intervenors are aware of no references to such planning in that report.  *See* Castro-Silva Decl. Exh. A.  There are no references to discharge planning in the minutes of the CCJV that are Exhibit B to Mr. Castro-Silva's declaration.  *See id.* Exh. B.  And there are no references to discharge planning in the Implementation Plan developed by the Court Monitors in *Rosas, et al. v. Baca*, Case No. CV 12-00428 DDP, which is attached to that declaration as Exhibit F.  *See id.* Exh. F.  To the contrary, the Implementation Plan expressly states that the  Court Monitors "have not made any recommendations to address issues regarding [mentally ill and suicidal] inmates *other than relating to the use of force against these inmates*."  *Id.* Exh. F p. 1.

## C.  Munger, Tolles's Agreements with the County and the CCJV

### 1.  The SLS Agreement

In March, 2012, Munger, Tolles and the County entered into the SLS Agreement.  Silva Decl. Exh. C.  The SLS Agreement governed Munger, Tolles's provision of the pro-bono services of Mr. Drooyan as General Counsel, Ms. Godley as Deputy General Counsel, and any other Munger Tolles attorneys as Counsel to the CCJV.  *Id.* p. 1.  Paragraph 1.1 of the SLS Agreement states:  "Munger, Tolles['s] representation relates *only* to advising the CCJV about the nature, depth and cause of *inappropriate use of force* in Los Angeles County jails ('the Subject

Matter')." *Id.* ¶ 1.1.  Thus, the County expressly agreed that Munger, Tolles's representation did *not* relate to discharge planning for prisoners with mental-health needs.  Paragraph 1.2 provides:  "Munger, Tolles shall have an attorney-client relationship *only* with the *CCJV* in its representation pursuant to this Agreement." *Id.* ¶ 1.2.  Thus, the County further expressly agreed that Munger, Tolles would *not* have an attorney-client relationship with either the County itself or the Sheriff, who are the only defendants in this case.

The term of the SLS Agreement was March 1, 2012 through December 31, 2012, on which date the Agreement terminated. *Id.* ¶ 2.1.  Thus, Munger, Tolles ceased providing legal services to the CCJV under the SLS Agreement on January 1, 2013.

Paragraph 4.0 of the SLS Agreement, which was specifically negotiated between counsel for the County and Munger, Tolles, Drooyan Decl. ¶ 5, governs conflicts of interest. *Id.* pp. 9-10.  Paragraph 4.1 provides:

> [T]he County … agrees to waive any and all actual or potential conflicts of interest that Munger, Tolles and General Counsel may now have, or in the future may have, including but not limited to conflicts based upon litigation or transactions in which Munger, Tolles represents one or more clients adverse to a County Entity, or investigations by the Sheriff's Department in which Munger, Tolles represents one or more clients, to the extent that such conflict is based solely upon Munger, Tolles' work under this Agreement ….

*Id.* ¶ 4.1.  Paragraph 4.1 contains just two exceptions to this broad waiver:

> (i) *during the duration of this Agreement* [March 1, 2012 – December 31, 2012], the County is not waiving any conflicts in any matters in which Munger, Tolles represents a client adverse to a County Entity that arises out of or is based upon any alleged actions or inactions by the Sheriff's Department, or any Sheriff's Department deputy or employee, or that arises out of or is based upon its operations of any Los Angeles County jail facility; and
>
> (ii) for five years after the termination of this Agreement, the County is not waiving any conflicts in any matter in which Munger, Tolles

represents a client that is adverse to a County entity and *the matter is substantially related to the Subject Matter [i.e., the inappropriate use of force in Los Angeles County jails].*

*Id.* Paragraph 4.1 then provides: "Any Munger, Tolles attorneys who serve as [counsel] to the CCJV shall not work on a matter that is substantially related to the Subject Matter and shall be ethically screened from any such Munger, Tolles matter in the future." *Id.*

Paragraph 4.3 of the SLS Agreement provides:

County agrees that should a County Entity contend that, except for a conflict under 4.1(i) [for simultaneous adverse representation], a conflict exists as a result of Munger, Tolles' work under this Agreement or that this waiver is not effective, *Munger, Tolles may terminate this Agreement immediately and may continue the representations at issue notwithstanding the purported conflict.*

*Id.* ¶ 4.3.

## 2.   The IM Agreement

On January 7, 2013, Munger, Tolles and the County entered into the IM Agreement.  Castro-Silva Decl. Exh. D.  The recitals in the IM Agreement state that "the Los Angeles County Board of Supervisors created the CCJV to conduct a review of the nature, depth, and case of the problem of *inappropriate deputy use of force in the jails*"; that "the CCJV issued a comprehensive report containing 63 recommendations intended to address various aspects of *the problem of use of force in the jails*"; and that the Board "has decided to retain an independent Implementation Monitor to oversee the implementation of the CCJV's recommendations."  *Id.* p. 1.  The term of the Agreement was initially through November 1, 2013, and was later extended through January 1, 2014.  *Id.* ¶ 2.1; Castro-Silva Decl. Exh. E (Amendment).[2]

---

[2] Mr. Drooyan was a partner at Munger, Tolles until December 31, 2013..  Drooyan Decl. ¶ 2.

Paragraph 4.0 of the IM Agreement, which again was specifically negotiated between counsel for the County and Munger, Tolles, Drooyan Decl. ¶ 5, governs conflicts of interest.  Paragraph 4.1 provides:

> [T]he County agrees to waive and hereby waives any actual or potential conflicts of interest that Munger, Tolles and Drooyan may now have, or in the future may have, including but not limited to conflicts based upon litigation or transactions in which Munger, Tolles represents one or more clients adverse to the County or in investigations by the Sheriff's Department in which Munger, Tolles represents one or more clients ….

*Id.* ¶ 4.1.  Paragraph 4.1 again provides for just two exceptions to this broad waiver. The first applies, again, only "during the duration of Munger, Tolles' services under this Agreement." *Id.* ¶ 4.1(i).  The second applies "for five years after the termination of Munger, Tolles' services pursuant to this Agreement" and excepts from the waiver "any matter arising out of *facts and circumstances that Drooyan evaluated in his service as Implementation Monitor* …." *Id.* ¶ 4.1(ii).

## III.  ARGUMENT

### A.   Legal Standards on Motion to Disqualify Counsel

Disqualification of counsel "is a drastic measure that is disfavored." *Yumul v. Smart Balance, Inc.*, 2010 WL 4352723, at *3 (C.D. Cal. Oct. 8, 2010) (quoting *Crenshaw v. MONY Life Ins. Co.*, 318 F. Supp. 2d 1015, 1020 (S.D. Cal. 2004); *see also O'Shea v. Epson America, Inc.*, 2010 WL 2305863, at *2 (C.D. Cal. June 4, 2010) ("[B]ecause a motion to disqualify is often tactically motivated and can be disruptive to the litigation process, disqualification is a drastic measure that is generally disfavored and should only be imposed when absolutely necessary."); *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 814 (N.D. Cal. 2004) (same). Because of the potential for abuse, "disqualification motions should be subject to 'particularly strict judicial scrutiny'." *Optyl Eyewear Fashion International Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985); *see also So v. Land Base, LLC*,

2010 WL 3075641, at *2 (C.D. Cal. Aug. 4, 2010) (quoting *Optyl Eyewear*).

Indeed, the California Court of Appeal has cautioned that "motions to disqualify counsel often pose the very threat to the integrity of the judicial process that they purport to prevent." *Gregori v. Bank of America*, 207 Cal. App. 3d 291, 300-01 (1989).[3]

In order to prevail on a motion to disqualify based on successive (rather than simultaneous) representations, the moving party and former client bears the burden of showing "either: (1) that the former attorney actually possesses confidential information adverse to the former client; or (2) that there is a 'substantial relationship' between the former and current representation[s]." *Fabric Selection, Inc. v. Wal-Mart Stores, Inc.*, 2009 WL 3876281, at *2 (C.D. Cal. Nov. 17, 2009) (quoting *H.F. Ahmanson & Co. v. Salomon Bros., Inc.*, 229 Cal. App. 3d 1445, 1452 (1991)); *see also id.* ("It remains the former client's burden to show both the fact of the former representation and the existence of a substantial relationship between the former and current representation.").

The substantial-relationship prong requires a close connection between the factual and legal questions in the previous and subsequent representations. "Even where the two representations involve the same general subject, disqualification is not required if the nature of the factual and legal questions posed are not similar." *Fabric Selection*, 2009 WL 3876281, at *3 (quoting *Saint Teresa Citizen Action Group v. City of San Jose*, 114 Cal. App. 4th 689, 711 (2003). Rather, the moving party must show that, in the prior representation, "the attorney personally provided legal advice and services on a legal issue that is closely related to the legal issue in the present representation." *City & County of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 847-48 (2006).

---

[3] California law governs this motion for disqualification. *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).

The confidential-information prong likewise requires that, "[t]o create a conflict requiring disqualification ... the information acquired during the first representation [must] be 'material' to the second; that is, it must be found to be directly at issue in, or have instead some critical importance to, the second representation." *Fabric Selection*, 2009 WL 3876281, at *3.

An advance waiver of potential future conflicts is permitted under California law, even if the waiver does not specifically state the exact nature of the future conflict. *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1105 (N.D. Cal. 2003); *see also Western Sugar Coop. v. Archer-Daniels-Midland Co.*, 2015 WL 690306, at *5 (C.D. Cal. 2015) (citing *Visa*).

## B.   No Successive-Representation Conflict Exists, Even Setting Aside The County's Broad Conflict Waivers

The County has failed to show the existence of a substantial relationship between Munger, Tolles's prior representation of the CCJV, the Board of Supervisors, and the County and its current representation of Plaintiff-Intervenors. The prior representations related solely to the inappropriate use of force in Los Angeles County jails. The current representation relates solely to discharge planning for inmates with mental-health needs and does not relate in any way to the use of force in the jails.

That Munger, Tolles's prior representations were limited to the use-of-force issue is confirmed by the plain language of the SLS and IM Agreements. The "Subject Matter" of the SLS Agreement and of Munger, Tolles's representation of the CCJV under that agreement is expressly defined as "*only ... the nature, depth and cause of inappropriate use of force in Los Angeles County jails.*" Castro-Silva Decl. Exh. C ¶ 1.1. The IM Agreement similarly defines the scope of services to be provided by Mr. Drooyan as to "independently review and report ... on the progress made by the Sheriff's Department in implementing the recommendations made by

the CCJV, and shall perform such specialized legal services as are necessary to accomplishes the purposes of the CCJV recommendations." *Id.* Exh. D ¶ 1.1.  As the IM Agreement itself recognizes, the CCJV was created to review "the problem of *inappropriate use of force in the jails*" and the CCJV's "recommendations [were] intended to address various aspects of the problem of *use of force in the jails*." *Id.* Exh. D at 1.

Here, it is undisputed that Munger, Tolles's representation of Plaintiff-Intervenors in the current matter is limited to factual and legal issues related to discharge planning for inmates with mental-health needs.  There is no evidence whatsoever—and the County does not contend there is—that Munger, Tolles's representation of the CCJV, the Board of Supervisors, or the County was related to such discharge planning.  To the contrary, the declarations submitted by the General Counsel and numerous other Counsels to the CCJV conclusively establish that it was not.  Because the County does not, and could not, contend that issues related to discharge planning are substantially related to Munger, Tolles's representation of the CCJV, the Board of Supervisors, or the County it has failed to show a substantial relationship between the two representations.

The mere fact that both representations involve the general subjects of jails and mental health is not sufficient to make them substantially related.  *Fabric Selection*, 2009 WL 3876281, *3 ("[E]ven where the two representations involve the same general subject, disqualification is not required if the nature of the factual and legal questions posed are not similar.").  Instead, the County must show that the legal issues on which Munger, Tolles provided advice to the CCJV, the County, or the Board of Supervisors are "closely related" to the legal issues raised here by Plaintiff-Intervenors.  The legal issues here relate exclusively to whether the discharge-planning provisions of the Settlement Agreement comply with the Americans with Disabilities Act, the Rehabilitation Act, and the Constitution.  None

of those issues was involved in Munger, Tolles's prior representations of the CCJV, the Board of Supervisors, or the County.

The County does not claim that discharge planning for inmates with mental-health needs—the sole focus of Munger Tolles's representation of Plaintiff-Intervenors here—was a subject matter of its representations under either the SLS Agreement or the IM Agreement.  Instead, the County repeatedly argues that the prior matters and the instant matter are substantially related because "this case"— that is, the *entire* case, not just the subject of the proposed intervention—involves allegations and claims of "excessive force" in the jails, including against inmates with mental-health issues.  *See, e.g.*, Motion at 8:13-15; 8 n.2; 10:10-14; 12:26-28.

But the issue on this motion is not whether some aspects of this *case*, in its entirety, are substantially related to Munger, Tolles's prior work.  The issue is whether "there is a 'substantial relationship' between the former and current *representations*."  *Fabric Selection*, 2009 WL 3876281, at *2 (quoting *H.F. Ahmanson*, 229 Cal. App. 3d at 1452): *see also McElroy v. Pacific Autism Center for Education*, 2015 WL 2251057, at * 3 (N.D. Cal. May 13, 2015) ("The burden is on the party seeking the disqualification 'to show both the fact of the former representation and the existence of a substantial relationship between the former and current *representations*.") (quoting *In re Charlisse C.*, 45 Cal. 4th 145, 166 n.11 (2008)). Because Munger, Tolles's representation of Plaintiff-Intervenors relates only to discharge planning, while its representation of the CCJV, the Board of Supervisors, and the County related only to the use-of-force issue, the County cannot satisfy the substantial-relationship test.

For essentially the same reasons, the County fails to meet the confidential-information prong.  The County has not and cannot show that any confidential information Munger, Tolles acquired during its prior representations satisfies the materiality standard—*i.e.*, that the information "be *directly at issue* in, or have

instead some *critical importance* to, the second representation." *See Fabric Selection*, 2009 WL 3876281, at *3. Indeed, multiple attorneys who represented the CCJV—including attorneys from major Los Angeles law firms other than Munger, Tolles—have confirmed that they did not receive confidential information related to discharge planning, the subject of the subsequent representation here. Drooyan Decl. ¶ 6; Godley Decl. ¶ 3; Aenlle-Rocha Decl. ¶ 3; Deixler Decl. ¶ 3; Cohen Decl. ¶ 3; Swerdlow Decl. ¶ 3; Schindler Decl. ¶ 3. Likewise, Mr. Drooyan's declaration establishes that he did not receive any confidential information related to discharge planning in his role as Implementation Monitor. Drooyan Decl. ¶ 7.

In sum, because the prior and subsequent representations are not substantially related and because Munger, Tolles did not receive confidential information directly at issue in or of critical importance to its representation of Plaintiff-Intervenors on discharge planning issues, there would be no basis to disqualify Munger, Tolles from representing Plaintiff-Intervenors even if the County had not agreed to broad conflict waivers. It did, however, enter into such waivers, which, as explained below, provide an independent basis for denying the County's disqualification motion.

## C.   The County Has Expressly Waived Any Purported Conflict of Interest.

As set forth in detail above, the County has expressly and in writing waived "any and all actual or potential conflicts" that Munger, Tolles may have to the extent the alleged conflict is, as here, based solely on the firm's work under the SLS Agreement or the IM Agreement. Castro-Silva Decl. Exh. C ¶ 4.0; Ex. D ¶ 4.0. The only exceptions to that waiver are, first, for alleged conflicts that arose during the duration of Munger, Tolles's provision of legal services to the CCJV or the Board of Supervisors under those two agreements; and, second, for alleged conflicts that are substantially related to the inappropriate use of force in County jails—in which case, screening cures the conflict and Munger, Tolles has the right to terminate the

agreement and continue the subsequent representation—or that arise from facts and circumstances evaluated by Mr. Drooyan as Implementation Monitor—which Mr. Drooyan's declaration conclusively establishes did not include discharge planning. *Id.* Exh. D ¶ 4.1; Exh. D ¶ 4.1.

It is undisputed that Munger, Tolles no longer provides legal services under the SLS Agreement or the IM Agreement, so the exception appearing in paragraph 4.1(i) of each agreement does not apply.  Paragraph 4.1(i) applies to *simultaneous adverse representation*—a situation in which Munger, Tolles is, at the same time, both providing legal services under the SLS or IM Agreement and representing another client adverse to the County.[4]  No such situation exists here.  While the County speculates that there might be a conflict if Munger, Tolles started representing the Plaintiff-Intervenors while it was still providing services under the SLS or IM Agreements, *see* Motion pp. 6:28-7:9, 9:17-20, in fact Munger, Tolles's representation of the Plaintiff-Intervenors commenced during September, 2015, Phillips Decl. ¶ 2, long after the terminations of the two agreements on December 31, 2012, and January 1, 2014.[5]

As a result, the only two exceptions to the County's wide-ranging conflict waiver that could even potentially apply here are those appearing in paragraph 4.1(ii) of each Agreement with respect to successive representations.  In the SLS Agreement, that exception is for "[a] matter [that] is substantially related to the Subject Matter," but even  this exception is negated in the event that Munger, Tolles

---

[4] *See* Godley Decl. ¶ 5; Aenlle-Rocha Decl. ¶ 5; Deixler Decl. ¶ 5; Cohen Decl. ¶ 5.

[5] To the extent the County means to argue that the phrase "during the duration of this Agreement" modifies the time of "actions or inactions" of the Sheriff's Department, rather than the time of Munger, Tolles's alleged adverse representation, that is plainly wrong on the face of the agreements.  And, in any event, Plaintiff-Intervenors' proposed intervention in this matter relates, not to actions or inactions of the Sheriff's Department in 2012 or 2013, but to the *future* conduct of the County and Sheriff with regard to discharge planning.

either screens the attorneys who worked on the prior representation or chooses to terminate the SLS Agreement and continue the new representation.  Castro-Silva Decl. Exh. C ¶ 4.1(ii).  In the IM Agreement, the only potential exceptionis for "any matter arising out of facts and circumstances that Drooyan evaluated in his service as Implementation Monitor."  *Id.* Ex. D ¶ 4.1(ii).  Neither exception applies here.

## 1.   The SLS Agreement

The SLS Agreement's "substantial-relationship" exception does not apply for three separate and independent reasons.

First, as explained above, there is no substantial relationship between the "Subject Matter" of the SLS Agreement—which is defined to mean "only … advising the CCJV about the nature, depth, and cause of inappropriate use of force in Los Angeles County jails"—and the subject matter of Munger, Tolles's current representation of Plaintiff-Intervenors—which pertains only to discharge planning for inmates with mental-health needs.

Second, the screening exception to the "substantial-relationshipd" exception applies.  Immediately after providing an exception for "substantially related" matters, paragraph 4.1 states that "[a]ny Munger, Tolles attorneys who serve as [counsel] to the CCJV shall not work on a matter that is substantially related to the Subject Matter and shall be ethically screened from any such Munger Tolles matter in the future."  Castro-Silva Decl. ¶ 4.1.  The plain import of this provision is that, in the event Munger, Tolles takes on a substantially related (but not simultaneous) adverse representation, it need only ethically screen the attorneys who worked on the CCJV matter.  If paragraph 4.1 were interpreted to contemplate disqualification of the entire firm, regardless of any screening, in the event of a substantial relationship (as the County apparently contends it should be), the screening provision would be meaningless surplusage.  Here, Mr. Drooyan no longer works at Munger, Tolles, and the other Munger, Tolles attorneys who did work for the

OPPOSITION TO MOTION TO DISQUALIFY

CCJV—Ms. Godley, Mr. Macdonald, and Mr. Boyd—have been ethically screened from this matter.  Phillips Decl. ¶ ¶ 3, 4.  *See Kirk v. First Am Title Ins. Co.*, 183 Cal. App. 4th 776, 801 (2010) ("[I]n the proper circumstances, the presumption [of shared confidences] is a rebuttable one, which can be refuted by evidence that ethical screening will effectively prevent the sharing of confidences in a particular case.");  *see also Advanced Messaging Tech., Inc. v. EasyLink Serv. Int'l Corp.*, 913 F. Supp. 2d 900, 911 (C.D. Cal. 2012) (quoting *Kirk*).

Third, even if there were a substantial relationship and ethical screening did not suffice, the motion to disqualify Munger, Tolles based on its work under the SLS Agreement would fail for yet another reason.  Paragraph 4.3 of that agreement expressly provides that, if the County contends that a conflict—other than a conflict arising from simultaneous adverse representation under paragraph 4.1(i)—exists, "Munger Tolles may terminate this Agreement immediately and may continue the representations at issue notwithstanding the purported conflict."  Castro-Silva Decl. Exh. C ¶ 4.3.  Here, the Agreement has already terminated, as of January 1, 2013, so there is no need for Munger, Tolles to exercise its right to terminate under paragraph 4.3.[6]

In a footnote, the County asserts that paragraph 4.3 is somehow unenforceable because it "would render [the Agreement] illusory and unenforceable" and cannot be enforced as written "in light of the good faith and fair dealing covenant."  Motion at 10 n.3.  This argument is meritless, as is demonstrated by the very cases that the County cites.  In *Carma Developers (California) v. Marathon Development California, Inc.*, 2 Cal. 4th 342 (1992), the California Supreme Court stated, "[w]e are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an

---

[6] Paragraph 4.3 was material to the willingness of the law firms that provided pro-bono legal services to the CCJV to do so.  Godley Decl. ¶ 4; Aennle-Rocha ¶ 4; Deixler Decl. ¶ 4; Cohen Decl. ¶ 4; Swerdlow Decl. ¶ 4; Schindler Decl. ¶ 4.

1    agreement.  On the contrary, as a general matter, implied terms should never be read

2    to vary express terms." *Id.* at 374.[7]  In *Storek & Storek, Inc. v. Citicorp Real Estate,*

3    *Inc.*, 100 Cal. App. 4th 44 (2002), the court of appeal noted that, in *Carma*, "[t]he

4    court held as a matter of law that because the lessor's termination of the lease was

5    expressly permitted by the lease and clearly within the parties' expectation, such

6    conduct could never violate an implied covenant of good faith and fair dealing."

7    *Storek*, 100 Cal. App. 4th at 56.  Here, of course, the SLS Agreement expressly

8    permits Munger, Tolles's termination of the agreement in order to avoid

9    disqualification based on an alleged conflict.

10      The *Storek* court, in a passage selectively quoted by the County, also stated as

11    follows:

> [W]hen a party is given absolute discretion by express language, the
> courts will imply a covenant of good faith and fair dealing to limit that
> discretion in order to create a binding contract and avoid a finding that
> the promise is illusory.  However, *when the contract is adequately*
> *supported by adequate consideration regardless of the discretionary*
> *power, there is no need to impose a covenant of good faith in order to*
> *create mutuality.*  "The conclusion to be drawn is that the courts are not
> at liberty to imply a covenant directly at odds with a contract's express
> grant of discretionary power *except in those relatively rare instances*
> *when reading the provision literally would, contrary to the parties'*
> *clear intention, result in an unenforceable, illusory agreement.*"

---

[7] The County wrongly cites *Carma* for the proposition that a "discretionary power affecting the rights of others" must be interpreted "to limit that discretion in order to create a binding contract and avoid a finding that the promise is illusory."  Motion at 10 n.2 (purportedly quoting from *Carma*, 2 Cal. 4th at 372).  Neither that language nor words to that effect appear in *Carma*, either on page 372 or elsewhere.

*Id.* at 57 (quoting *Third Story Music, Inc. v .Waits*, 41 Cal. App. 4th 798, 808 (1995)).  The County misleadingly quotes only from the first sentence of this passage.  Motion at 10 n.3.[8]

Here, it is undisputed that the SLS Agreement was supported by adequate consideration regardless of Munger, Tolles's right to terminate the agreement under paragraph 4.3.  Indeed, the SLS Agreement had been *fully performed* by Munger, Tolles as of January 1, 2013, by which date the firm had already provided to the CCJV the extensive pro-bono legal services of Mr. Drooyan and Ms. Godley.  There is, therefore, absolutely no basis to imply a covenant at odds with paragraph 4.3's express grant of discretionary power to Munger, Tolles in order to avoid rendering the SLS Agreement illusory or unenforceable.  The County's attempt to dispense with paragraph 4.3 is meritless.[9]

## 2.    The IM Agreement

Paragraph 4.1(ii) of the IM Agreement excepts from the County's waiver "any matter arising out of facts or circumstances that Drooyan evaluated in his service as Implementation Monitor."  Castro-Silva Decl. Exh. D ¶ 4.1(ii).  As demonstrated above, it is undisputed that Munger,Tolles's representation of

---

[8] The third case cited by the County is an *unpublished* California Court of Appeal opinion that merely quotes the first sentence of the above passage from *Storek*. *See CLK, Inc. v. American Commercial Capital, LLC*, 2004 WL 2284271, at *3 (Cal. Ct. App. Oct. 12, 2004) (not officially published).

[9] Any argument that all or any part of paragraph 4.0 is unenforceable because it contains an advance waiver of potential future conflicts would be similarly meritless. *See Western Sugar Coop.*, 2015 WL 690306, at *5 ("[A]n advanced waiver of potential conflicts need not specify the exact nature of the future conflict. California law does not require that every possible consequence of a conflict be disclosed for consent to be valid; the inquiry is 'whether the waiver was fully informed.'") (citation omitted); *Visa U.S.A, Inc.*, 241 F. Supp. 2d at 1105 (same). Here, the County—a highly sophisticated consumer of legal services—does not and could not plausibly contend that its consent to paragraph 4.0 of the SLS Agreement, which was signed by the Acting County Counsel, was not fully informed.

Plaintiff-Intervenors here is limited to the issue of discharge planning for inmates with mental-health needs. *See supra* § II.A. It is also undisputed that Mr. Drooyan did not, as IM, evaluate facts or circumstances related to discharge planning—the issue on which Munger, Tolles is representing Plaintiff-Intervenors. Mr. Drooyan has submitted a declaration to that effect, and the County has presented no contrary evidence. *See* Drooyan Decl. ¶ 7. The exception provided by paragraph 4.1(ii) of the IM Agreement therefore does not apply, and the County has waived any other conflict purportedly arising from Mr. Drooyan's work as IM.

## IV.   CONCLUSION

For all the foregoing reasons, the County's motion to disqualify Munger, Tolles should be denied.

DATED:  October 26, 2015

MUNGER, TOLLES & OLSON LLP
BRADLEY S. PHILLIPS
GRANT A. DAVIS-DENNY
EMILY R.D. MURPHY


By:  ___/s/ Bradley S. Phillips___
BRADLEY S. PHILLIPS
Attorneys for Plaintiff-Intervenors

DATED:  October 26, 2015

PUBLIC COUNSEL
MARK ROSENBAUM
GARY BLASI
ANNE RICHARDSON
ADELAIDE ANDERSON
ALISA HARTZ


By:  ___/s/ Mark Rosenbaum___
MARK ROSENBAUM
Attorneys for Plaintiff-Intervenors