SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
GREGORY F. HURLEY, Cal. Bar No. 126791
ghurley@sheppardmullin.com
MICHAEL J. CHILLEEN, Cal. Bar No. 210704
mchilleen@sheppardmullin.com
BRADLEY J. LEIMKUHLER, Cal. Bar No. 261024
bleimkuhler@sheppardmullin.com
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1993
Telephone: 714.513.5100
Facsimile: 714.513.5130

LOS ANGELES COUNTY,
OFFICE OF THE COUNTY COUNSEL
Mary C. Wickham, Cal. Bar No. 145664
Rodrigo A. Castro-Silva, Cal. Bar No. 185251
rcastro-silva@counsel.lacounty.gov
Brandon Nichols, Cal. Bar No. 187188
bnichols@counsel.lacounty.gov
500 W. Temple Street, Rm. 648
Los Angeles, CA 90012
Telephone: 213.974.1811
Facsimile: 213.626.7446

Attorneys for Defendants,
COUNTY OF LOS ANGELES
AND LOS ANGELES COUNTY
SHERIFF JIM MCDONNELL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

COUNTY OF LOS ANGELES AND LOS ANGELES COUNTY SHERIFF JIM MCDONNELL, in his Official Capacity,

Defendants.

---

TERESA POWERS, DAVID PENN, TIMOTHY POLK, MARK SARNI, DERRICK THOMAS, DARSEL WHITFIELD, ROYAL WILLIAMS, AND LEPRIEST VALENTINE,

Movants.

Case No. 2:15-cv-05903-DDP-JEM
Judge: Hon. Dean D. Pregerson

**REPLY BRIEF IN SUPPORT OF MOTION TO DISQUALIFY MUNGER, TOLLES & OLSON LLP AS COUNSEL**

Date: November 16, 2015
Time: 10:00 a.m.
Crtm: 3

Complaint Filed: August 5, 2015
Trial Date: None Set

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1
II. ARGUMENT ..... 2
A. The Munger Firm's Current Representation Is Substantially Related To Their Prior Representation Of The County. ..... 2
B. The County Did Not Waive The Alleged Conflict. ..... 7
1. The March 1, 2012 Agreement ..... 7
2. The January 7, 2013 Agreement. ..... 11
C. Proposed Intervenors Concede They Will Suffer No Prejudice. ..... 11
III. CONCLUSION ..... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* 2 Cal. 4th 342 (1992) .......... 9

*Cho v. Superior Court* 39 Cal. App. 4th 113 (1995) .......... 9

*Elan Transderman, Ltd. v. Cygnus Threapeutic Sys.* 809 F. Supp. 1383 (N.D. Cal. 1992) .......... 6

*Kaiser v. AT&T* 2002 WL 1362054 (D. Ariz. Apr. 5, 2002) .......... 10

*Klein v. Super. Ct. (Thomas)* 198 Cal. App. 3d 894 (1988) .......... 6

*Richards v. Holsum Bakery, Inc.* 2009 WL 3740725 (D. Ariz. Nov. 5, 2009) .......... 10

*Roosevelt Irr. Dist. v. Salt River Project Agr. Imp. & Power Dist.* 810 F. Supp. 2d 929 (D. Ariz. 2011) .......... 10

*Rosas v. McDonnell* U.S.D.C. Case No. CV 12-00428 DDP .......... 1, 5, 11

*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.* 100 Cal. App. 4th 44 (2002) .......... 9

Statutes

Americans with Disabilities Act (“ADA”) .......... 1

## I. INTRODUCTION

The Motion to Disqualify Munger, Tolles & Olson, LLP (the "Munger firm") should be granted. The issues presented by this motion are straightforward and require the disqualification of the Munger firm in this matter. To wit:

(1) Within the past five years, the Munger firm provided legal representation to the County in connection with the County's Citizen Commission on Jail Violence ("CCJV");

(2) The CCJV was created to investigate the treatment of inmates in the County jails;

(3) The treatment of inmates with mental health issues in the jails was a concern specifically identified and discussed in the CCJV;

(4) A former partner at the Munger firm, Richard Drooyan, was the general counsel for the CCJV, the Munger firm hosted and housed the CCJV and its staff, and other attorneys and staff at the Munger firm worked on the representation;

(5) In *Rosas v. McDonnell*, U.S.D.C. Case No. CV 12-00428 DDP (SHx), the County of Los Angeles ("County") agreed to implement recommendations of the CCJV, as well as adopt significant reforms to its policies and procedures governing use of force against inmates, including those with mental illness;

(6) Mr. Drooyan was appointed the implementation monitor for the County to oversee the reforms agreed to in the *Rosas* settlement;

(7) As part of the representation, the Munger firm received confidential and privileged information about mental health treatment in the jails and use of force directly from the County and the Sheriff's Department;

(8) Now, the Munger firm seeks to represent Proposed Intervenors in this matter, who are all former inmates of the County jails that claim to suffer from some form of mental illness, and contend that the reforms recently agreed to in a settlement agreement between the Department of Justice ("DOJ") and the County violate the Americans with Disabilities Act ("ADA").

Based on the above, the Munger firm has an ethical conflict of interest that prohibits it from representing Proposed Intervenors interests here because the firm is adverse to the County on an issue substantially similar to its prior representation.

The Munger firm dismisses these concerns by arguing that the County waived any applicable conflicts. In doing so, they engage a myopic reading of contract language that ignores the reality of the legal services actually provided and the actual changes sought by Proposed Intervenors here. Indeed, the Munger firm's reasoning of the contract language is conclusively rebutted by their complaint in intervention, the evidence submitted in support of their motion to intervene, which goes into great detail of the alleged experience of Proposed Intervenors in the jails generally, and the remedy they seek in this action – a fundamental change to the delivery of mental health services to all inmates from the beginning of their incarceration throughout their release and beyond.

The Munger firm, by virtue of their previous legal representation of the County, no doubt has an intimate and unique knowledge of the jails, including their inner workings, policies, procedures, operations, capabilities, the problems faced, and attempted solutions. Making matters worse, Proposed Intervenors seek to be paid their attorneys' fees as a result of bringing this action. (*See* Prayer).

The County is thus prejudiced by having its former counsel turn into its adversary. Accordingly, the County respectfully requests that the Court grant its Motion and disqualify the Munger firm from representing the Proposed Intervenors. The Proposed Intervenors would suffer no prejudice as they would still have no fewer than five attorneys from Public Counsel to represent them in this action.

## II. ARGUMENT

### A. The Munger Firm's Current Representation Is Substantially Related To Their Prior Representation Of The County.

In their opposition, Proposed Intervenors disingenuously attempt to characterize their claims as narrowly as possible by repeatedly insisting that they are

limited to "discharge planning" and not related to the treatment of mentally ill prisoners in the jails generally. The Court should ignore these attempts and instead look to what the Proposed Intervenors are seeking the Court to order, the claimed histories of the individual Proposed Intervenors used to support their positions, and what the subject matter of this litigation will look like.

*First*, the Proposed First Amended Complaint in Intervention ("FAC") plainly states that "This action concerns the administration of persons confined at the Jails." (Dkt. 37-1 at ¶ 24). This makes it patently clear that the scope of this action broadly includes all aspects of the operation of the jails.

*Second*, the Proposed Intervenors' Proposed Revisions to Paragraph 34 reveals that, under the proposed revisions, discharge planning would impact the entire time an individual was incarcerated. For example, the proposed revisions say: "Discharge planning shall begin at the time of an incarcerated individual's assessment and administration to mental health care and shall continue throughout service delivery until implementation of the plan upon the prisoner's release from incarceration." (Dkt. 35-1 at 2). Again, this would broadly impact the administration of the jails.

*Third*, the evidence submitted by Proposed Intervenors in support of their Motion to Intervene makes clear that they consider their past experience with the jails to be at the very least relevant to this lawsuit. These alleged past experiences also specifically include instances of violence and "use of force" that the Munger firm asks the Court to ignore for the purposes of this motion to disqualify but consider for the purposes of intervention. For instance:

- Ms. Powers declares: "I was put into the '5150 tank,' the mental health ward of the jail, and it was awful. I did not get any help or medications for a long time after I arrived, even though I was detoxing and hearing voices. The conditions were terrible. The guards would yell at us all the time, and the toilet in my cell didn't work, so I had to go to the

bathroom in a hole in the middle of the room. Then I did see a doctor and they gave me medication." (Dkt. 27-1 at 5, Powers Decl. ¶ 8).

- Mr. Penn declares: "My time in jail was terrible. I was still hearing voices and it was hard to trust people. The jailers treat people terribly in there. It made my mental state worse. I saw crazy things when I was in there too. I saw people beat up each other. I saw a guy try to hang himself. I woke up to the sound of him choking and I heard other inmates shouting for the deputies. I couldn't sleep for two days after that." (Dkt. 27-1 at 10, Penn Decl. ¶ 10).
- Mr. Polk declares: "I was treated very badly in jail. Once they illegally stripped search me. It was degrading and unnecessary. The jailers spoke to me like I was an asshole. They treated me like crap. They cursed at me. They intimidated me. They were very violent. They also starve you in there. They just give you enough to maintain your life." (Dkt. 27-1 at 14, Polk. Decl. ¶ 11).

Therefore, one of the concerns that Proposed Intervenors have put at issue in this litigation is their past experience in the jails, and specifically their treatment in the jails as individuals with mental health disorders – including use of force concerns. Proposed Intervenors cannot genuinely claim that they do not consider their past experiences to be part of their representation in this action.[1] Of course,

---

[1] As explained in Defendants' opposition to Proposed Intervenors' motion to intervene in this action, it is Defendants' position that Proposed Intervenors lack standing to intervene in this action as they have suffered no injury-in-fact as outlined in their FAC because, *inter alia*, these new policies have yet to be implemented and/or fully developed. However, Proposed Intervenors cannot have it both ways. They cannot use their past experience to establish standing in this lawsuit and also claim that their past experience with the policies and administration of the jails is not relevant to this lawsuit to avoid the disqualification of their counsel. Particularly when said counsel represented the County in the study of the

through the Settlement Agreement, the County and the DOJ have agreed to new policies and procedures in an attempt to address these complex and important issues.

*Fourth*, even if the Court accepts the premise that what Proposed Intervenors seek is limited to changes to discharge planning, it is likely unavoidable that if the litigation develops, discovery in this action will touch upon issues upon which Munger provided legal advice to the County. Given the insider access to the County's confidential records, policies and procedures regarding the administration of the jails to its former counsel, this may provide a unique (and improper) advantage to Proposed Intervenors.

*Fifth*, Proposed Intervenors are seeking to intervene in a lawsuit brought by the DOJ against Defendants – which involves a broad array of allegations and claims that include use of force issues and mental health treatment for inmates generally. The language of the Settlement Agreement makes that clear. (*See*, Docket No. 14, ¶¶ 11, 12; *see also*, Exhibit "F" – Implementation Plan from *Rosas*, Section 4 – Use of Force on Mental Ill Prisoners). The underlying litigation is much broader than what is claimed by Proposed Intervenors.

Therefore, the claim that the scope of the Munger firm's representation in this action is limited to "discharge planning" falls apart when the real nature of what this matter concerns is considered.

The Munger firm does not dispute that their former partner received confidential information regarding a host of issues relating to the jails. The narrow attestation by Mr. Drooyan and the other declarants that they did not work on or receive confidential information regarding "discharge planning" does not alter that conclusion. Notably, Mr. Drooyan and the other declarants do not deny receiving confidential information regarding the operation of the jails including treatment of

---

past policies and administration of the jails and implementation of recommended reforms.

prisoners with mental health concerns. Nor could they. (*See, e.g.* Exh. C (¶ 3.0 access to records and confidentiality), Exh. D (¶ 3.0 access to records and confidentiality), Exh. B meeting minutes). Moreover, the term "discharge planning" itself is vague and meaningless without a thorough description of the actual policies and procedures implicated by this term.

To illustrate this, consider the following. One of the issues raised by Proposed Intervenors is the appropriate method to provide prescription drugs to prisoners with mental health issues. As discussed above, Proposed Intervenors' proposed revisions to Paragraph 34 (under the claimed ambit of "discharge planning") includes issues with respect to the initial assessment of prisoners for mental health concerns. This would include determination of any necessary prescription drugs and/or mental health services required to effectively treat the prisoner. Provision of proper prescription drugs and/or mental health services to prisoners with mental health issues is arguably related to use of force issues in the jails. The CCJV report itself extensively discusses the importance of access to effective mental health treatment in the jail as a factor in reducing jail violence. (*See, e.g.*, Exh. A at 37-38). Proposed Intervenors here have linked access to medications and effective mental health treatment in the jails to proper "discharge planning." These issues are inexorably intertwined.

Thus, the issues for which the Munger firm provided legal representation previously to the County are substantially similar to the issues for which they seek to represent Proposed Intervenors here. As a result, the Munger firm is ethically prohibited from representing Proposed Intervenors in this action. *See, e.g.*, *Klein v. Super. Ct. (Thomas)*, 198 Cal. App. 3d 894, 909, 912-13 (1988) (In California, general rule is that where an attorney is disqualified, entire law firm is vicariously disqualified as well.); *Elan Transderman, Ltd. v. Cygnus Threapeutic Sys.*, 809 F. Supp. 1383, 1390 (N.D. Cal. 1992) ("[T]he presumption of shared confidences is

based on the common-sense notion that people who work in close quarters talk with each other, and sometimes about their work.").

**B. The County Did Not Waive The Alleged Conflict.**

The Munger firm argues that, even if a conflict did exist, the Court is still not required to disqualify them as a result of conflict waiver provisions in their engagement letters with the County. They are wrong.

1. The March 1, 2012 Agreement

The March 1, 2012 Agreement expressly carves out situations where the County would not waive any potential conflicts with the Munger firm. The March 1, 2012 agreement states: "For five years after the termination of this Agreement, the County is not waiving any conflicts in any matter in which Munger, Tolles represents a client that is adverse to a County Entity if the matter is substantially related to the Subject Matter." (Exhibit C, page 4, Section 4.1(ii)).

Proposed Intervenors offer three arguments to avoid the application of this provision. Each is unpersuasive.

*First*, the Munger firm claims that, because "Subject Matter" is defined as "advising the CCJV about the nature, depth, and cause of inappropriate use of force in Los Angeles County jails," their representation of the Proposed Intervenors here is not substantially related. As discussed above, it strains credulity that Proposed Intervenors believe that discharge planning for prisoners with mental health issues is unrelated to use of force issues. Particularly when (1) the CCJV report repeatedly stressed use of force concerns with respect to mentally ill inmates and identified the mistreatment of prisoners with mental health issues to be a concern (Exhibit A – pp 9, 24, 26-28, 51, 59, 124, 131, and 136); (2) the detailed descriptions of the treatment they received in the jails for their mental health concerns in the declarations submitted by Proposed Intervenors in support of their motion to intervene; (3) the scope of Proposed Intervenors proposed revisions to paragraph 34

to address the entire scope of a prisoner's incarceration. Indeed, the entire focal point of Proposed Intervenors claim is that inadequate discharge planning leads to a high level of re-incarceration for individuals with mental health issues. In essence, inadequate mental health services was studied by the CCJV as a reason for the number of force incidents in the jail housing mental health inmates and is the precise issue identified by Proposed Intervenors here. At minimum, these concerns are substantially related and it is disingenuous for Proposed Intervenors to argue otherwise solely for the purpose of avoiding disqualification of their counsel.

*Second*, Proposed Intervenors argue that "screening" procedures employed by the Munger firm have "cured" any potential conflict. Proposed Intervenors rely on paragraph 4.1 in the March 2012 Agreement that states: "any Munger, Tolles attorneys who serve as [counsel] to the CCJV shall not work on a matter that is substantially related to the Subject Matter and shall be ethically screened from any such Munger Tolles matter in the future." (Exhibit C at ¶ 4.1). The Munger firm claims that this language allows them to screen any individual attorneys from substantially related matters, notwithstanding the five year provision, and still accept the representation. Of course, such a reading would render the five year provision meaningless.

What this provision actually says is that the individual attorneys at the Munger firm who actually worked on the representation for the County should not be permitted to work on any substantially related matter in the future and instead be appropriately screened. The March 2012 agreement contemplated that the Munger firm may be permitted to undertake any representations substantially related to the subject matter of its representation of the county after the five year period had passed – but on the condition that the individual attorneys who actually worked on the matter were screened.

In effect, the County required the Munger firm to accept (1) a modest, five year waiting period before accepting more substantially related matter, and (2) a

limited screening procedure for the attorneys who actually worked on the case. The Munger firm's proposed use of ethical screening has been rejected in California. *See, e.g, Cho v. Superior Court*, 39 Cal. App. 4th 113, 125 (1995) ("No amount of assurances or screening procedures, no 'code of silence,' could ever convince the opposing party that the confidences would not be used to its disadvantage . . . No one could have confidence in the integrity of a legal process in which this is permitted to occur without the parties' consent.").

*Third*, Proposed Intervenors argue that the Agreement's termination provision excuses their conflict. Paragraph 4.3 of the Agreement states that "County agrees that should a County Entity contend that, except for a conflict under 4. 1(i), a conflict exists as a result of Munger, Tolles' work under this Agreement or that this waiver is not effective, Munger, Tolles may terminate this Agreement immediately and may continue the representations at issue notwithstanding the purported conflict."

Proposed Intervenors' argument should be rejected. As an initial matter, the March agreement has not been terminated. Instead, the Munger firm agreed to provide, and did provide, legal representation to the County under the terms of the Agreement. As Plaintiff-Intervenors concede, the Agreement cannot be terminated because it represents a fully performed contract. It defies logic that a fully performed Agreement's termination provision could be retroactively exercised to excuse a law firm's conflict of interest.

Moreover, it is well-established in California that contracts giving one party "discretionary power affecting the rights of another" are to be interpreted in light of the good faith and fair dealing covenant "to limit that discretion in order to create a binding contract and avoid a finding that the promise is illusory." *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal. 4th 342, 372 (1992); *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 57 (2002).

The County simply asks the Court to interpret this provision in a manner that is fair and reasonable. The County agreed to broadly waive any potential conflicts in future representations by the Munger firm except in two, narrow situations. One, when there was a simultaneous adverse representation. Two, for a period of five years, the Munger firm would not take on any similar representations adverse to the County and would screen any individual attorneys who directly worked on the matter. These terms are not onerous and Munger expressly agreed to provide services under these terms in its contract. The March 2012 Agreement may have contemplated that, if during the course of the representation, the Munger firm wished to terminate the representation to take on another representation adverse to the County, they might have the option to do so. However, the March 2012 Agreement did not contemplate that once the legal services had been fully performed, the Munger firm having total and complete discretion to ignore any future conflicts by retroactively "terminating" the agreement. As a result, paragraph 4.3 does not excuse the Munger firm's conflict and such a reading would render paragraph 4.1(ii) as meaningless surplusage.

Moreover, the termination provision should be read in conjunction with the rules of professional conduct that exist to protect the interests of the client and not those of the lawyer. *Richards v. Holsum Bakery, Inc.*, 2009 WL 3740725, at *6 (D. Ariz. Nov. 5, 2009) ("close or doubtful cases must be resolved in favor of disqualification in order to preserve the integrity of the judicial system."); *see also Kaiser v. AT&T*, 2002 WL 1362054, at *5 (D. Ariz. Apr. 5, 2002) (same) (quoting *Palmer v. The Pioneer Hotel & Casino*, 19 F. Supp. 2d 1157, 1162 (D. Nev. 1998); *see also Roosevelt Irr. Dist. v. Salt River Project Agr. Imp. & Power Dist.*, 810 F. Supp. 2d 929, 944 (D. Ariz. 2011).

Therefore, the County did not waive any applicable conflicts in the March 2012 Agreement.

2. The January 7, 2013 Agreement.

Under Section (ii) of this Agreement, in similar fashion to the March 2012 Agreement, the January 7, 2013 Agreement similarly sets out an exception to the County's waiver of any conflicts. The provision reads: "for five years after the termination of Munger Tolles' services pursuant to this Agreement in any matter arising out of facts or circumstances that Drooyan evaluated in his service as Implementation Monitor and in which the County, Sheriff's Department, or the Board of Supervisors is a party and has interests adverse to those of Munger, Tolles' client." (Exh. D, Page 5, section 4.0).

As discussed above and in the County's moving papers, this case, the CCJV, and the *Rosas* case are all interrelated and involve claims based on, and allegations of, use of excessive force and treatment of inmates with mental illness in County jail. (*See also* Dkt. No. 3, Notice of Related Case, page 2:8-18). Each of these cases broadly involves the provision of mental health services to inmates – from intake, through their time in jail, to discharge, and all steps in between.

Therefore, the County did not waive the applicable conflicts with the Munger firm in the January 2013 Agreement.

**C. Proposed Intervenors Concede They Will Suffer No Prejudice.**

In their Moving papers, the County notes that Proposed Intervenors will suffer no prejudice as a result of the disqualification of the Munger firm. Proposed Intervenors do not contest this point.

## III. CONCLUSION

For all of the foregoing reasons, the County respectfully requests the Court disqualify the Munger firm from representing Proposed Intervenors in this matter.

Dated: November 2, 2015

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By /s/ *Gregory F. Hurley*
GREGORY F. HURLEY

Attorneys for Defendants,
COUNTY OF LOS ANGELES
AND LOS ANGELES COUNTY SHERIFF
JIM MCDONNELL