O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES AMERICA, | ) | Case No. CV 15-05903 DDP (JEMx) |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING MOTION TO |
| v. | ) | INTERVENE |
| | ) | |
| COUNTY OF LOS ANGELES et al., | ) | [DOCKET NUMBER 17] |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

    Presently before the court is a Motion to Intervene filed by Teresa Powers, David Penn, Timothy Polk, Mark Sarni, Derrick Thomas, Darsel Whitfield, Royal Williams, and Lepriest Valentine (collectively, "Intervenors"). Intervenors assert that one paragraph of the executed settlement agreement between Plaintiff ("the government") and Defendant ("the County") violates the Americans with Disabilities Act ("ADA") and Intervenors' Fourth and Eigth Amendment rights. Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following Order.

///

**I.  Background**

On August 5, 2015, the government filed a Complaint against the County under the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. §§ 1997-1997j, and the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141.[1]  The Complaint alleged repeated and systemic violations of prisoners' constitutional rights in the Los Angeles County jail system.  The alleged violations included constitutionally deficient mental health care and related services, such as suicide prevention, psychological and pyschiatric services, and discharge planning, as well as inadequate housing and sanitation practices and a pattern of excessive force against prisoners.  (Complaint ¶¶ 22-26.)

The same day the Complaint was filed, the government and the County filed a stipulated settlement of this matter.  The stipulated Settlement Agreement ("Agreement"), which spans 125 paragraphs and nearly sixty pages, provides for a series of new or enhanced policies and practices across nineteen subject areas intended to ensure that the County will provide "prisoners at the Jails with safe and secure conditions and ensure their reasonable safety from harm, including serious risk from self-harm and excessive force, and ensure adequate treatment for their serious mental health needs."  (Agreement ¶ 16.)  Among the stipulated terms is a provision regarding discharge planning ("Paragraph 34.").  That provision states:

> 34.  The County and the Sheriff will conduct discharge planning and linkage to community mental health

---

[1] The Complaint also named Los Angeles County Sheriff Jim McDonnell as a Defendant, in his official capacity.

providers and aftercare services for all prisoners with serious mental illness as follows:

(a) For prisoners who are in Jail seven days or less, a preliminary treatment plan, including discharge information, will be developed.

(b) For prisoners who are in Jail more than seven days, a [Qualified Mental Health Professional] will also make available:

   (i) for prisoners who are receiving psychotropic medications, a 30-day prescription for those medications will be offered either through the release planning process, through referral to a re-entry resource center, or through referral to an appropriate community provider, unless clinically contraindicated;

   (ii) in-person consultation to address housing, mental health/medical/substance abuse treatment, income/benefits establishment, and family/community/social supports. This consultation will also identify specific action to be taken and identify individuals responsible for each action;

   (iii) if the prisoner has an intense need for assistance, as described in [County Mental Health] policies, the prisoner will further be provided direct linkage to an Institution for Mental Disease ("IMD"), IMD-Step-down facility, or appropriately licensed hospital;

   (iv) if the prisoner has a moderate need for assistance, as described in [County Mental Health] policies, and as clinically appropriate to the needs of the prisoner, the prisoner will be offered enrollment in Full Service Partnership or similar program, placement in an Adult Residential Facility ("Board and Care") or other residential treatment facility, and direct assistance accessing community resources;

          (v)      if the prisoner has minimal needs for assistance, as described in [County Mental Health] policies, the prisoner will be offered referrals to routine services as appropriate, such as General Relief, Social Security, community mental health clinics, substance abuse programs, and/or outpatient care/support groups.

    (c)    The County will provide a re-entry resource center with QMHPs available to all prisoners where they may obtain information about available mental health services and other community resources.

(Agreement ¶ 34.)

This court approved the Agreement on September 3, 2015. On September 28, 2015, Intervenors first sought to intervene in this matter. Intervenors later filed a First Amended Complaint in Intervention, which alleges that Paragraph 34 violates the Americans with Disabilities Act ("ADA") and the Fourth and Eighth Amendments to the Constitution. Intervenors allege, for example, that Paragraph 34 facially discriminates against disabled prisoners whose disability stems from personality disorders, substance abuse and dependence disorders, dementia, or developmental disabilities, as well as all disabled prisoners who spend seven days or fewer in jail.[2] (Agreement ¶ 34, 34(a).) Intervenors further allege, in essence, that Paragraph 34's discharge procedures are inadequate, as many disabled prisoners will be unable to obtain needed medication or services if provided with nothing more than a prescription or list of referrals upon discharge.

///

---

[2] The Agreement's definition of "serious mental illness" expressly excludes these substantive categories, with the exception of personality disorders that are "associated with serious or recurrent significant self-harm." (Agreement ¶ 15(aa).)

4

**II. Legal Standard**

Federal Rule of Civil Procedure 24 governs motions to intervene. An applicant may intervene as of right if (1) the motion is timely; (2) the applicant has a "significantly protectable" interest relating to the action; (3) disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest is inadequately represented by the parties to the action. <u>California ex rel. Lockyer v. United States</u>, 450 F.3d 436, 440 (9th Cir. 2006); Fed. R. Civ. P. 24(a)(2). Courts construe rule 24(a) liberally in favor of intervention. <u>Id.</u>

**III. Discussion**

A. Timeliness

In determining whether a motion to intervene is timely, courts weigh (1) the stage of the proceedings; (2) the prejudice to the parties; and (3) the length of and reason for any delay. <u>United States v. Alisal Water Corp.</u>, 370 F.3d 915, 921 (9th Cir. 2004). Here, Intervenors did not seek to intervene until after the Agreement was reached and entered as a court order, closing the case. That fact, however, carries less weight under the unusual circumstances here, where the Complaint and Settlement Agreement were filed more or less concurrently. The court is not persuaded by the government's contention that the fact that the CRIPA investigation was covered in the media somehow obligated Intervenors to "take steps" during the investigatory process or some other, earlier stage. Intervenors did not delay in any significant degree by filing their motion approximately three weeks after the approval of the Settlement Agreement.

Further, it does not appear to the court that intervention would prejudice the parties. The court gives little weight to the parties' assertion that they would be prejudiced by intervention because their collective ability to implement the remaining provisions of the Agreement will be compromised if they are forced to divert any attention to the issues raised by Intervenors. First, Intervenors challenge but a single paragraph of the 125-paragraph Agreement. Second, the provisions of Paragraph 34 are not yet being implemented, and as even the parties acknowledge, need not necessarily comprise the entirety of whatever discharge policy the County ultimately adopts. Further, as the parties also recognize, other provisions of the Agreement are already being implemented. Indeed, Intervenors themselves have expressed strong support for the remainder of the Agreement. There appears, therefore, to be little threat to the settlement in its entirety. See Alisal, 370 F.3d at 922. The court is satisfied that Intervenors' motion is timely.

B. "Significantly Protectable" Interest

A proposed intervenor's interest is sufficient for purposes of Rule 24(a)(2) if "the interest is protectable under some law, and [] there is a relationship between the legally protected interest and the claims at issue." Wilderness Society v. United States Forest Service, 630 F.3d 1173, 1179 (9th Cir. 2011) (quotation marks and citation omitted). Neither party appears to dispute that Intervenors have a legally protectable interest. Although The government expressly concedes that Intervenors have a significant, protectable interest, it argues that such ADA-related interests are unrelated to the subject matter of this action. The crux of the

government's contention is that this case is, and the government's investigation was, limited to CRIPA and Section 14141 violations. This court is mindful that CRIPA and Section 14141 were the driving force behind the investigation, and that the government did not necessarily intend to give its imprimatur to a discharge or ADA policy comprised entirely of the terms of Paragraph 34. Rule 24, however, does not require that Intervenors' protectable interest be the same as that implicated in the existing action, only that there be some relationship between the issues. Wilderness Society 630 F.3d at 1179. Where, as here, the stipulated solution to the problems underlying the government's Complaint allegedly violate Plaintiff's ADA and constitutional rights, a sufficient relationship exists for purposes of intervention.[3]

C. Intervors' Ability to Protect Their Interests

The parties argues that Intervenors' interests would not be impaired by the denial of this motion because Intervenors can file a separate, freestanding lawsuit. Although Intervenors could so proceed, intervention as of right is not limited to instances in which applicants have no other recourse. Rather, review under Rule 24(a) "is guided primarily by practical considerations . . . ." Southwest Center for Biological Diversity v. Berg, 268 F.3d 810, 818 (9th Cir. 2001) (internal quotation and citation omitted). This focus on practical and equitable concerns "serves both efficient resolution of issues and broadened access to the courts."

---

[3] Nothing in this Order shall be read to suggest that this court takes any position on either the merits of Intervenors' claims or the government's arguments on the merits, including the argument that Paragraph 34 does not violate the ADA because it comprises only a portion of County ADA and discharge planning policy.

7

United States v. City of Los Angeles, 288 F.3d 391, 397-398 (9th Cir. 2002) (quotation marks and citation omitted). The parties' approach would not "prevent or simplify future litigation involving related issues," but rather multiply it.[4] [5]  Id. at 398.

### D. Adequacy of Representation

"Normally, a presumption of adequate representation generally arises when the representative is a governmental body or officer charged by law with representing the interests of the absentee." City of Los Angeles, 288 F.3d at 401 (internal quotations omitted). Inquiries into adequate representation, however, look to (1) whether a party will "undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable

---

[4] The County focuses the majority of its opposition on the argument that Intervenors lack standing. In the Ninth Circuit, however, "[i]n general, an applicant for intervention need not establish Article III standing to intervene." Perry v. Schwarzenegger, 630 F.3d 898, 906 (9th Cir. 2011) (per curiam); Vivid Entm't, LLC v. Fielding, No. CV-13-190 DDP, 2013 WL 1628704 at *2 (C.D. Cal. Apr. 16, 2013). Even if standing were required, Intervenors have demonstrated at least a "credible threat of future injury." See City of Los Angeles v. Lyons, 461 U.S. 95, 106 (1983). Intervenors have presented evidence that they are caught up in a tragic cycle of homelessness and incarceration perpetuated and punctuated by manifestations of mental illness and unbroken by any adequate treatment.

[5] Alisal is not to the contrary. Although the court did conclude that the applicant's interest was not impaired because alternate process was available, that alternate process only required the applicant to obtain court approval to seek to enforce a judgment lien. Alisal, 370 F.3d at 921. Intervenors' task would be far more complicated here, as they would have to litigate freestanding ADA and constitutional claims from scratch, and then only after Paragraph 34 had already gone into effect. And although the City of Los Angeles court did find the possibility of independent suits sufficient with respect to a proposed intervenor that did not contest a consent decree, it reversed the district court's denial of intervention to an applicant that sought to enjoin a consent decree that, like the Agreement here, was filed the same day as the complaint. City of Los Angeles, 288 F.3d at 396-397, 400-402.

and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003). Here, the presumption of adequate representation is rebutted where the government has not only declined to make some of the arguments Intervenors would make, but has in fact taken a contrary position. The government cannot, therefore, be said to adequately represent Intervenors' significant protectable interest.

**IV. Conclusion**

For the reasons stated above, the Motion to Intervene is GRANTED.[6] The court emphasizes, however, that nothing in this Order shall be read as a commentary on the merits of Intervenors' claims or on the sincerity of the parties' attempts to address the issues raised in either the Complaint or the First Amended Complaint in Intervention. Indeed, in the court's experience, both parties, as well as Intervenors' counsel, have proven to be deeply committed, well-intentioned, and effective collaborators, even in the face of difficult financial and political realities. The mental health issues around which this matter revolves are public safety issues as well as legal ones, and concern the well-being of not only the prisoners and public servants directly involved, but of the larger community as well. Mental health issues have unfortunately, and self-evidently, risen to crisis levels, and the Sheriff has been forced to assume a prominent role in the absence

---

[6] Having concluded that Intervenors' must be permitted to intervene as of right, the court need not address permissive intervention.

9

of sufficient mental health resources. The court encourages all parties to continue to work together to formulate and implement policies that are not only constitutionally and legally adequate, but efficacious and empathetic as well.

IT IS SO ORDERED.


Dated: December 15, 2015

DEAN D. PREGERSON
United States District Judge