O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES AMERICA,

               Plaintiff,

   v.

COUNTY OF LOS ANGELES et al.,

               Defendants.

Case No. CV 15-05903 DDP (JEMx)

**ORDER DENYING DEFENDANT'S MOTIONS FOR (1) REVIEW OF MAGISTRATE JUDGE'S ORDER AND (2) DISQUALIFICATION**

[Dkt. Nos. 101, 102]

Presently before the court are two motions filed by Defendant. First, Defendant seeks to disqualify Plaintiff-Intervenors' counsel, Mark Rosenbaum, for alleged violations of rules of professional conduct related to Mr. Rosenbaum's discussion with Dr. Mitchell Katz, Director of the Los Angeles County Health Agency. Defendant also moves for review of Magistrate Judge McDermott's Minute Order allowing Plaintiff-Intervenors to depose Dr. Katz. Having considered the submissions of the parties and heard oral argument, the court denies both motions and adopts the following Order.

**I.   Background**

1    Plaintiff and Defendant entered into a settlement agreement
2  regarding various policies and practices in the Los Angeles County
3  Jail system.  Plaintiff-Intervenors ("Intervenors") allege that a
4  portion of that agreement concerning inmate discharge procedures,
5  Paragraph 34, violates the Americans with Disabilities Act, the
6  Rehabilitation Act, and the constitutional rights of certain
7  disabled, mentally ill inmates.

8    Intervenors' counsel, Mark Rosenbaum, attended a small social
9  gathering at the home of Dr. Mitchell Katz, the Director of the Los
10 Angeles County Health Agency.  (Declaration of Mark Rosenbaum ¶ 3.)
11 Mr. Rosenbaum informed Dr. Katz that he, Mr. Rosenbaum, is an
12 attorney and is involved in a case against the County regarding the
13 County's jail discharge planning practices.  (Id. ¶ 4.)  Mr.
14 Rosenbaum stated that Dr. Katz was under no obligation to discuss
15 the matter, and was free to consult an attorney.  (Id.)  Dr. Katz
16 nevertheless engaged in conversation on the subject and, in
17 response to Mr. Rosenbaum's description of certain practices,
18 opined as to the propriety of those practices.  (Id. ¶ 5.)  Dr.
19 Katz stated that he was not aware of or familiar with Paragraph 34,
20 but "felt he could take care of putting into place proper
21 protocols."  (Id. ¶¶ 6, 8, 9.)

22   A few weeks later, Intervenors noticed Dr. Katz's deposition.
23 Defendant declined to produce him, and Intervenors moved to compel.
24 The Magistrate Judge granted Intervenors' motion, concluding that
25 Mr. Rosenbaum did not engage in any unethical behavior and that, in
26 light of Dr. Katz's conversation with Mr. Rosenbaum, the "apex
27 doctrine" is not applicable to a deposition of Dr. Katz regarding
28 Defendant's mental health-related discharge practices.  Defendant

1  now moves for review of the Magistrate Judge's decision allowing

2  the deposition, and moves separately to disqualify Mr. Rosenbaum

3  for an alleged violation of California Rule of Professional Conduct

4  2-100.

5  **II.  Legal Standard**

6       This court reviews non-dispositive discovery orders under a

7  clearly erroneous or contrary to law standard.  Rivera v. NIBCO,

8  Inc., 364 F.3d 1057, 1063 (9th Cir. 2004); Fed. R. Civ. P. 72.

9  "The 'clearly erroneous' standard applies to factual determinations

10 and discretionary decisions."  McAdam v. State Nat. Ins. Co., 15 F.

11 Supp. 3d 1009, 1013 (S.D. Cal. 2014).  "[L]egal conclusions are

12 reviewed de novo to determine whether they are contrary to law."

13 Perry v. Schwarzenegger, 268 F.R.D. 344, 348 (N.D. Cal. 2010).

14 "When the court reviews the magistrate's determination of relevance

15 in a discovery order . . . the standard of review in most instances

16 is . . . abuse of discretion. The court should not disturb the

17 magistrate's relevance determination except where it is based on an

18 erroneous conclusion of law or where the record contains no

19 evidence on which [the magistrate] rationally could have based that

20 decision."  Perry v. Schwarzenegger, 268 F.R.D. 344, 348 (N.D. Cal.

21 2010) (citations omitted).  Discovery motions regarding depositions

22 are subject to the clearly erroneous or contrary to law standard.

23 Rockwell Int'l, Inc. v. Pos-A-Traction Indus., Inc. 712 F.2d 1324,

24 1325 (9th Cir. 1983) (per curiam).

25      In the Ninth Circuit, courts "apply state law in determining

26 matters of disqualification."  In re Cnty. of Los Angeles, 223 F.3d

27 990, 995 (9th Cir. 2000).  This district has adopted "the standards

28 of professional conduct required of members of the State Bar of

California and contained in the State Bar Act, the Rules of
Professional Conduct of the State Bar of California, and the
decisions of any court applicable thereto." C.D. Cal. L.R. 83-
3.1.2.  This Court must also bear in mind that its "authority to
disqualify an attorney or craft appropriate relief to punish or
deter attorney misconduct derives from the court's equitable
powers," and that, therefore, equitable considerations such as
waiver, unclean hands, and estoppel apply. <u>UMG Recordings, Inc. v.</u>
<u>MySpace, Inc.</u>, 526 F. Supp. 2d 1046, 1062 (C.D. Cal. 2007).

**III. Discussion**

 A. Motion to Disqualify

 Defendant contends that, by discussing discharge practices
with Dr. Katz, Mr. Rosenbaum violated California Rule of
Professional Conduct 2-100, and should therefore be disqualified
from this matter.  Rule 2-100 provides that :

> (A) While representing a client, a member shall not
> communicate directly or indirectly about the subject of the
> representation with a party the member knows to be
> represented by another lawyer in the matter, unless the
> member has the consent of the other lawyer.
>
> . . .
>
> (C) This rule shall not prohibit:
>  (1) Communications with a **public officer**, board,
> committee, or body; or
>  (2) Communications initiated by a party seeking advice
> or representation from an independent lawyer of the party's
> choice; or
>  (3) Communications otherwise authorized by law.

(emphasis added).  The question this Court must resolve is whether
Rule 2-100(C)(1)'s public officer exception applies to Mr.
Rosenbaum's conversation with Dr. Katz, Director of the county
health agency.

1  In 1977, the California State Bar Standing Committee on
2  Professional Responsibility and Conduct ("the Committee") issued a
3  Formal Opinion analogous to the facts here.  CA Eth. Op. 1977-43,
4  1977 WL 15961.  Addressing a rule essentially identical to that at
5  issue here, the Committee opined that it would be acceptable for an
6  attorney bringing suit against a city to meet with a city council
7  member or city manager, even in private, to discuss the action.
8  1977 WL 15961 at *1-2 ("Public officers are vested with authority
9  to exercise some sovereign power. To the extent they have that
10 authority, they remain public officers off the job. For that
11 reason, it makes no difference whether the attorney approaches the
12 official publicly or privately. The subject of conversation (here,
13 apparently, an attempt to influence the response to an action
14 against the city) determines the capacity in which the individual
15 acts. In either case, the restraints of rule 7-103 of the Rules of
16 Professional Conduct do not apply.") (parenthetical in original).
17       Thus, pursuant to the Committee's formal opinion, Mr.
18 Rosenbaum's discussion was proper.  Defendant asserts, however,
19 that the public officer exception is narrower than stated by the
20 Committee, pointing instead to a discovery order in United States
21 v. Sierra Pacific Industries, 759 F.Supp.2d 1206 (E.D. Cal. 2010)
22 ("Sierra Pacific") (reconsideration denied by United States v.
23 Sierra Pacific Indus., 759 F.Supp.2d 1215 (E.D. Cal. 2011).  In
24 Sierra Pacific, the defendant's attorney attended a public tour
25 sponsored by the Forest Service.  Sierra Pacific, 759 F.Supp.2d at
26 1208.  While on the tour, the attorney questioned Forest Service
27 employees about facts relevant to a pending case.  Id.  The
28

5

1  attorney never disclosed his status as opposing counsel, even when

2  asked whether he was representing anyone.  Id.

3      In analyzing whether the attorney's conduct fell within the

4  public officer exception to Rule 2-100, the Sierra Pacific court

5  relied heavily upon a proposed, but never adopted, state bar

6  opinion regarding "line police officers." Id. at 1210.  Under the

7  proposed opinion, the public officer exception would apply to

8  communications with "a person whom a communication would be

9  constitutionally protected by the First Amendment right to petition

10 the government. Such a person would be one who, for example, has

11 the authority to address, clarify or alter governmental policy; to

12 correct a particular grievance; or to address or grant an exemption

13 from regulation." Id. at 1209 (quoting Proposed Formal Opinion

14 Interim No. 98-0002 (internal quotation marks omitted)).  Because

15 the Forest Service employees were not "policy-making official[s] or

16 persons with authority to change a policy or grant some specific

17 request for redress," the Sierra Pacific court concluded that the

18 public officer exception did not apply, and that the attorney

19 therefore violated Rule 2-100.  Id. at 1213-14; See also Guthrey v.

20 California Dep't of Corrections and Rehabilitation, No. 10-cv-

21 02177-AWI-BAM, 2012 WL 3249554 at *4-5 (E.D. Cal. Aug. 7, 2012)

22 (adopting Sierra Pacific's reasoning and concluding that

23 correctional employees are not public officers for Rule 2-100

24 purposes).

25     Defendant here argues that Mr. Rosenbaum's discussion with Dr.

26 Katz is analogous to Sierra Pacific and falls outside the public

27 officer exception because (1) Katz does not have the authority to

28 alter Paragraph 34, and therefore does not qualify as a "public

officer" and (2) Rosenbaum was not "exercising his or his clients'
First Amendment rights." (Motion to Disqualify at 8.) These
arguments are not persuasive. As an initial matter, this Court is
not bound by Sierra Pacific's interpretation of the public officer
exception. Although the Sierra Pacific court cited to American Bar
Association rules and the state bar's proposed interim order, the
court made no mention of the 1977 Formal Opinion and its broad
reading of the exception.

In any event, even under Sierra Pacific's narrower, First
Amendment-focused framework, Mr. Rosenbaum's conduct is within the
public officer exception. First, there is no dispute that Mr.
Rosenbaum disclosed that he is an attorney and represents a party
adverse to Defendant in an active case. The attorney in Sierra
Pacific, in contrast, affirmatively concealed his role. Second,
Defendant's contention that Dr. Katz does not have the requisite
authority to qualify as a "public officer" is incorrect. Although
Dr. Katz cannot unilaterally change Paragraph 34, Defendant appears
to have conceded, as it must, that policymaking power extends well
beyond the Board of Supervisors, and that, as the Director of the
Los Angeles County Health Agency, Dr. Katz has extensive "authority
to address, clarify or alter governmental policy [and] to correct a
particular grievance." Sierra Pacific, 759 F.Supp.2d at 1209. See
Declaration of Dr. Mitchell Katz in Support of Motion to Disqualify
¶ 1 ("The Health Agency is comprised of the Department of Health
Services ("DHS"), the Department of Mental Health ("DMH"), and the
Department of Public Health ("DPH") . . . . As head of the Health
Agency, my duties include planning, organizing and directing the
activities of the Agency.").

1    Furthermore, Defendant's assertion that Mr. Rosenbaum was
2    gathering evidence for litigation purposes, and therefore could not
3    have been exercising a First Amendment right, presents a false
4    dichotomy.  As suggested in Sierra Pacific and Guthrey, whether a
5    public employee qualifies as a "public official" under Rule 2-100
6    depends upon that employee's particular duties.  Those duties fall
7    somewhere along a continuum of roles, ranging from line officers
8    and ministerial workers at one end and legislators, senior
9    executives, and other individuals who have meaningful input into
10   matters of policy and public concern closer to the other.
11   Although the conversation between Mr. Rosenbaum and Dr. Katz may
12   have been relevant to this particular case, that is of secondary
13   importance.  The public's fundamental right to discuss any matter
14   with a senior government official is paramount.  Mr. Rosenbaum's
15   conduct falls within the public officer exception of Rule 2-
16   100(C)(1), and was entirely ethical.  Accordingly, Defendant's
17   Motion to Disqualify is DENIED.
18        B. Motion for Review of Order Granting Motion to Compel
19        Defendant refused to produce Dr. Katz for deposition under the
20   "apex doctrine."  In light of the conversation between Dr. Katz and
21   Mr. Rosenbaum, the Magistrate Judge found the apex doctrine
22   inapplicable, and allowed Intervenors to conduct a limited
23   deposition of Dr. Katz.  Defendant now seeks review of the
24   Magistrate Judge's decision.
25        Under the apex doctrine, "[h]eads of government agencies are
26   not normally subject to deposition."  Kyle Engineering Co. v.
27   Kleppe, 600 F.2d 226, 231 (9th Cir. 1979).  "[T]he settled rule
28   across the circuits is that absent extraordinary circumstances,

high-ranking officials may not be subjected to depositions or called to testify regarding their official actions." <u>Coleman v. Schwarzenegger</u>, No. CIV W-90-0520 LKK JFM P, 2008 WL 4300437 at *2 (E.D. Cal. Sept. 15, 2008).  When a party seeks to depose "a high-level executive (a so-called 'apex' deposition)," the court can limit the discovery after considering "(1) whether the deponent has unique firsthand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." <u>In re Google Litigation</u>, No. C 08-03172 RMW(PSG), 2011 WL 4985279 at *2 (N.D. Cal. Oct. 19, 2011).  "A party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied . . . ." <u>Celerity, Inc. v. Ultra Clean Holding, Inc.</u>, No. C 05-4374 MMC(JL), 2007 WL 205067 at *4 n.3 (N.D. Cal. Jan. 25, 2007); <u>See also</u> <u>Blankenship v. Hearst Corp.</u>, 519 F.2d 418, 429 (9th Cir. 1975).

        Much of Defendant's argument is premised on the assumption that the conversation between Dr. Katz and Mr. Rosenbaum violated California Rule of Professional Conduct 2-100, and therefore cannot serve as the basis for granting Intervenors' Motion to Compel.  As discussed above, Mr. Rosenbaum's conduct was not unethical, and the Magistrate Judge did not err in so concluding.

        Defendant also argues that the Magistrate Judge erred in finding that Dr. Katz opined about Paragraph 34 because Rosenbaum himself acknowledged that Dr. Katz stated that he had never heard of Paragraph 34, let alone seen its contents.  (Reply at 2; Rosenbaum Decl. ¶ 7.)  This argument is not persuasive.  First, Rosenbaum stated that he described "some of the practices that we

had documented in our investigation," and that Dr. Katz opined on
those practices.  (Rosenbaum Decl. ¶ 5.)   The practices Intervenors
are investigating, of course, are related to Paragraph 34.
Furthermore, although Dr. Katz has stated that "[n]o portion of
[the] discussion with Mr. Rosenbaum concerned current jail
discharge planning policies pursuant to Paragraph 34" (Supplemental
Declaration of Dr. Mitchell Katz ¶ 2), he also declared that "Mr.
Rosenbaum spoke to me about this lawsuit, . . . Paragraph 34 of the
Settlement Agreement in particular, jail discharge planning
policies, and jail discharge practices . . . ." (Katz Decl. ¶ 2.)
Notably, and contrary to Defendant's characterization, the
Magistrate Judge did not conclude that Dr. Katz opined about
Paragraph 34 in particular.   Rather, the Magistrate Judge stated
that Dr. Katz opined about "certain discharge planning practices as
described to him by Mr. Rosenbaum [,] . . . chose to discuss the
discharge planning practices at issue in this suit[, and] . . .
purportedly expressed an opinion that may be inconsistent with the
County's position on Paragraph 34." (Dkt. 99 at 2.)   Those
conclusions are well-supported by the record.

Defendant's final, and chief, contention is that the
Magistrate Judge erred in his analysis of the apex doctrine and
application of the relevant factors.   This Court, however,
concludes that the Magistrate Judge did not err in finding the apex
doctrine inapplicable because Dr. Katz effectively waived any apex
doctrine objection.

Dr. Katz, as Director of the Los Angeles County Health Agency,
is a sophisticated, senior public official with significant
responsibilities, decision-making power, and policy-making

influence.   There is no dispute that Mr. Rosenbaum, who had never

met Dr. Katz before, disclosed his own role as an attorney adverse

to Defendant in an active case regarding mental health policies and

jail discharge practices.   Dr. Katz does not dispute that he was

aware that he was free to consult with counsel if he so wished, and

was under no obligation to discuss this matter of public import

with Mr. Rosenbaum at all.   Dr. Katz does not dispute that he

represented himself as being capable of "putting into place proper

protocols" and interested in doing so.   (Rosenbaum Dec. ¶ 8.)

Defendant now argues that it would be unduly disruptive to allow

the deposition of a policymaker, even where that official has

knowingly and voluntarily undertaken to discuss matters of public

significance with an attorney known to be adverse to the County.

The primary purpose of the apex doctrine is not to gain a

litigation advantage or to insulate officials from providing

evidence in cases, but rather to "protect [] officials from

discovery that will burden the performance of their duties,

particularly given the frequency with which such officials are

likely to be named in lawsuits." Coleman, 2008 WL 4300437 at *2.

Under the circumstances here, application of the doctrine would in

no way serve that goal.   To the extent that questioning about Dr.

Katz's opinions about jail discharge policies can be considered a

burden, it is one that he has already volunteered to bear.

Furthermore, rather than regard Dr. Katz's decision as a mistake,

this Court views his willingness to receive input and discuss

matters of public concern as entirely admirable and consistent with

his responsibilities as a senior government official.

The Magistrate Judge's conclusion that the apex doctrine does not bar Dr. Katz's deposition was not erroneous.  Defendant's Motion for Review is, therefore, DENIED.

**IV.   Conclusion**

For the reasons stated above, Defendant's Motion to Disqualify and Motion for Review are DENIED.  In light of the waiver of the apex doctrine objection, this Court declines to adopt the portion of the Magistrate Judge's decision limiting the scope and duration of the deposition.  The court expects, however, that the parties will work collaboratively to ensure that the deposition is as brief and efficient as possible.

IT IS SO ORDERED.

Dated: July 27, 2016

DEAN D. PREGERSON
United States District Judge