```
RODRIGO A. CASTRO-SILVA (Cal. Bar No. 185251)
County Counsel
STEVEN G. EDWARDS (Cal. Bar No. 304165)
Deputy County Counsel
648 Kenneth Hahn Hall of Administration
500 West Temple Street
Los Angeles, California 90012
Tel: (213) 974-1811
Email:  rcastro-silva@counsel.lacouty.gov
        sedwards@counsel.lacounty.gov

Attorneys for Defendants
COUNTY OF LOS ANGELES
  AND LOS ANGELES COUNTY SHERIFF
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES AND LOS ANGELES COUNTY SHERIFF ALEX VILLANUEVA, in his official capacity,<br><br>Defendants. | Case No. 2:15-cv-5903-DDP-JEM<br><br>**JOINT STIPULATION TO MODIFY SETTLEMENT AGREEMENT**<br><br>Hon. Dean D. Pregerson<br>United States District Judge |

Defendants County of Los Angeles ("County") and the Los Angeles County Sheriff ("Sheriff") and Plaintiff United States of America (collectively, the "Parties"), enter into this Joint Stipulation to Modify Settlement Agreement ("Joint Stipulation").

In the course of implementing the Settlement Agreement in the above-captioned matter, the Parties learned that certain of the Provisions could be improved to better address the substantive goals of the Settlement Agreement.  With that in mind, as reflected below, the Parties have agreed to revise Provisions 31, 57, 65, 66 and 79 of the Settlement Agreement.

**I.     Background**

On August 5, 2015, the United States filed a complaint against the County and the Sheriff alleging systemic violations of prisoners' federal constitutional rights in the Los Angeles County Jails under the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997, and the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141 (re-codified at 34 U.S.C. § 12601). ECF Doc. 1.  The same day, the Parties filed a joint stipulation seeking approval of a settlement agreement to resolve the United States' complaint. ECF Doc. 4. On September 3, 2015, the Court approved the settlement agreement and retained jurisdiction to enforce it. ECF Doc. 13. The Court also approved the appointment of Dr. Bruce Gage as the Mental Health Subject Matter Expert. ECF Doc. 14 ¶ 95.

In the course of implementing the Settlement Agreement, the Parties learned that certain Provisions could be improved to better address, document, and reflect the qualitative goals of the underlying Provision, or the County's, and the Sheriff's, progress and efforts towards achieving compliance with those substantive goals.  With the goal of better and more accurately addressing the substantive goals of the Settlement Agreement and its Provisions, the Parties have agreed to revise certain of the Provisions.  The Parties believe the revised Provisions, and the County's and Sheriff's efforts to comply with those revised Provisions, will allow the Parties to better direct compliance efforts and goals to those advanced in the Settlement Agreement, and assist the County and the Sheriff in more accurately and efficiently directing compliance efforts and documentation.  Accordingly, the Parties stipulate to revise Provisions 31, 57, 65, 66 and 79 of the Settlement Agreement as set forth below.

Accordingly, the Parties now stipulate and agree as follows:

### II.     Stipulation to Modify Settlement Agreement

The settlement agreement permits the Parties to modify its terms by stipulation. ECF Doc. 14 ¶ 119. Provision 119 of the settlement states, in relevant part, "The Parties may jointly stipulate to make changes, modifications, and amendments to this Agreement, which will be effective absent further action from the Court, 30 days after a

stipulation signed by all of the Parties has been filed with the Court." *Id.* As set forth below, the Parties jointly stipulate to revise Provisions 31, 57, 65, 66 and 79 pursuant to Provision 119 of the Settlement Agreement.

### A.   Provision 31

For the reasons described above, the Parties agree to revise Provision 31 of the Settlement Agreement. The Parties' revisions to this provision are designed to conform the monitoring of medical alerts for inmates who are potentially hoarding psychotropic medication, originally included in the text of Provision 31, with the closely-related monitoring of the County's medical administration procedures and practices, originally included in the text of Provision 65. Below the Parties also request related revisions be made to Provision 65. Provision 31 as originally filed read as follows:

> Consistent with existing DMH and Sheriff's Department policies, the County and the Sheriff will maintain electronic mental health alerts in prisoners' electronic medical records that notify medical and mental health staff of a prisoner's risk for suicide or self-injurious behavior. The alerts will be for the following risk factors:
> (a)   current suicide risk;
> (b)   hoarding medications; and
> (c)   prior suicide attempts.

*Id.* ¶ 31.

The Parties stipulate to modify the text of Provision 31, pursuant to Provision 119, to read as follows:

> Consistent with existing Correctional Health Services and Sheriff's Department policies, the County and the Sheriff will maintain electronic mental health alerts in prisoners' electronic medical records that notify medical and mental health staff of a prisoner's risk for suicide or self-injurious behavior. The alerts will be for the following risk factors:
> (a)   current suicide risk; and
> (b)   prior suicide attempts.

**B.     Provision 57**

For the reasons described above, the Parties have also agreed to revise Provision 57 to clarify when video surveillance might be used to replace rounds physically conducted by custody staff. Provision 57 of the Settlement Agreement as originally filed read as follows:

> Within three months of the Effective Date, the County and the Sheriff will revise and implement their policies on safety checks to ensure a range of supervision for prisoners housed in Mental Health Housing. The County and the Sheriff will ensure that safety checks in Mental Health Housing are completed and documented in accordance with policy and regulatory requirements as set forth below:
>
> (a)  Custody staff will conduct safety checks in a manner that allows staff to view the prisoner to assure his or her well-being and security. Safety checks involve visual observation and, if necessary to determine the prisoner's well-being, verbal interaction with the prisoner;
>
> (b)  Custody staff will document their checks in a format that does not have pre-printed times;
>
> (c)  Custody staff will stagger checks to minimize prisoners' ability to plan around anticipated checks;
>
> (d)  Video surveillance may not be used to replace rounds and supervision by custodial staff unless new construction is built specifically with constant video surveillance enhancements and could only be used to replace 15 minute checks in non-FIP housing, subject to approval by the Monitor;
>
> (e)  A QMHP, in coordination with custody (and medical staff if necessary), will determine mental health housing assignments;
>
> (f)  Supervision of prisoners in mental health housing will be conducted at the following intervals:

  (i)  FIP: Custody staff will perform safety checks every 15 minutes. DMH staff will perform direct constant observation or one-to-one observation when determined to be clinically appropriate;

  (ii)  High Observation Housing: Every 15 minutes;

  (iii)  Moderate Observation Housing: Every 30 minutes.

Id. ¶ 57.

  The Parties stipulate to modify the text of Provision 57, pursuant to Provision 119, to substitute in the words "the required safety" for "15 minute" between "replace" and "checks" in subparagraph (d) of Provision 57. The modified Provision will read as follows:

> Within three months of the Effective Date, the County and the Sheriff will revise and implement their policies on safety checks to ensure a range of supervision for prisoners housed in Mental Health Housing. The County and the Sheriff will ensure that safety checks in Mental Health Housing are completed and documented in accordance with policy and regulatory requirements as set forth below:
> 
> (a) Custody staff will conduct safety checks in a manner that allows staff to view the prisoner to assure his or her well-being and security. Safety checks involve visual observation and, if necessary to determine the prisoner's well-being, verbal interaction with the prisoner;
> 
> (b) Custody staff will document their checks in a format that does not have pre-printed times;
> 
> (c) Custody staff will stagger checks to minimize prisoners' ability to plan around anticipated checks;
> 
> (d) Video surveillance may not be used to replace rounds and supervision by custodial staff unless new construction is built specifically with constant video surveillance enhancements and could only be used to replace the

          required safety checks in non-FIP housing, subject to approval by the
          Monitor;

(e)    A QMHP, in coordination with custody (and medical staff if necessary), will determine mental health housing assignments;

(f)    Supervision of prisoners in mental health housing will be conducted at the following intervals:

    (i)    FIP: Custody staff will perform safety checks every 15 minutes. Correctional Health Services staff will perform direct constant observation or one-to-one observation when determined to be clinically appropriate;

    (ii)    High Observation Housing: Every 15 minutes; and

    (iii)    Moderate Observation Housing: Every 30 minutes.

### C. Provision 65

As explained above regarding Provision 31, the Parties have agreed to revise the text of both Provision 31 and Provision 65 to better match the monitoring of inmates who are potentially hoarding medication with the monitoring of the County's administration of psychotropic medications. Provision 65 of the Settlement Agreement as originally filed read as follows:

> Consistent with existing Sheriff's Department policies, the County and the Sheriff will ensure that psychotropic medications are administered in a clinically appropriate manner to prevent misuse, hoarding, and overdose.

*Id.* ¶ 65.

The Parties stipulate to modify the text of Provision 65, pursuant to Provision 119, to read as follows:

> Consistent with existing Sheriff's Department policies, the County and the Sheriff will ensure that psychotropic medications are administered in a clinically appropriate manner to prevent misuse, hoarding, and overdose. The County will maintain electronic mental health alerts in prisoners' electronic medical records

that notify medical and mental health staff of a prisoner's risk for hoarding medications.

### D. Provision 66

The Parties have also agreed to revise Provisions 66 and 79. These revisions seek to match different patient populations with the corresponding substantive requirements within one provision, rather than having one patient population monitored under multiple provisions for related requirements. Provision 66 of the Settlement Agreement as originally filed read as follows:

> Consistent with existing DMH policies, prisoners in High Observation Housing and Moderate Observation Housing, and those with a serious mental illness who reside in other housing areas of the Jails, will remain on an active mental health caseload and receive clinically appropriate mental health treatment, regardless of whether they refuse medications.

*Id.* ¶ 66.

The Parties stipulate to modify the text of Provision 66, pursuant to Provision 119, to read as follows:

> Consistent with existing Correctional Health Services policies, prisoners with a serious mental illness who reside outside of mental health housing, will remain on an active mental health caseload regardless of whether they refuse medications. The County and the Sheriff will provide prisoners with a serious mental illness who reside outside of mental health housing with therapeutically appropriate individual monthly visits with a QMHP whether or not the prisoners are receiving or refusing psychotropic medications. The County and the Sheriff will provide medication support services to prisoners who (i) have a mental illness, (ii) reside outside of mental health housing and (iii) are prescribed psychotropic medications.

### E. Provision 79

As noted above, the Parties have agreed to revise Provisions 66 and 79 to better

7

match like patient populations with the related substantive monitoring requirements. Provision 79 of the Settlement Agreement as originally filed read as follows:

    (a)    Unless clinically contraindicated, the County and the Sheriff will offer prisoners in mental health housing:

        (i)    therapeutically appropriate individual visits with a QMHP;

        (ii)    therapeutically appropriate group programming conducted by a QMHP or other appropriate provider that does not exceed 90 minutes per session;

    (b)    The County and the Sheriff will provide prisoners outside of mental health housing with medication support services when those prisoners are receiving psychotropic medications and therapeutically appropriate individual monthly visits with a QMHP when those prisoners are designated as Seriously Mentally Ill; and

    (c)    The date, location, topic, attendees, and provider of programming or therapy sessions will be documented. A clinical supervisor will review documentation of group sessions on a monthly basis.

*Id.* ¶ 79.

The Parties stipulate to modify the text of Provision 79, pursuant to Provision 119, to read as follows:

    (a)    Unless clinically contraindicated, the County and the Sheriff will offer prisoners in mental health housing:

        (i)    therapeutically appropriate individual visits with a QMHP;

        (ii)    therapeutically appropriate group programming conducted by a QMHP or other appropriate provider that does not exceed 90 minutes per session;

    (b)    The date, location, topic, attendees, and provider of programming or therapy sessions will be documented. A clinical supervisor will review documentation of group sessions on a monthly basis.

### F. Replacing References to the Department of Mental Health with References to Correctional Health Services

In addition to the Provision-specific improvements identified above, the Parties would like to update the Settlement Agreement to properly identify the County department providing mental health services in the jail. When the Agreement was entered into, the Los Angeles County Department of Mental Health ("DMH") provided those services, and thus DMH is frequently referenced in the Settlement Agreement. Currently, and for some time now, those same services have been provided by Correctional Health Services, a division of the Los Angeles County Department of Health Services. The Parties have been operating with the understanding that all references to "DMH" in the Settlement Agreement are taken to refer to CHS, which currently provides the services referenced in the Settlement Agreement. With that in mind, the Parties have agreed to replace references to the Department of Mental Health or DMH with references to Correctional Health Services or "CHS."

The Parties hereby stipulate to modify the text of the Settlement Agreement to replace all references to the Department of Mental Health or DMH with references to Correctional Health Services or "CHS."

### III. Remainder of Settlement Agreement

Except as amended in this Joint Stipulation, the provisions of the Settlement Agreement shall remain unchanged and in full force and effect, and shall apply to the amended Provisions 31, 57, 65, 66, and 79.

//
//
//
//
//
//

STIPULATED AND AGREED UPON by the County, the Sheriff, and the United States of America.

| | |
|---|---|
| Dated: June 25, 2021 | FOR DEFENDANTS: |
| /s/ Rodrigo A. Castro-Silva | /S/ Steven G. Edwards |
| RODRIGO A. CASTRO-SILVA<br>County Counsel<br>County of Los Angeles | STEVEN G. EDWARDS*<br>Deputy County Counsel<br>County of Los Angeles |
| | *Attorneys for the County of Los Angeles and Los Angeles County Sheriff* |
| Dated: June 25, 2021 | FOR PLAINTIFF: |
| TRACY L. WILKISON<br>Acting United States Attorney<br>Central District of California | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
| DAVID M. HARRIS<br>Assistant United States Attorney<br>Chief, Civil Division | STEVEN H. ROSENBAUM<br>Chief, Special Litigation Section<br>Civil Rights Division |
| /s/ Karen P. Ruckert<br>KAREN P. RUCKERT<br>Assistant United States Attorney<br>Chief, Civil Rights Section, Civil Division | /s/ Laura L. Cowall<br>LAURA L. COWALL<br>Deputy Chief, Special Litigation Section<br>Civil Rights Division |
| /s/ Matthew Nickell<br>MATTHEW NICKELL<br>Assistant United States Attorney<br>Civil Rights Section, Civil Division | /s/ Luis E. Saucedo<br>LUIS E. SAUCEDO<br>Counselor to the Chief, Special Litigation Section<br>Civil Rights Division |
| | /s/ Maura Klugman<br>MAURA KLUGMAN<br>Trial Attorney, Special Litigation Section<br>Civil Rights Division |
| | *Attorneys for the United States of America* |

\* I hereby attest that all signatories listed, and on whose behalf this filing is submitted, concur in this filing's content and have authorized its filing.