KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division
STEVEN H. ROSENBAUM, Chief
MAURA M. KLUGMAN, Deputy Chief
LUIS E. SAUCEDO, Senior Trial Attorney
MAGGIE FILLER, Trial Attorney
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
    150 M. Street NE
    Washington, D.C. 20001
    Telephone: (202) 305-0053
    Email: luis.e.saucedo@usdoj.gov | maggie.filler@usdoj.gov
STEPHANIE S. CHRISTENSEN
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
RICHARD M. PARK
Assistant United States Attorney
Chief, Civil Rights Section, Civil Division
MATTHEW NICKELL (Cal. Bar No. 304828)
MARGARET M. CHEN (Cal Bar No. 288294)
Assistant United States Attorneys
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-8805/3148
    Facsimile: (213) 894-7819
    Email: matthew.nickell@usdoj.gov | margaret.chen@usdoj.gov
Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:15-cv-5903-DDP-JEM |
| Plaintiff, | **UNITED STATES' STATEMENT RELATING TO LOS ANGELES COUNTY SHERIFF'S MOTION FOR DECLARATION OF CONFLICT AND FOR AN ORDER APPOINTING CONFLICT COUNSEL** |
| v. | |
| COUNTY OF LOS ANGELES et al., | |
| Defendants. | Hon. Dean D. Pregerson<br>United States District Judge |

# INTRODUCTION

Plaintiff United States of America submits this statement in response to Los Angeles County Sheriff Alex Villanueva's Motion for Declaration of Conflict Between County of Los Angeles and Los Angeles County Sheriff and for an Order Appointing Conflict Counsel (the "Motion"). ECF No. 202. Both the Sheriff and County are Defendants in this matter.

The United States takes no position on whether the Court should grant the Motion, and instead writes to underscore the need for both the Sheriff and the County of Los Angeles—whether represented by the same or separate counsel—to comply with obligations they have jointly undertaken in recent months, including to develop solutions addressing the remaining barriers to compliance with the settlement agreement. The United States also files this statement to clarify certain assertions made in the Motion.

# DISCUSSION

**1. The Sheriff should adhere to the negotiated implementation plans to overcome barriers to compliance.**

The Motion states that the Sheriff has not had a "seat at the table" regarding "critical decisions about implementation of jail system plans [that] are being put in place, staffing allocations [that] are being determined, and security risks to staff, inmates, and the general public [that] are being affected by such plans." Motion, ECF No. 202 at 26–27. But throughout the parties' extensive implementation plan negotiations, defense counsel Robert Dugdale assured the United States that he represented both the County and the Sheriff, and that both had committed to take steps described in the plans in order to comply with the settlement agreement. Joint Status Rep. on Unresolved Disagreements Regarding Implementation Plans, ECF No. 190 at 7–8, n.6. As a result, and following extensive negotiations between Defendants and the United States after the parties' November 2021 status conference, Defendants have created implementation plans to overcome barriers to compliance for 23 provisions of the settlement agreement.

Fifteen of those plans have been finalized (for provisions 25, 26, 31, 34[1], 36, 37, 40, 42, 43, 52, 53, 57, 58, 66, and 70), as have first-phase plans for four more provisions (63, 64, 80, and 81). While the United States does not have knowledge of the precise scope of the Sheriff's involvement in these plans' creation, many of the implementation plans developed by Defendants and finalized by the parties assign tasks and responsibilities to Sheriff staff. And in the course of negotiations, the Sheriff provided the Monitor and the United States a staffing analysis setting forth the custody staffing he believed necessary to comply with the settlement.

Regardless of whether the County and the Sheriff will be separately represented in this action going forward, both must carry out the commitments they have made to date.

## 2. Measures set forth in Defendants' implementation plans to date should bring Defendants closer to compliance, and second-phase plans for three provisions should address remaining gaps.

The Sheriff's motion states "not one of the parties regards [the] measures" in the County's implementation plans to date "as any real solution to the present problems facing the jail system and the conditions barring its substantial compliance with the Agreement." ECF No. 202 at 27. The United States disagrees with this assessment. Most of the 23 implementation plans that Defendants have developed provide a realistic roadmap to achieving compliance for the settlement provisions at issue. There are three provisions for which this is not yet true: 63, 64, and 80. Provision 63 requires sufficient mental health housing for individuals with serious mental illness. *See* Settlement Agreement, ECF No. 14, at 31. Provision 64 requires Defendants to create short- and long-term plans to ensure there is sufficient licensed inpatient mental health care in the Jails for prisoners who require it. *Id.* at 31–32. And provision 80 requires that individuals with serious mental illness receive sufficient time out of their cells, including for group

---

[1] Third-party intervenors also provided input on and assented to Defendants' implementation plan for provision 34.

programming and recreation, to avoid isolation that would be detrimental to their care. *Id.* at 39–40.

Defendants have shared partial, first-phase plans for these provisions rather than complete plans. That said, the plans contain several encouraging measures that are likely to reduce the demand for mental health housing and inpatient care in custody. These include commitments to:

- Expand mental health housing at the Pitchess North Detention Center in north Los Angeles County. This will allow Defendants to relocate hundreds of individuals with mental illness from Men's Central Jail. In addition, it should allow Defendants to convert several moderate observation housing units in the Twin Towers Correctional Facility to higher-demand high observation units that can house individuals with more serious mental health needs;

- Open a new psychiatric urgent care unit that could provide involuntary psychotropic medication to individuals who meet criteria for inpatient care, which should reduce the burden on the Jails' overtaxed inpatient unit;

- Expand the Jails' medication assisted treatment (MAT) program to reach 1,500 incarcerated individuals. Individuals with co-occurring mental health and substance use disorders who receive MAT should be less likely to decompensate, and this should in turn reduce the pressure on limited mental health housing; and

- Replace dozens of standard high-observation housing units with Stepdown units that provide more robust out-of-cell opportunities, improved programming, and a better care environment overall.

These measures are "real solutions" to the extent they will reduce the demand for, or increase the supply of, mental health housing and resources in the Jails. Even so, and as all parties agree, they are incomplete solutions: by themselves, they will not close the entire supply-demand gap for mental health housing. To address the remaining gap, in August 2022 negotiations with the United States, Defendants committed to create supplemental, second-phase versions of the implementation plans.

3

### 3. The settlement does not contain a "five-year" compliance timeline.

The Motion several times refers to the settlement as a "five-year" agreement or as having a five-year timeframe for reaching compliance. *See* Motion, ECF No. 202 at 15, 23, 28. There is nothing in the settlement that sets forth a five-year compliance timeframe for the settlement as a whole. The only reference to a five-year timeline is in provision 64, which requires Defendants to create and update annually a five-year plan for ensuring there is adequate inpatient capacity for incarcerated individuals with the most serious mental health needs. *See* Settlement Agreement, ECF No. 14 at 31–32. To the extent the Sheriff is referring only to this five-year plan, the Sheriff is correct that Defendants have not yet provided a roadmap to ensure adequate inpatient capacity within five years. *See* ECF No. 190 at 11–12, 19 (discussing gaps in earlier version of Defendants' implementation plan to overcome barriers to compliance with provision 64).

### 4. The Monitor did not conclude a new jail or mental health facility was necessary in his twelfth report.

The Motion states that the Monitor's twelfth monitoring report concurred with the Sheriff that a new mental health facility is necessary to address longstanding barriers to compliance with the settlement agreement. *See* ECF No. 202 at 28, *citing* Monitor's 12th Rep., ECF No. 174-1 at 9–10. But the Monitor's twelfth report contains no such concurrence. It does, however, note that the County has so far fallen short on an alternative path to achieve compliance with the settlement agreement: depopulating the jails and expanding community-based alternatives to incarceration. ECF No. 174-1 at 10.

//
//
//
//
//
//
//

# CONCLUSION

Regardless of the outcome of the Motion, both Defendants must focus on reaching substantial compliance in accordance with the implementation plans to which they have agreed. Should this Court determine that Defendants require separate counsel, this does not change their commitments to reach compliance with the settlement.

Respectfully submitted,

Dated: September 12, 2022  FOR THE UNITED STATES:

STEPHANIE S. CHRISTENSEN
Acting United States Attorney
Central District of California

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division

STEVEN H. ROSENBAUM
Chief, Special Litigation Section
Civil Rights Division

RICHARD M. PARK
Assistant United States Attorney
Chief, Civil Rights Section, Civil Division

MAURA KLUGMAN
Deputy Chief, Special Litigation Section
Civil Rights Division

/s/ Matthew Nickell
MATTHEW NICKELL
Assistant United States Attorney
Civil Rights Section, Civil Division

/s/ Luis E. Saucedo
LUIS E. SAUCEDO
Senior Trial Attorney, Special Litigation Section
Civil Rights Division

/s/ Margaret M. Chen
MARGARET M. CHEN
Assistant United States Attorney
Civil Rights Section, Civil Division

/s/ Maggie Filler
MAGGIE FILLER
Trial Attorney, Special Litigation Section
Civil Rights Division

*Attorneys for the United States of America*