OFFICE OF COUNTY COUNSEL
Dawyn Harrison (173855)
Acting County Counsel
 *dharrison@counsel.lacounty.gov*
Dylan Ford (228699)
Deputy County Counsel
 *dford@counsel.lacounty.gov*
500 West Temple St., Floor 6
Los Angeles, California 90012
Telephone:  (213) 974-1807/(213) 974-1811
Facsimile:  (213) 687-8822

KENDALL BRILL & KELLY LLP
Robert E. Dugdale (167258)
 *rdugdale@kbkfirm.com*
Katelyn A. Kuwata (319370)
 *kkuwata@kbkfirm.com*
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California 90067-4013
Telephone: (310) 272-7904
Facsimile: (310) 286-0727

Attorneys for Defendants
County of Los Angeles and the Los
Angeles County Sheriff Alex Villanueva,
in his Official Capacity

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>Defendants. | **CASE NO. 2:15-cv-5903-DDP-JEM**<br><br>**OPPOSITION TO MOTION FOR DECLARATION OF CONFLICT BETWEEN COUNTY OF LOS ANGELES AND LOS ANGELES COUNTY SHERIFF AND FOR AN ORDER APPOINTING CONFLICT COUNSEL**<br><br>Date:     October 3, 2022<br>Time:    10:00 a.m.<br>Crtrm.:   9C<br><br>The Hon. Dean D. Pregerson |

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND .................................................................................................. 2

    A.     The Sheriff Is A Party To This Case Only In His Official
        Capacity ........................................................................................... 2

    B.     The Sheriff's Budgetary Disputes And Policy Disagreements
        With The Board Have No Place In This Litigation ............................ 3

III.    THE MOTION SHOULD BE DENIED .............................................................. 5

    A.     Overview Of The County's Governance Structure .............................. 5

    B.     There Is No Conflict Between The Sheriff And The County ................ 6

        1.     There Is No Concurrent Representation Because the
            Sheriff Is Not a Defendant in His Personal Capacity in
            This Case ................................................................................ 7

        2.     The Sheriff's Role in Managing the Jails Is Not at Issue .......... 10

    C.     The Sheriff Has Presented No Authority To Justify His Request
        For Free Counsel Of His Own Choice ............................................. 13

        1.     The Sheriff Has Not Complied with the Statutory Process
            for County-Funded Conflicts Counsel ....................................... 13

        2.     The Sheriff Is Not Entitled to Court-Funded Counsel .............. 15

        3.     The Motion Is a Disguised Request for a Mandatory
            Injunction, Which Fails as a Matter of Law .............................. 16

IV.    CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. 30.64 Acres of Land, More or Less, Situated in Klickitat Cty., State of Wash.,*
   795 F.2d 796 (9th Cir. 1986) ................................................................ 16

*Alberti v. Klevenhagen,*
   610 F. Supp. 138 (S.D. Tex. 1985) ...................................................... 10

*Aldabe v. Aldabe,*
   616 F.2d 1089 (9th Cir. 1980) ............................................................. 15

*Cabrera v. Municipality of Bayamon,*
   622 F.2d 4 (1st Cir. 1980) ................................................................... 10

*City of Huntington Beach v. Petersen Law Firm,*
   95 Cal. App. 4th 562 (2002) ................................................................ 13

*Civil Serv. Comm'n v. Superior Court,*
   163 Cal. App. 3d 70 (1984) ....................................................... 7, 11, 12

*Cortez v. Cty. of Los Angeles,*
   294 F.3d 1186 (9th Cir. 2002) ............................................................. 11

*DeGrassi v. City of Glendora,*
   207 F.3d 636 (9th Cir. 2000) .............................................................. 13

*Farris v. Seabrook,*
   677 F.3d 858 (9th Cir. 2012) .............................................................. 16

*Garcia v. Google, Inc.,*
   786 F.3d 733 (9th Cir. 2015) .............................................................. 16

*Kentucky v. Graham,*
   473 U.S. 159 (1985) .......................................................................... 8, 9

*Hayes v. City & Cty. of San Francisco,*
   No. C06-03510 MJJ, 2007 WL 2021865 (N.D. Cal. July 12, 2007) .................. 7

*LA All. for Human Rights v. Cty. of Los Angeles,*
   14 F.4th 947 (9th Cir. 2021) ............................................................... 16

ii

*Malkin v. Fed. Ins. Co.*,
562 F. Supp. 3d 854 (C.D. Cal. 2022) .................................................... 5

*Meehan v. Hopps*,
144 Cal. App. 2d 284 (1956) ................................................................. 8

*Miller v. Carson*,
550 F. Supp. 543 (M.D. Fla. 1982) ...................................................... 10

*Palmigiano v. DiPrete*,
737 F. Supp. 1257 (D.R.I. 1990) .......................................................... 10

*Pierce v. San Mateo Cty. Sheriff's Dep't*,
232 Cal. App. 4th 995 (2014) ............................................................... 11

*Stanley v. Univ. of S. Cal.*,
13 F.3d 1313 (9th Cir. 1994) ................................................................ 17

*Streit v. Cty. of Los Angeles*,
236 F.3d 552 (9th Cir. 2001) ................................................................ 11

*Von Colln v. Cty. of Ventura*,
189 F.R.D. 583 (C.D. Cal. 1999)........................................................... 11

*Ward v. Superior Court*,
70 Cal. App. 3d 23 (1977) .......................................................... 7, 8, 9

**Statutes**

28 U.S.C. § 1915 ............................................................................ 15, 16

Cal. Gov. Code § 31000.6 ..................................................... 13, 14, 15, 17

Cal. Gov't Code § 26600-26749 .......................................................... 11

Gov't Code § 23005 ....................................................................... 6, 8

Gov't Code § 25203 ....................................................................... 6, 8

Gov't Code § 25303 ................................................................... 6, 8, 10

**Rules**

Fed. R. Civ. P. 25(d) ........................................................................ 3

iii

## I. <u>INTRODUCTION</u>

Defendant Sheriff Alex Villanueva (the "Sheriff") filed this Motion asking the Court to declare a conflict and provide him with separate counsel from the counsel for Defendant County of Los Angeles (the "County"). The thrust of the Motion is the Sheriff's disagreement with the Los Angeles County Board of Supervisors' (the "Board") plan to come into compliance with certain provisions of the Settlement Agreement in this case by reducing the inmate population in the Los Angeles County Jail ("LACJ") system and reevaluating the LACJ system's existing facilities. Under the Board's policy, known as "Care First, Jails Last," the County is evaluating ways to reduce jail populations and decrease recidivism by investing in community-based alternatives to incarceration. The Sheriff disagrees that this policy initiative will bring the County and Sheriff into compliance with the Settlement Agreement, and further disagrees with various other budgetary and management decisions made by the Board which have impacted the Los Angeles County Sheriff's Department (the "LASD"). The Sheriff is entitled to criticize the Board's policy judgments on the campaign trail, the op-ed pages, or in his regular cable news appearances. But he is not entitled to the relief sought by this Motion: the appointment (at no cost to the Sheriff) of a lawyer who will interject the Sheriff's policy positions into this litigation.

The Sheriff claims that his disagreements with the Board about jail policy have led the County's contracted counsel, the law firm of Kendall Brill & Kelly ("KBK"), to have a conflict of interest. The Sheriff misunderstands his role in this litigation. The Sheriff is a defendant solely in his official capacity, and an official capacity lawsuit is just a means to plead a cause of action against a governmental entity itself. Among the two defendants, the County is the only real party in interest in this suit.

Before a conflict of interest can be shown, the Sheriff must show that the County's counsel is representing him personally in this litigation. He cannot. The

1

County Counsel and its contracted counsel have a single client: the County.  When the County Counsel's office or its designees provide a defense to a County officer or employee in his or her official capacity, no attorney-client relationship is formed with the County officer or employee.  As KBK has never represented the Sheriff, there cannot be a conflict of interest between him and the Sheriff.

Moreover, the Sheriff's policy disagreements with the County and its Board cannot form the basis for a conflict of interest in this proceeding.  Under the County Charter, the County Counsel's office has the exclusive right to control proceedings in which the County or a County officer in his official capacity is a defendant.  It is the sole responsibility of the County Counsel and its designees to raise the arguments in this proceeding that they believe best serve the County's interests.  The Sheriff has no authority to direct this litigation.

A further defect in the Sheriff's Motion is that there is no basis for the Court to award his requested relief—the appointment of lawyers of his choice, at no cost to the Sheriff.  Under the Government Code, there is an established procedure for seeking County-funded conflicts counsel in appropriate cases.  This Motion does not comply with any of the requirements of that statute.  The only other statute mentioned by the Sheriff relates to the Court's ability to appoint counsel for indigent litigants.  It does not authorize any payments to appointed counsel.  If this Motion were construed as a request for a mandatory injunction, it would fail as well—the Sheriff has no causes of action to support an injunction, and he has an adequate remedy of law under the Government Code.  He has simply chosen not to pursue it.

In short, this Motion is procedurally flawed and substantively deficient.  The County respectfully requests that the Court deny the Motion in its entirety.

## II.   BACKGROUND

### A.   The Sheriff Is A Party To This Case Only In His Official Capacity

This case was filed in August 2015.  (Dkt. No. 1, 1.)  The United States alleged that the County's management of the jails in Los Angeles County deprived

1  mentally ill inmates of their Constitutional rights to adequate care.  (*See generally*

2  *id.* ¶¶ 17-24.)  The United States further alleged that the LASD custody staff had a

3  pattern or practice of using excessive force against prisoners in the jails.  (*See*

4  *generally id.* ¶¶ 25-27.)

5      The United States named the County and the Sheriff's predecessor, Sheriff

6  Jim McDonnell, as defendants in the case.  (*Id.*)  Sheriff McDonnel was "sued in his

7  official capacity only."  (*Id.* ¶ 8.)  Pursuant to their obligations under California law,

8  the County Counsel retained legal counsel to represent the County and provide a

9  defense to the County and Sheriff McDonnell.  This representation resulted in a pre-

10  litigation settlement that was executed in August 2015 (the "Settlement

11  Agreement").  (Dkt No. 14.)

12      Sheriff Villanueva defeated Sheriff McDonnell in the 2018 election.  Upon

13  taking office, he was automatically substituted as a party in this action.  *See* Fed. R.

14  Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an

15  official capacity dies, resigns, or otherwise ceases to hold office while the action is

16  pending.  The officer's successor is automatically substituted as a party.").

17      **B.**   **The Sheriff's Budgetary Disputes And Policy Disagreements With**

18          **The Board Have No Place In This Litigation**

19      After progress in achieving compliance with approximately one-third of the

20  Settlement Agreement's provisions began to stall in 2021, the County and the

21  LASD, in consultation with the United States Department of Justice ("DOJ"), and

22  with the assistance of the Court-appointed Monitor, initiated a Court-supervised

23  process to implement these remaining reforms required by the Settlement

24  Agreement.  Specifically, since December 2021, the County and the LASD have

25  been working with the DOJ and the court-appointed Monitor to craft

26  "implementation plans" designed to outline the corrective actions the County and

27  the LASD intend to take to come into compliance with 23 provisions in the

28  Settlement Agreement for which the County and the LASD have yet to reach

3

substantial compliance.  To date, this has been a collaborative effort among the County, the LASD, the DOJ, and the Monitor aimed at finding solutions to bring the County and the LASD into full compliance with the terms of the Settlement Agreement, including those for which compliance has proven difficult to obtain due to the exploding number of inmates with severe mental health conditions who now require services pursuant to the Settlement Agreement as compared to when it was executed in 2015.  In crafting the implementation plans that have been provided to the DOJ and Monitor to date, County Counsel and KBK have consistently sought the input of not only the LASD, but all of the stakeholders that have an interest in whatever plan is being offered.  And, contrary to what the Sheriff states in the Motion (perhaps, in some measure, based on his clear misunderstandings of the County and the LASD's obligations under the Settlement Agreement), the implementation plans crafted by the parties to date offer a realistic roadmap to achieving compliance with the Settlement Agreement provisions for which the County and the LASD have not achieve compliance to date.[1]

   In the Motion, the Sheriff details his many disputes regarding how the Board has exercised its authority to manage the County budget.  (Mot. at 8:27-13:5.)  As related to the Settlement Agreement, the Sheriff further contends that he and the County have different views regarding final plans which have not yet been provided in the case addressing how the County and the LASD can ultimately come into compliance with certain provisions of the Settlement Agreement which require the County and the LASD to provide certain acutely mentally ill inmates with specialized "Moderate Observation Housing" and "High Observation Housing." The Sheriff believes that compliance with these provisions of the Settlement

---

[1]   The DOJ agrees this is the case.  *See* United States Statement Relating to Los Angeles County Sheriff's Motion for Declaration of Conflict and for an Order Appointing Conflict Counsel, dated 9/12/22, at 2-4.  (Dkt. No. 211 at 2-4).

Agreement addressing specialized mental health housing cannot be reached unless (1) the LASD's staffing levels are greatly increased, and (2) the County builds a new mental health facility that would serve as the functional equivalent of a jail for the severely mentally ill.  (*Id.*)  At bottom, the Sheriff's purported solution to the multi-faceted criminal justice problems underlying this particular aspect of this case is to simply "build more jails."

The County has taken a different approach that it believes will result in better outcomes for severely mentally ill inmates in the LACJ system.  The County's strategy of "Care First/Jails Last" is consistent with those goals and serves community needs, including the commitment to divert inmates with mental health issues out of the jails and into community-based treatment settings.   (*See* Dkt. No. 203-3, 11.[2])

The Sheriff is entitled to disagree with the Board's approach to public safety issues in the County.  But his political disagreements regarding the Board's approach to addressing the mental health housing issues in the case is not a "conflict" that supports granting him the independent counsel he seeks in his Motion.

## III.   THE MOTION SHOULD BE DENIED

### A.   Overview Of The County's Governance Structure

Under California and County law, the Board and County Counsel control County litigation.  This reality belies the Sheriff's contention that he can assert a "conflict" and then obtain separate counsel to represent him in this case.

---

[2] The Sheriff asks the Court to take judicial notice of correspondence authored by the Sheriff and other County officers, a publication of the Men's Central Jail Closure Workgroup, a motion by Supervisor Mitchell, and a motion filed in a Superior Court.  It is appropriate for the Court to take judicial notice of the fact that the various government officials made the statements contained in the documents, but it cannot take judicial notice of the truth of those statements.  *Malkin v. Fed. Ins. Co.*, 562 F. Supp. 3d 854, 861 (C.D. Cal. 2022).

1      Government Code section 23005 provides that "a county may exercise its

2  powers only through the board of supervisors or through agents and officers acting

3  under authority of the board or authority conferred by law."  Government Code

4  section 25303 states that "[t]he board of supervisors shall supervise the official

5  conduct of all county officers, and officers of all districts and other subdivisions of

6  the county, and particularly insofar as the functions and duties of such county

7  officers and officers of all districts and subdivisions of the county relate to the

8  assessing, collecting, safekeeping, management, or disbursement of public funds."

9  Thus, as the governing body of the County, the Board controls the expenditure of

10  County funds and supervises all county officers, including the Sheriff.

11      The Board also controls litigation (like this case) brought against the County.

12  Specifically, Government Code section 25203 establishes that the board of

13  supervisors shall "direct and control the conduct of litigation in which the county, or

14  any public entity of which the board is the governing body, is a party."  Los Angeles

15  County Charter article VI, section 21 vests County Counsel with "exclusive charge

16  and control of all civil actions and proceedings in which the County or any officer

17  thereof, is concerned or is a party" (footnotes omitted).

18      In contrast, no statute grants the Sheriff the right to control litigation where

19  the County is named as a party to that litigation and he is named as a party solely in

20  his official capacity as an officer who heads a County department.

21     **B.**    **<ins>There Is No Conflict Between The Sheriff And The County</ins>**

22      The Sheriff's Motion is based on the proposition that the County's counsel,

23  KBK, is engaged in a concurrent, conflicted representation of the County and the

24  Sheriff.  But there is no conflict: the County Counsel and its designees have the

25  exclusive authority to present a defense for the County and its officers who are sued

26  in their official capacity.  KBK's representation of the Sheriff in this suit *does not*

27  create an individual attorney-client relationship between KBK and the Sheriff.

28  Thus, there is no concurrent representation that could give rise to a conflict.

6

1.   **There Is No Concurrent Representation Because the Sheriff Is Not a Defendant in His Personal Capacity in This Case**

Before a conflict of interest can be established, the party asserting a conflict must show that he "was or is 'represented' by the attorney in a manner giving rise to an attorney-client relationship." *Civil Serv. Comm'n v. Superior Court*, 163 Cal. App. 3d 70, 76-77 (1984). The Sheriff cannot meet this burden.

"Los Angeles County Counsel has only one client, namely, the County of Los Angeles." *Ward v. Superior Court*, 70 Cal. App. 3d 23, 32 (1977); *see also* State Bar of Cal. Standing Comm. on Prof'l Responsibility & Conduct, Formal Op. 2001-156 ("[A]n attorney for a governmental entity usually has only one client, namely, the entity itself, which acts through constituent sub-entities and officials."); *Hayes v. City & Cty. of San Francisco*, No. C06-03510 MJJ, 2007 WL 2021865, at *1 (N.D. Cal. July 12, 2007) ("The City Attorney's Office represents the City and County of San Francisco, not individual employees . . . .").

In *Ward*, *supra*, the Assessor for the County, Philip E. Watson, filed a lawsuit against Baxter Ward, who was a County Supervisor, as well as two County employees. *Ward*, 70 Cal. App. 3d at 27. Watson moved to disqualify County Counsel from representing Ward and the employees in the case. *Id*. The Court of Appeal noted that "[t]he function of the Los Angeles County Counsel is set forth in article VI, section 21, of the Los Angeles County Charter." *Id*. at 30. "The Los Angeles County Counsel has only one client, namely, the County of Los Angeles. . . . . Thus the county counsel's representation of county officers is analogous to the representation afforded officers of a corporation by corporate counsel." *Id*. at 32 (footnote omitted) (citation omitted). No attorney-client relationship existed between County Counsel and Watson based on prior legal work for the Assessor such that County Counsel would be conflicted out from representing Ward. *Id*. at 34.

The *Ward* court explained that the purpose of ethical rules regarding conflicts

7

1   is to protect the confidential relationship between an attorney and a client.  *Ward*, 70

2   Cal. App. 3d at 34.  But under Government Code section 25303, the Board

3   supervises "all county officers, and officers of all districts and other subdivisions of

4   the county," and therefore the communications between Watson and County

5   Counsel were not confidential.  *Id*. at 35 (quoting Cal. Gov't Code § 25303).  As

6   such, there was no basis for Watson to seek to disqualify County Counsel in the

7   case.

8          By law, the Office of County Counsel is charged with providing legal advice,

9   on behalf of the Board, to constituent entities and officials within the County.  Cal.

10  Gov't Code § 23005 (County exercises authority "only through the board of

11  supervisors" or its authorized agents); *id*. § 25203 (the Board shall "direct and

12  control the conduct of litigation in which the county, or any public entity of which

13  the board is the governing body, is a party"); L.A., Cal., County Charter art. VI, § 21

14  (County Counsel is vested with "exclusive charge and control of all civil actions and

15  proceedings in which the County or any officer thereof, is concerned or is a party"

16  (footnotes omitted)).

17         In this respect, "the county counsel's representation of county officers is

18  analogous to the representation afforded officers of a corporation by corporate

19  counsel," which does *not* give rise to a separate attorney-client relationship.  *Ward*,

20  70 Cal. App. 3d at 32; *see also Meehan v. Hopps*, 144 Cal. App. 2d 284, 290 (1956)

21  ("The attorney for a corporation represents it, its stockholders and its officers in

22  their representative capacity.  He in nowise represents the officers personally.").

23         There is no conflict of interest with respect to this suit because the Sheriff is

24  named as a defendant solely in his official capacity.  (*See* Dkt. No. 1 ¶ 8.)  Official-

25  capacity suits "generally represent only another way of pleading an action against an

26  entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66

27  (1985) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690

28  n.55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be

8

treated as a suit against the entity." *Id.* at 166.  "It is *not* a suit against the official personally, for the real party in interest is the entity." *Id.*  The Sheriff has no personal interest in this litigation because the Board is the governing body of the County, and the County Counsel has exclusive responsibility to control litigation.

Under *Ward*, KBK's representation of the Sheriff in his official capacity as a defendant in this case does not create a separate attorney-client relationship.  Like County Counsel, KBK's sole client is the County.

Ignoring this authority, the Sheriff cites extensively from an opinion of the California Attorney General discussing the potential for conflicts between a county counsel's advice to a board of supervisors and a sheriff concerning their respective duties.  (*See* Mot. at 19:18-21:21 (discussing 80 Op. Cal. Att'y Gen. 127 (1997)).) That opinion discussed the provision of legal advice outside of the litigation context and specifically cautioned that it was not providing any analysis of "the obligation of the county to provide for the defense of civil actions or proceedings brought against a county officer in his official or individual capacity for acts or omissions within the scope of employment."  80 Op. Cal. Att'y Gen. 127, 1997 WL 282457, at *1 (May 28, 1997).  Here, the conduct of this litigation has been exclusively entrusted to the County Counsel and its designated counsel, KBK.  The Sheriff is a defendant solely in his official capacity.  As such, the Sheriff has no personal interest in the arguments or strategy the County chooses to pursue in this case.

The Sheriff also cites authorities concerning motions to disqualify counsel, the ethical duties lawyers owe during concurrent representations, and the potential for conflicts of interest to arise during joint representations.  (Mot. at 16:21-22:28.) None of these authorities are relevant, because there is no evidence that KBK has formed a personal attorney-client relationship with the Sheriff.

The Sheriff further raises the specter of his personal contempt exposure as a reason he needs separate counsel.  This concern is entirely speculative and unfounded.  The County has demonstrated that it is working in good faith to

implement a complex and challenging settlement agreement that requires wide-ranging reforms.  And, in any event, when Courts use their contempt power in patterns and practices cases like this one, they invariably do so by imposing monetary fines for which the Sheriff would be indemnified.  *E.g.*, *Cabrera v. Municipality of Bayamon*, 622 F.2d 4, 7 (1st Cir. 1980) (affirming $1000 per day against mayor); *Alberti v. Klevenhagen*, 610 F. Supp. 138, 143 (S.D. Tex. 1985) ($5000 per day against sheriff and county commissioners); *Miller v. Carson*, 550 F. Supp. 543, 549 (M.D. Fla. 1982) ($10,000 flat sum and $5000 per day against sheriff and others "in their individual and official capacities"); *Palmigiano v. DiPrete*, 737 F. Supp. 1257, 1258 (D.R.I. 1990) (referencing an earlier award of $50 per day per prisoner against governor and state corrections director).

Because the Sheriff is a defendant in this case purely in his official capacity, he has no personal interest in this suit.  KBK's representation of the Sheriff as part of its duties to represent the County's interests in litigation does not create a personal attorney-client relationship with the Sheriff.  Because counsel *does not* have an attorney-client relationship with the Sheriff, there can be no conflict.

## 2.   The Sheriff's Role in Managing the Jails Is Not at Issue

The Sheriff contends that this case implicates his "independent" authority in connection with running the jails.  (Mot. at 18:28-19:5.)  He further asserts that, because he has authority to manage the jails, he has distinct interests that support his demand for the appointment of independent counsel.  (*Id.* at 19:6-21:14.)  The Sheriff is wrong on both points.

The respective roles of the Board, County Counsel, and the Sheriff are set forth in the Government Code, the County Charter, and the County Code.  The Government Code vests the Board with oversight authority over all County officers, which include both the County Counsel and the Sheriff.  Cal. Gov't Code § 25303.  County Counsel represents County officers and departments, including the LASD.  *See, e.g.*, *id.* §§ 25203, 25303; L.A., Cal., County Charter art. VI, § 21 (providing

10

1    that County Counsel shall represent and advise all County officers "in all matters

2    and questions of law pertaining to their duties, and shall have exclusive charge and

3    control of all civil actions and proceedings in which the County or any officer

4    thereof, is concerned or is a party" (footnotes omitted)); *Pierce v. San Mateo Cty.*

5    *Sheriff's Dep't*, 232 Cal. App. 4th 995, 1000 n.1 (2014) ("The Sheriff's Department

6    is not a separate governmental entity, but is a department of San Mateo (County).").

7    The Sheriff, in turn, has certain enumerated duties and powers, only some of which

8    exist independent from Board oversight.  Cal. Gov't Code §§ 26600-26749.

9         The Sheriff's management of the jail systems is subject to Board oversight.

10   The County has "ultimate power over the jail," and the Sheriff, "as the administrator

11   of those jails, acts for the County."  *Cortez v. Cty. of Los Angeles*, 294 F.3d 1186,

12   1190 (9th Cir. 2002) (citations omitted); *see also Streit v. Cty. of Los Angeles*, 236

13   F.3d 552, 561 (9th Cir. 2001) (holding that "in California, the counties hold the

14   ultimate power over the jails" (citing Cal. Gov't Code § 25303)); *Von Colln v. Cty.*

15   *of Ventura*, 189 F.R.D. 583, 601 (C.D. Cal. 1999) ("Because the day-to-day

16   operation of the county jail is not part of the Sheriff's investigative or prosecutorial

17   functions, the board of supervisors maintains supervisory authority over the

18   Sheriff's day-to-day operation of the county jail under California law.").

19        The case of *Civil Service Commission v. Superior Court*, 163 Cal. App. 3d 70

20   (1984), is illustrative because it shows what must happen before County Counsel

21   can have a disqualifying conflict of interest.  In *Civil Service Commission*, the court

22   recognized an "exception" to the rule that a public attorney's advice to a public

23   entity does not give rise to an attorney-client relationship.  *Id*. at 78.  That exception

24   applies when "an attorney advises or represents a public agency with respect to a

25   matter as to which the agency possesses independent authority, such that a dispute

26   over the matter may result in litigation between the agency and the overall entity."

27   *Id*.

28        *Civil Service Commission* involved a dispute between the County of

THE COUNTY'S OPPOSITION TO MOTION FOR DECLARATION OF CONFLICT AND
FOR AN ORDER APPOINTING CONFLICT COUNSEL

San Diego and the Civil Service Commission of the County of San Diego. *Civil Service Commission*, 163 Cal. App. 3d at 73. The commission exercised "a considerable degree of independence" from the County of San Diego; and the commission was also "charged with administering the County's personnel system, in the context of which it [was] empowered to investigate complaints filed by county employees regarding personnel actions taken by various county agencies, and to make rulings based on those investigations." *Id*. at 73-74. The commission's decisions were final and had to be followed "unless overturned by the courts on appeal." *Id*. at 77 (citation omitted). The commission was also deemed a "quasi-independent public agency." *Id*. at 75.

The commission had investigated certain actions of a department of the County of San Diego. 163 Cal. App. 3d at 74. Commission members freely consulted with county counsel about legal matters involved in that investigation. *Id*. The County of San Diego later sued the commission regarding the outcome of that investigation, and the commission sought to have county counsel disqualified. *Id*. The Court of Appeal found that disqualification was appropriate. *Id*. at 84.

The deciding factor in *Civil Service Commission* was the commission's "quasi-independent" status as a county agency. 163 Cal. App. 3d at 77. "In contrast to most county agencies, which are directly supervised by the board of supervisors, the Commission's unique review function demands an independence which is specifically provided for in . . . the San Diego County Charter . . . ." *Id*. (citation omitted).

Here, in contrast, the Sheriff is directly supervised by the Board. Moreover, this case involves the County's obligations to comply with the DOJ settlement, not the Sheriff's role in managing the jails. Thus, there is no basis for the Sheriff's contention that he can assert a conflict or demand separate counsel in this case.

THE COUNTY'S OPPOSITION TO MOTION FOR DECLARATION OF CONFLICT AND FOR AN ORDER APPOINTING CONFLICT COUNSEL

C. **The Sheriff Has Presented No Authority To Justify His Request For Free Counsel Of His Own Choice**

This Motion requests an order that "Sheriff Alex Villanueva shall be provided Jones Mayer as separate legal counsel in the above-captioned matter." (Dkt. No. 206 at 2:2-3.) The Motion does not specify what statute or other authority, if any, would authorize this relief. That is because there is none. The Sheriff cannot and has not met the statutory requirements for County-paid conflicts counsel, nor has he shown any other entitlement to Court-appointed counsel.

1. **The Sheriff Has Not Complied with the Statutory Process for County-Funded Conflicts Counsel**

The Sheriff, like any other County officer sued in his official capacity, has no general right to a separate defense. The Sheriff's sole avenue for securing County-paid conflicts counsel is by complying with the procedural and substantive requirements of California Government Code section 31000.6. The present Motion does not remotely satisfy those statutory requirements.

When sued in their official capacity, County officers like the Sheriff are generally entitled to a County-provided defense, "[b]ut a public entity has *no* obligation to provide that employee with a *separate* defense." *City of Huntington Beach v. Petersen Law Firm*, 95 Cal. App. 4th 562, 567 (2002). "To the contrary, the courts have expressly refused to establish 'a judicially declared right to independent counsel. . . .'" *Id.* at 568 (quoting *Laws v. County of San Diego*, 219 Cal. App. 3d 189, 192 (1990)). "The Legislature did not grant public employees the right to control a defense provided by a public entity." *DeGrassi v. City of Glendora*, 207 F.3d 636, 642 (9th Cir. 2000).

The Sheriff is only entitled to County-funded separate counsel if he satisfies the procedural and substantive requirements of Government Code section 31000.6. Under the statute, "[u]pon request of . . . the sheriff of the county, the board of supervisors shall contract with and employ legal counsel to assist the assessor,

13

1  auditor-controller, or the sheriff in the performance of his or her duties in any case

2  where the county counsel or the district attorney would have a conflict of interest in

3  representing . . . the sheriff."  Cal. Gov't Code § 31000.6(a).

4      Should the Board of Supervisors disagree that there is a conflict, "the sheriff,

5  after giving notice to the county counsel or the district attorney, may initiate an ex

6  parte proceeding before the presiding judge of the superior court."  Cal. Gov't Code

7  § 31000.6(b).  The Presiding Judge of the Superior Court determines whether a

8  conflict exists, as well as whether the conflict can be addressed through the creation

9  of an "ethical wall" with the county counsel or district attorneys' office.  *Id.*

10 § 31000.6(c).

11     Should the Presiding Judge determine that there is a conflict and that an

12 ethical wall is inadequate, the Board of Supervisors is directed to employ the legal

13 counsel selected by the Presiding Judge, who can consider recommendations from

14 the Sheriff and Board.  Cal. Gov't Code § 31000.6(e).  The Presiding Judge is also

15 directed to consider the prevailing rates for similar work when selecting counsel.  *Id.*

16     The relief sought in the Motion is an attempted end-run around the

17 requirements of Government Code section 31000.6.  Per the statute, the exclusive

18 means for the Sheriff to seek conflicts counsel is an *ex parte* proceeding before the

19 Presiding Judge of the Superior Court of California, County of Los Angeles.  And

20 the only relief the Sheriff could receive in such a proceeding is the counsel selected

21 by the Presiding Judge, who would then contract with the County; this process does

22 not result in the direct appointment of counsel of the Sheriff's choice.

23     The Motion's flaws are not limited to procedural defects.  On the merits, there

24 is no conflict that would justify the appointment of separate counsel for the Sheriff

25 in this case.  Section 31000.6 addresses situations where the sheriff needs legal

26 advice concerning "the performance of his or her duties" and the County Counsel is

27 unable to do so because of a conflict.  Cal. Gov't Code § 31000.6(a).  Here, the basis

28 of the asserted conflict is that the Sheriff disagrees with the ways in which the

14

County has chosen to defend this action.  (*See*, *e.g.*, Mot. at 15:15-16:15
(disagreeing with arguments raised by the County's selected counsel at a hearing),
22:5-8 (disagreeing with the County's approach for compliance with the Settlement
Agreement), 25:10-26 (expressing a concern that the County has not sufficiently
involved the Sheriff in defending this case), 27:20-28:9 (disagreeing with the
County's proposed measures to ensure compliance with the Settlement Agreement).

The Sheriff may disagree with how the County Counsel—through its counsel
of record in this case—is exercising its "exclusive charge and control of all civil
actions and proceedings in which the County or any officer thereof, is concerned or
is a party," but expressing those disagreements is not one of his official duties.
L.A., Cal., County Charter art. VI, § 21 (footnotes omitted).  Put simply, the Sheriff
does not need a lawyer to separately advise him regarding his duties to control the
County's defense in this action because the Sheriff has no such duties.

Thus, even if the relief sought by the Sheriff here was raised in the proper
court in a procedurally-appropriate manner, Government Code section 31000.6
would still not apply here to authorize that relief.

## 2.   The Sheriff Is Not Entitled to Court-Funded Counsel

Beyond the Government Code, there is no other authority supporting the
Sheriff's requested relief.  As the Sheriff acknowledges, there is no constitutional
right for the appointment of counsel at government expense in a civil case.  *Aldabe
v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980); (*see* Mot. at 22:23-24).

The Sheriff raises a single statutory ground for his request: 28 U.S.C. § 1915.
(Mot. at 23:1-10.)  The statute contains rules for a litigant to proceed in *forma
pauperis* and provides that a "court may request an attorney to represent any person
unable to afford counsel."  28 U.S.C. § 1915(e)(1).

The Sheriff presents no evidence that he is unable to afford counsel, so the
statute does not apply by its own terms.  Moreover, "[n]o statute provides funds to
pay counsel secured under" this provision, nor does the statute "authorize

15

1  appointment of counsel to involuntary service." *United States v. 30.64 Acres of*
2  *Land, More or Less, Situated in Klickitat Cty., State of Wash.*, 795 F.2d 796, 801
3  (9th Cir. 1986).  Even if it applied, 28 U.S.C. § 1915 would not provide the Sheriff
4  his desired relief, as this statute cannot be used to force the Court or any other party
5  to pay for the Sheriff's preferred counsel.

6         **3.**     **The Motion Is a Disguised Request for a Mandatory**
7                **Injunction, Which Fails as a Matter of Law**

8       The Sheriff's requested relief could be construed as a mandatory injunction
9  compelling the County to pay the fees of the Sheriff's preferred attorneys.  Such a
10 request for mandatory injunctive relief must be denied.

11       A party seeking a preliminary injunction "must show that: (1) she is likely to
12 succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of
13 preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction
14 is in the public interest." *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012)
15 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  An injunction
16 is a mandatory injunction if it seeks to compel an affirmative action from the
17 responsible party.  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).
18 Mandatory injunctions are disfavored and should not issue in "doubtful cases." *Id.*
19 (citation omitted).

20       To the extent the Motion seeks an order compelling the County to pay for a
21 separate law firm to represent the Sheriff in this case, it is akin to a request for a
22 mandatory injunction.  A mandatory injunction could not be granted here.  The
23 Sheriff does not have a likelihood of success on the merits because he has not
24 asserted any causes of action in this case that could result in the County being
25 obligated to hire counsel for him.  A district court has "equitable power to grant
26 relief on 'the merits of the case or controversy before it' and 'does not have the
27 authority to issue an injunction' 'based on claims not pled in the complaint.'" *LA*
28 *All. for Human Rights v. Cty. of Los Angeles*, 14 F.4th 947, 957 (9th Cir. 2021)

16

1  (citation omitted).

2      Further, before obtaining an injunction, a party must "demonstrate that her

3  remedy at law was inadequate."  *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th

4  Cir. 1994).  The Sheriff cannot do this.  If the Sheriff were entitled to County-

5  funded conflicts counsel, then he would have an adequate legal remedy: he could

6  file an *ex parte* proceeding with the Superior Court using the procedures of

7  Government Code section 31000.6.  There is no basis for a mandatory injunction

8  against the County compelling it to provide the Sheriff with his own counsel.

9  **IV.**    <u>**CONCLUSION**</u>

10      For the reasons set forth above, the Motion should be denied in its entirety.

11

12  DATED:  September 12, 2022       KENDALL BRILL & KELLY LLP

13

14                           By:      <u>s/ Robert E. Dugdale</u>

15                                ROBERT E. DUGDALE

16                                Attorneys for Defendant
                              COUNTY OF LOS ANGELES

17

18

19

20

21

22

23

24

25

26

27

28

17