1   James R. Touchstone, Esq., SBN 184584
    jrt@jones-mayer.com
2   Krista MacNevin Jee, Esq., SBN 198650
    kmj@jones-mayer.com
3   Richard Lucero, Esq., SBN  207011
    JONES MAYER
4   3777 N. Harbor Blvd.
    Fullerton, California 92835
5   Telephone:  (714) 446-1400
    Facsimile:  (714) 446-1448
6

7   Attorneys for Sheriff Alex Villanueva

8

9                    UNITED STATES DISTRICT COURT

10                   CENTRAL DISTRICT OF CALIFORNIA

11

12   UNITED STATES OF AMERICA,         Case No.  2:15-cv-5903-DDP-JEM

13                Plaintiff,           *Hon. Dean D. Pregerson*

14          v.                         **REPLY TO COUNTY'S OPPOSITION
                                       AND UNITED STATES' STATEMENT
15   COUNTY OF LOS ANGELES, et         IN RESPONSE TO SHERIFF's
     al.;                              MOTION FOR DECLARATION OF
16                                     CONFLICT BETWEEN COUNTY OF
                 Defendants.           LOS ANGELES AND LOS ANGELES
17                                     COUNTY SHERIFF AND FOR AN
                                       ORDER APPOINTING CONFLICT
18                                     COUNSEL**

19

20          Sheriff  Alex  Villanueva  submits  the  following  in  Reply  to  the  County's

21   Opposition  and  the  Statement  of  the  United  States  in  response  to  his  Motion  for

22   Declaration  of  Conflict  Between  County  of  Los  Angeles  and  Los  Angeles  County

23   Sheriff and for an Order Appointing Conflict Counsel:

24   ///

25   ///

26   ///

27   ///

28
                                         - 1 -
     REPLY TO COUNTY'S OPP. AND UNITED STATES' STATEMENT  RE: SHERIFF'S
     MOTION FOR DECLARATION OF CONFLICT AND ORDER FOR CONFLICT COUNSEL

## MEMORANDUM OF POINTS AND AUTHORITIES

**A. The Sheriff is a Party to this Action, is Not Being Represented by the County's Attorney, and Must Be Provided the Ability to Give Input and Essential Information to the Court Relating to His Sole and Exclusive Authority Over the Jails and its Inmates.**

The emphasis and core of the County's opposition is centered on the issue of who has authority to set policy for the County and who controls litigation. In reality, this answers questions not being asked. Indeed, the County advances the position that its suppression of the Sheriff's views in this litigation is somehow a valid use of its authority, even when this Court has already acknowledged that the Court is in need of the Sheriff's input on public safety and other matters relevant to the Court's determinations in this matter.

In fact, the Sheriff's expertise and factual and logistical knowledge about the jail system, its day-to-day operations, and his evaluation of the likelihood that the "plan" the County proposes will actually provide any "realistic roadmap to achieving compliance" is both critical and wanting in this matter. Thus, while it is true the Sheriff has given "input" in the plans presented to this Court by the County and other parties – and, for his part, the Sheriff is absolutely committed to doing what those plans propose, it is not true that anyone has validly represented to the Court the Sheriff's assessment regarding whether those plans are likely to be an efficient or effective method for achieving any compliance. In fact, the County's opposition asserts that the Sheriff has no such say in this action – despite his being a party and the one with superior knowledge and understanding of the functioning of the jails.

Indeed, the County could not have been more dismissive of the Sheriff's expertise and participation in this action. According to the County, the Sheriff merely "misundersantd[]s" the parties' obligations under the settlement agreement; in other

REPLY TO COUNTY'S OPP. AND UNITED STATES' STATEMENT RE: SHERIFF'S
MOTION FOR DECLARATION OF CONFLICT AND ORDER FOR CONFLICT COUNSEL

1   words, the Board knows better.  Further, this is apparently no more than a

2   disagreement about "public safety" and again, the "Board's approach," is the only

3   one that purportedly counts.  The County also seems to claim that the manner in

4   which it and the Sheriff achieve compliance with the settlement agreement is merely

5   a matter of "policy," over which the Board apparently has exclusive control and

6   somehow superior understanding.

7   In fact, the County admits in its opposition that it does not regard the Sheriff

8   as having any stake in this action at all.  The County is simply wrong.

9   According to the County, despite the fact that the Sheriff is a specifically

10   named party in this action, and one who is a separately elected official with distinct

11   constitutional and statutory authority, his presence in this action is essentially

12   meaningless.  Purportedly, the Sheriff has no "personal interest" in this action

13   because this case is about "the County's obligation to comply with the DOJ

14   settlement, not the Sheriff's role in managing the jails."  This is wrong on both counts.

15   And, taken to its logical conclusion, this argument would mean that the Sheriff would

16   not even need to be a party in this action and could be dismissed altogether.

17   However, despite the County's illogical claims in this regard, the Sheriff *is* a

18   named party in this action, and that is not merely a matter of redundancy, but due to

19   the fact that the Sheriff -- as the County readily recognizes, has duties and authority

20   that are "independent from Board oversight."  In fact, in the County's zeal to cite to

21   authorities that make a distinction only as to whether the Sheriff acts *for* the County,

22   as opposed to the *State* -- for purposes of Section 1983 liability, the County ignores

23   the very heart of the authority that is at issue in this matter – the Sheriff's "'sole and

24   exclusive authority to keep the county jail and the prisoners in it.' Cal. Gov't Code

25   § 26605; accord Cal. Pen. Code § 4000 (providing that the county sheriff operates

26   the county jail)."  *Cortez v. County of Los Angeles*, 294 F.3d 1186, 1190 (9th Cir.

27   2002).  It is the *Sheriff* who has such "sole and exclusive" authority over the jails,

28   even if he satisfies that role as a County officer and "for" the County; this is simply

REPLY TO COUNTY'S OPP. AND UNITED STATES' STATEMENT RE: SHERIFF'S
MOTION FOR DECLARATION OF CONFLICT AND ORDER FOR CONFLICT COUNSEL

1  not the *Board's* authority.

2         Further, the County's opposition merely highlights the precise problem posed

3  in the Sheriff's motion.  The County admits that its counsel has only "one client,"

4  (which is *not* the Sheriff), that the County's attorney acts only "on behalf of the

5  Board," and that the County's attorney has "never represented the Sheriff" in this

6  action.  Regardless of whether the Board and/or the County's attorney think that they

7  need not give any voice to the Sheriff, they cannot ignore the simple fact that the

8  Sheriff is a party to this action, the Sheriff separately signed the settlement agreement

9  and is bound by it, and this action most certainly does implicate the Sheriff's "sole

10  and exclusive authority" over the county jails and its prisoners.  Thus, the admission

11  by the County and its attorney that they need not bother giving any value to the

12  Sheriff's views or input for how compliance with the settlement agreement can be

13  achieved – and that he is *not* represented in this action, are admissions that the motion

14  must be granted.  Indeed, whether the County believes that the Sheriff's expertise is

15  of any value is largely irrelevant to whether *this Court* believes that *it needs* the

16  Sheriff's input.

17         In fact, the County entirely misrepresents the very nature of the Sheriff's

18  knowledge and input.  The County asserts that the Sheriff's only "purported solution

19  to multi-faceted criminal justice problems . . . is to simply 'build more jails.'"  This

20  is inaccurate, and obscures the comprehensive views the Sheriff has about delivery

21  of mental health care, the correlation to public safety and homelessness, and the value

22  and practicality of community based diversion alternatives.  Instead, the Sheriff seeks

23  to provide valuable input, data and perspective, as well additional information that is

24  necessary for this Court's realistic and wholistic evaluation and assessment of the

25  plans proposed, as to options that may not have been discussed, and ultimately as to

26  the compliance that is required – all in aid of this Court's ultimate decision on

27  whether the measures proposed to be taken by the parties *sufficiently* comply with

28  the settlement agreement and legal requirements.

REPLY TO COUNTY'S OPP. AND UNITED STATES' STATEMENT RE: SHERIFF'S
MOTION FOR DECLARATION OF CONFLICT AND ORDER FOR CONFLICT COUNSEL

The County would rather that it be able to silence the Sheriff, ignoring and discounting his actual status as a party, and his independent authority over the jails. Ultimately, the County completely misses the fact that the issue in this case is not who is in charge, but rather what is the best path forward for the community and achieving compliance with the settlement agreement. The important outcome of this conflict motion is that the Court will have necessary access to the spectrum of information and perspectives shaping this complex situation.

**B.     The Sheriff Will Unquestionably Comply with Existing Agreements.**

As an opening consideration, the Sheriff would like to assuage concerns apparently raised by the United States about the impact of the motion on existing commitments. The Sheriff does intend to honor and implement steps agreed to be taken by the County and the Sheriff's Department at the last hearing. The Sheriff's motion does not seek to undo or undermine any of those plans. Instead, he seeks separate counsel because he is hampered in the ability to address the insufficiency of those measures in moving towards achieving full compliance, sustained treatment improvement, and protection of the community.

**C.     The Court Needs Full Access to Information Relevant to its Decisions and Has Authority to Grant the Sheriff Separate Counsel in Order to Ensure that It Can Do So.**

As the County's opposition explains, the Board has a broad oversight and supervisory role in overall county governance. The Sheriff respects this authority of the Board, particularly because each member's seat is held by virtue of a vote of the people. However, the Sheriff also is independently elected, and has a role as well, both constitutional and statutory, including his "sole and exclusive authority" over

1  the jails and inmates, which the County recognizes is *independent* of the Board.
2  (Opp., at p. 11.)   Additionally, the Sheriff has an actual and personal basis of
3  knowledge pertinent to the matters to be decided by this Court.  Thus, the County's
4  discounting of the Sheriff's role and responsibilities herein is simply not based in
5  practical reality.  Nor does it give any value to the Sheriff's superior knowledge and
6  expertise, dismissing it as mere policy or budgetary disagreements.

7       If this truly were just a budgetary or policy dispute between the Board and the
8  Sheriff under ordinary conditions, then the opposition brief would be of greater
9  guidance.  However, this is a situation with specific performance measures regulating
10  the treatment of human beings, and the Court must ultimately evaluate whether the
11  County's plan is adequate or will realistically achieve actual compliance.

12       The Board's attempt at framing this as an issue of its primary policy authority
13  is simply misplaced.  Regardless of the Board's desire to control litigation or policy,
14  it is for this Court to decide whether compliance is achieved – regardless of what
15  policies the Board might want to emphasize or further.  And, this Court is most
16  certainly entitled to take steps to assure it hears all relevant evidence, expertise, and
17  information necessary to its decision.  If the remedy the Court ultimately approves
18  discounts or ignores the Sheriff, then he will follow that determination, but the Court
19  should be able to have all pertinent information necessary to its final plan approval.

20       In fact, the County ignores this Court's general authority over its own
21  proceedings.  Further, the County ignores the basic principle underlying California
22  Government Code Section 31000.6.  Contrary to the bulk of the County's misapplied
23  opposition, Section 31000.6 does recognize the right of the Sheriff to separate
24  counsel, and the fact that there can be a conflict of interest for which separate counsel
25  must be provided to the Sheriff under State law.

26       The California Legislature has thus expressly recognized that the County can
27  be required to provide the Sheriff with his own legal representation.  The County's
28  only argument opposing such right, then, is based on the procedures set forth in

REPLY TO COUNTY'S OPP. AND UNITED STATES' STATEMENT RE: SHERIFF'S
MOTION FOR DECLARATION OF CONFLICT AND ORDER FOR CONFLICT COUNSEL

Section 31000.6, suggesting that the Sheriff may only seek approval from the State court.  However, this Court is not subordinate to the State court and cannot be subject to its determination of how this proceeding -- over which *this Court* has exclusive jurisdiction, may go forward, or the information to which this Court needs access.  Thus, the procedures of Section 31000.6 cannot be applied in a manner that would constrain this Court's authority to control its own proceedings.

This Court has equal authority to make the same determination permitted under Section 31000.6.  Otherwise, the Sheriff would be required to take action that would be an enormous waste of judicial resources, and would essentially require the impermissible supervision by the State court of this Court.  Indeed, from the perspective of how scarce judicial resources are utilized, it would be an improper use of such resources for a state judge to be required to understand or apply the law based on the seven-year history of this litigation, with no prior involvement in this case, and to then be required to make a determination as to the conduct of proceedings in this Court and impacting this Court's ongoing federal jurisdiction over this matter.

Instead, this Court may proceed by implementing the underlying authority of Section 31000.6 for separate counsel to the Sheriff.  And this Court cannot be required to submit control over its proceedings to the State court, which would only unnecessarily cause delay and an unwarranted intrusion into this Court's jurisdiction over this matter.

### D. Assessment of the Need for a Mental Health Facility Should Be Part of this Court's Evaluation.

To the extent the statement by the United States in response to the Sheriff's motion asserts that the Monitor did not conclude a new mental health facility was necessary, the Sheriff will clarify his point.  (Statement of United States, at p. 4.)  As the Monitor's Twelfth Report made clear, the County has had (and continues to now

REPLY TO COUNTY'S OPP. AND UNITED STATES' STATEMENT RE: SHERIFF'S
MOTION FOR DECLARATION OF CONFLICT AND ORDER FOR CONFLICT COUNSEL

have) an "evolving" approach to addressing mental health issues for inmates within the County jail.  In fact, the County had previously designed a mental health facility, but subsequently abandoned those plans.

Meanwhile, the Board also approved the total closure of Men's Central Jail, without any plans for a substitute facility or any realistic plan for housing inmates from that facility.  The Board then focused its plan for compliance, at the time of the report, on community-based treatment, as an alternative.  However, the County's current position to this Court is that this prior purported solution is now deemed by the County to be irrelevant to compliance.

The Sheriff wants to be able to explain to the Court an issue not being raised or addressed by the County about the importance of the effect of the decision to close MCJ, without an alternative mental health facility.  Very critically, the loss of the large number of high security cells and the cascading movement of inmates at that level of threat will jeopardize the validity of the various scenarios presently being proposed by the County for temporary mental health housing options.  As noted specifically in the Sheriff's motion, the JFA Institute report noted the fact that MCJ could not merely be closed, without construction of a new mental health facility, or substantial changes to existing facilities.

The Monitor similarly questioned even the County's prior plan for community-based treatment solutions.  Although the Monitor's report did not expressly dictate a mental health facility, it noted that, with the abandonment of that facility, only a small number of beds would be added from proposed community solutions, and this would only be a fraction of the space necessary for the mental health needs of inmates. Regardless of the solution, the Monitor recognized an apparent *severe deficiency* in the Board's plans.  And, this deficiency *remains*.  The implications of the Monitor's evaluation and conclusion are simply inescapable, in full context.

Indeed, it practically goes without saying that a modern mental health facility, including a treatment-driven inmate reception center, must be an essential part of a

comprehensive and lasting solution in this matter.  Further, a key person with important knowledge on this issue is neither being consulted regarding, nor able to provide this Court with, critical information necessary to fully evaluate the plans and solutions now being proposed, or that will be in the future. The Sheriff wants to be able to express what could exist as part of the inmate reception center, namely community treatment providers could be located within the center itself, contemporary treatment space could be included within the development, and treatment could begin as soon as a person arrives at the center.  Such solutions can exist in coordination with community diversion programs, but diversion programs simply will not, and cannot, be the sole solution.

In addition, previous data about the success of community-based programs was based on participants who had been selected for the program due to factors indicating likelihood of successful outcomes, thus undermining the usefulness of such data in extrapolating for larger and more generalized participation.  Proposed expansion of this program to divert thousands of inmates to it will not reasonably provide the same expected success rates, and has the potential to create much higher risk of inmate recidivism.  More detailed analysis is needed to establish criteria and monitoring methods so that successful results can be better achieved in a comprehensive manner.  The Sheriff understands that each time a participant in a diversion program is convicted of a new felony, a member of the community has been victimized and suffered the harm.  The Sheriff does not want the interests of victims left out of this analysis, particularly for the sake of contrary "policy" interests.

All of the primary issues in this matter, including delivery of mental health care, the functionality of the IRC, and the role of community treatment options (such as ATI and ODR), were all part of the overall goals that were sought to be attained with the new mental health facility, which was arbitrarily canceled by the Board.  The new facility would have included a *new* IRC – the current problems of which were the focus of the most recent hearing in *Rutherford*.  The consequence of the Board's

action was that these areas have continued to be the focus of on-going litigation, including in this matter and the *Rutherford* case.

Simply, the county official closest to the issues in this matter, and with the sole and exclusive authority over the jails, is the one being kept furthest from the deliberation process, as to how effective and full compliance with the settlement agreement can actually be achieved. The County has admitted that it does not recognize the Sheriff as a valid party in this matter, and the County's attorney admits that it has never represented the Sheriff in this matter. Thus, such non-representation of the Sheriff, who is a party, means that this Court lacks the very information it needs to make informed decisions in this action.

Given all of these circumstances and since the Court has expansive inherent authority to manage and control litigation before it and the administration of justice, as well as the statutory authority under State law for separate counsel for the Sheriff, this Court may grant the Sheriff's request. The Sheriff asks this Court to grant his motion in order to assure any decision the Court reaches is with full understanding of all necessary facts and information.

Dated: September 18, 2022

Respectfully Submitted,

JONES MAYER

By:s/Krista MacNevin Jee

James R. Touchstone,
Krista MacNevin Jee and
Richard Lucero,
Attorneys for Sheriff Alex Villanueva

- 10 -

REPLY TO COUNTY'S OPP. AND UNITED STATES' STATEMENT RE: SHERIFF'S
MOTION FOR DECLARATION OF CONFLICT AND ORDER FOR CONFLICT COUNSEL

## CERTIFICATE OF SERVICE

X    I hereby certify that on September 18, 2022 I electronically filed the foregoing documents entitled: REPLY TO COUNTY'S OPPOSITION AND UNITED STATES' STATEMENT IN RESPONSE TO SHERIFF's MOTION FOR DECLARATION OF CONFLICT BETWEEN COUNTY OF LOS ANGELES AND LOS ANGELES COUNTY SHERIFF AND FOR AN ORDER APPOINTING CONFLICT COUNSEL, with the United States Court District Court – Central District of California by using the CM/ECF system.

X    I certify that the following parties or their counsel of record are registered as ECF Filers and that they have been served by the CM/ECF system:

Plaintiff - United States of America
Intervenor Plaintiff – Darsel Whitfield
Intervenor Plaintiff – Royal Williams
Intervenor Plaintiff – David Penn
Intervenor Plaintiff – Timothy Polk
Intervenor Plaintiff – Teresa Powers
Intervenor Plaintiff – Mark Sarni
Intervenor Plaintiff – Derrick Thomas
Intervenor Plaintiff – Lepriest Valentine
Defendant – County of Los Angeles
Defendant – Los Angeles County Sheriff

X    I further certify that on September 19, 2022, I served a copy of the foregoing document on the following parties or their counsel of record by *U.S. mail:*

Lauren Nicole Zack
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005

Wendy A. Gardea
wag@jones-mayer.com

- 11 -

REPLY TO COUNTY'S OPP. AND UNITED STATES' STATEMENT RE: SHERIFF'S
MOTION FOR DECLARATION OF CONFLICT AND ORDER FOR CONFLICT COUNSEL