1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | Case No. 2:15-cv-5903-DDP-JEM |
|---|---|
| Plaintiff, | |
| v. | **[PROPOSED] ORDER SETTING DEADLINES FOR SUBSTANTIAL COMPLIANCE** |
| COUNTY OF LOS ANGELES et al., | |
| Defendants. | Hon. Dean D. Pregerson<br>United States District Judge |

Having reviewed the United States' Motion for Court Order Setting Deadlines for Substantial Compliance filed on November 10, 2022, ECF No. 227, and good cause appearing,

IT IS HEREBY ORDERED that the United States' Motion is granted. It is further ORDERED that, in granting the United States' Motion, the Court finds that:

1. Defendants are not in compliance with all provisions of the parties' Settlement Agreement, ECF No. 14, which was entered as an order of this Court on September 3, 2015, *id.* at 57.

2. As a result, more specific remedial relief is necessary, as set forth below.

3. The specific relief set forth below complies in all respects with the provisions of 18 U.S.C. § 3626(a). The relief is narrowly drawn, extends no further than necessary to correct ongoing violations of federal rights agreed by the parties with the entry of the Settlement Agreement, and is the least intrusive means necessary to correct these violations, and will not have an adverse impact on public safety or the operation of the criminal justice system.

4. The Settlement Agreement remains in effect. This Order does not waive any Settlement Agreement requirements.

It is further ORDERED that specific relief will consist of the following:

**Compliance Improvement Benchmarks**

1. Defendants will demonstrate improved compliance with the agreed-upon compliance measures for provisions 63, 64, and 80 according to the following schedule:

    a. **Provision 63**

        i. By the end of the first quarter of 2023, at least 65% of incarcerated individuals must wait no more than seven days in mental health housing intake areas before transferring to permanent mental health housing, with an average wait no greater than nine days for the quarter.

        ii. By the end of the second quarter of 2023, 70% of incarcerated

1

individuals must wait no more than seven days in mental health housing intake areas, with an average wait no greater than eight days.

  iii. By the end of the third quarter of 2023, 75% of incarcerated individuals must wait no more than seven days in mental health housing intake areas, with an average wait no greater than seven days.

  iv. By the end of the fourth quarter of 2023, 80% of incarcerated individuals must wait no more than seven days in mental health housing intake areas, and the average wait must continue to be below seven days.

  v. By the end of the first quarter of 2024, 85% of incarcerated individuals must wait no more than seven days in mental health housing intake areas, and the average wait must continue to be below seven days.

  vi. By the end of the second quarter of 2024, 90% of incarcerated individuals must wait no more than seven days in mental health housing intake areas, and the average wait must continue to be below seven days.

b. **Provision 64**

  i. By the end of the first quarter of 2023, the difference between the total population of individuals with a mental health level of care (MHLOC) of P4[1] and those receiving inpatient care[2] must

---

[1] By definition, anyone assigned a P4 level of care requires inpatient care.

[2] Presently, incarcerated individuals can receive inpatient care only in the Jails' Correctional Treatment Center – Mental Health Unit (CTC-MHU), a.k.a. the Forensic Inpatient Unit (FIP). However, Defendants may be able to provide inpatient-level care to some individuals in a proposed psychiatric urgent care unit.

be, on average, no greater than 80 individuals.
ii. By the end of the second quarter of 2023, the difference must be, on average, no greater than 60 individuals.
iii. By the end of the third quarter of 2023, the difference must be, on average, no greater than 40 individuals.
iv. By the end of the fourth quarter of 2023, the difference must be, on average, no greater than 20 individuals.
v. By the end of the first quarter of 2024, the difference must be, on average, no greater than 10 individuals.
vi. By the end of the second quarter of 2024, the difference must be, on average, no greater than five individuals, and none of those individuals should wait more than four hours for an inpatient placement.

c. **Provision 80**
i. By the end of the first quarter of 2023, 85% of HOH individuals will receive a minimum of ten hours of unstructured out-of-cell time per week, and 75% a minimum of 7.5 hours of structured out-of-cell time per week with at least 3.75 such hours consisting of group programming.
ii. By the end of the second quarter of 2023, 90% of HOH individuals will receive a minimum of ten hours of unstructured out-of-cell time per week, and 80% a minimum of eight hours of structured out-of-cell time per week with at least four such hours consisting of group programming.
iii. By the end of the third quarter of 2023, 95% of HOH individuals will receive a minimum of ten hours of unstructured out-of-cell time per week, and 85% a minimum of 8.5 hours of structured out-of-cell time per week with at least

3

       4.25 such hours consisting of group programming.

    iv. By the end of the fourth quarter of 2023, 100% of HOH individuals will receive a minimum of ten hours of unstructured out-of-cell time per week, and 90% a minimum of nine hours of structured out-of-cell time per week with at least 4.5 such hours consisting of group programming.

    v. By the end of the first quarter of 2024, 95% of HOH individuals will receive a minimum of 9.5 hours of structured out-of-cell time per week with at least 4.75 such hours consisting of group programming.

    vi. By the end of the second quarter of 2024, 100% of HOH individuals will receive a minimum of ten hours of structured out-of-cell time per week with at least five such hours consisting of group programming.

2. Defendants will take agreed-upon actions to improve compliance with provisions 63, 64, and 80, according to the following schedule:

  a. Safely complete the conversion of PDC North to an all-MOH facility by July 31, 2023.

  b. Obtain licensure and all other necessary approvals from the state to open a new psychiatric urgent care (PUC) in the Jails no later than March 31, 2023; allocate sufficient staff to the PUC such that it can operate 48 beds and administer psychotropic medications no later than March 31, 2023; and assess the impact of the PUC on the demand for inpatient beds within the Jails one month after the PUC becomes operational, or by April 30, 2023;

  c. Expand the number of operational Stepdown units in the Jails according to the following schedule:

    i. 12 Stepdown pods by March 2023;

4

        ii.       20 Stepdown pods by March 2024;

        iii.      28 Stepdown pods by March 2025; and

        iv.      30 Stepdown pods by June 2025.

d. By March 31, 2023, provide proof that at least 1,500 individuals in custody are receiving treatment through the Jails' new Medication Assisted Treatment (MAT) program;

e. To expand the amount of out-of-cell time individuals in HOH units receive, Defendants will:

    i. Immediately change the process by which custody staff provide individuals with access to group meetings by offering the meetings to upper and lower tiers at the same time, and will develop a form to explain offers and refusals;

    ii. Clinicians already working in the Jails will immediately take on group responsibilities, and the County will develop a schedule of clinician-led groups; and

    iii. By February 28, 2023, Defendants will provide an analysis of a pilot program to hire outside contractors to provide groups within the jails, and detailed plans for expanding the pilot program throughout HOH housing.

f. Defendants must provide data regarding the steps described above (MOH expansion at PDC North, creation of the PUC, stepdown expansion, MAT expansion, and adequate group programming and out-of-cell time in HOH) immediately as those programs are implemented, and by January 31, 2023, provide an analysis of that data that projects the impact of those programs on HOH and MOH demand;

g. By January 31, 2023, Defendants must provide an analysis of the impact of planned expansion of the Office of Diversion and Reentry

      (ODR) Housing program on the demand for inpatient, high observation housing (HOH), and moderate observation housing (MOH) beds in custody;

  h. Defendants must develop and begin implementing long-term solutions to ensure all individuals in HOH receive sufficient group programming and out-of-cell time no later than February 17, 2023; and Defendants will have developed and begun implementing long-term solutions to close the remaining gap between mental health housing demand and supply no later than May 17, 2023.

**Substantial Compliance Deadlines**

3. Defendants will achieve substantial compliance with the following individual provisions of the settlement agreement not yet in substantial compliance in accordance with the following schedule, and will maintain substantial compliance for a period of twelve consecutive months thereafter in accordance with provision 116:

| Provision No. | Provision Topic | Substantial Compliance Deadline |
|---|---|---|
| 25 | Transportation of suicidal individuals from station jails and observation pending transfer | March 31, 2023 |
| 26 | Identifying prisoners with emergent or urgent MH needs upon arrival at reception centers | Reached June 2021– March 2022; must maintain one additional quarter |
| 34 | Release planning | December 31, 2022 |
| 36 | MH assessments after adverse triggering events | March 31, 2023 |
| 37 | Court Services Division referrals | January 31, 2024 |
| 40 | Availability of Qualified Mental Health Professionals | June 30, 2023 |
| 43 | Disciplinary policies for individuals with mental illness | June 30, 2023 |
| 52 | HOH property restrictions | June 30, 2023 |
| 57 | Safety checks in MH housing | May 16, 2024 |

| 58 | Safety checks in non-MH housing | May 16, 2024 |
| 65 | Administration of psychotropic medications | February 24, 2024 |
| 66 | Active mental health caseloads outside MH housing | March 31, 2023 |
| 67 | Refusals of medications | March 31, 2023 |

4. Defendants will achieve substantial compliance with all other provisions not referenced in the paragraph above, no later than June 30, 2024, and will maintain substantial compliance for a period of twelve consecutive months thereafter in accordance with provision 116.

IT IS SO ORDERED.

Dated: _____                    _____
                                     The Honorable Dean D. Pregerson
                                     United States District Judge

Presented by:

Dated: November 10, 2022              FOR THE UNITED STATES:

E. MARTIN ESTRADA                     KRISTEN CLARKE
United States Attorney                Assistant Attorney General
Central District of California        Civil Rights Division

DAVID M. HARRIS                       STEVEN H. ROSENBAUM
Assistant United States Attorney      Chief, Special Litigation Section
Chief, Civil Division                 Civil Rights Division

RICHARD M. PARK                       MAURA KLUGMAN
Assistant United States Attorney      Deputy Chief, Special Litigation Section
Chief, Civil Rights Section, Civil Division   Civil Rights Division

/s/ Matthew Nickell                   /s/ Luis E. Saucedo
MATTHEW NICKELL                       LUIS E. SAUCEDO
Assistant United States Attorney      Trial Attorney, Special Litigation Section
Civil Rights Section, Civil Division  Civil Rights Division

/s/ Margaret M. Chen                  /s/ Maggie Filler
MARGARET M. CHEN                      MAGGIE FILLER
Assistant United States Attorney      Trial Attorney, Special Litigation Section
Civil Rights Section, Civil Division  Civil Rights Division

*Attorneys for the United States of America*