KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division
STEVEN H. ROSENBAUM, Chief
MAURA KLUGMAN, Deputy Chief
LUIS E. SAUCEDO, Trial Attorney
MAGGIE FILLER, Trial Attorney
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
        150 M. Street NE
        Washington, D.C.  20001
        Telephone: (202) 305-0053
        Email:  luis.e.saucedo@usdoj.gov | maggie.filler@usdoj.gov
STEPHANIE S. CHRISTENSEN
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
RICHARD M. PARK
Assistant United States Attorney
Chief, Civil Rights Section, Civil Division
MATTHEW NICKELL (Cal. Bar No. 304828)
MARGARET M. CHEN (Cal. Bar No. 288294)
Assistant United States Attorneys
        Federal Building, Suite 7516
        300 North Los Angeles Street
        Los Angeles, California 90012
        Telephone: (213) 894-8805/3148, Facsimile: (213) 894-7819
        Email: matthew.nickell@usdoj.gov | margaret.chen@usdoj.gov
Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>       v.<br><br>COUNTY OF LOS ANGELES et al.,<br><br>              Defendants. | Case No. 2:15-cv-5903-DDP-JEM<br><br>**PLAINTIFF UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR COURT ORDER SETTING DEADLINES FOR SUBSTANTIAL COMPLIANCE**<br><br>Date: December 19, 2022<br>Time: 10:00 a.m.<br>Courtroom 9C<br><br>Hon. Dean D. Pregerson |

## REPLY MEMORANDUM

## I.    INTRODUCTION

The United States seeks court-imposed deadlines for Defendants to take action necessary to reach substantial compliance with the 2015 settlement agreement. In their Response, Defendants argue that the United States' request is "ill-timed." ECF No. 230 at 7-13. Defendants also argue that the United States has gone back on its agreement to provide them with additional time to craft supplemental plans to implement three of the most challenging provisions of the settlement agreement – provisions 63, 64, and 80. *Id*. at 7. Defendants' arguments are misplaced. The United States remains committed to a phased approach for the most complex requirements of the settlement agreement and is not proposing to truncate any of the deadlines previously agreed-upon with Defendants to supplement their initial implementation plans: February 2023 for provision 80 and May 2023 for provisions 63 and 64. These deadlines are incorporated into the United States' proposed order. *See* Proposed Order ¶ 2.h., ECF No. 227-2 at 6.

At the same time, the United States is committed to ensuring that Defendants implement the settlement agreement reforms that remain necessary to meet the growing demand for mental health care at the Los Angeles Jails. *See* ECF No. 230 at 1 (Defendants noting that the population of incarcerated individuals with serious mental illness has doubled in the last ten years to nearly 6,000 today). For these reasons, the United States is seeking the Court's assistance in setting enforceable deadlines—many stemming directly from Defendants' own implementation plans—to hold Defendants to their initial set of commitments. Defendants admit these steps are intended to move them closer to compliance. *See id.* at 7. The United States is also seeking interim compliance benchmarks to ensure that the actions Defendants agreed to undertake will lead to meaningful and measurable improvements for individuals who are incarcerated at the Jails. Relieving Defendants of any accountability for these initial commitments based on

1

arguments that deadlines and benchmarks are "unworkable at this time," *id.* at 8,[1] runs the risk of further delay, and even regression, at a time when more individuals depend on the availability of adequate mental health care at the Jails.

The United States understands that there is no quick fix to the significant compliance challenges facing Defendants and appreciates the complexity and variety of short-term solutions that Defendants are pursuing, as outlined in their Response. *See id.* at 2-7. The United States is also aware that hasty or uncoordinated actions can have unintended consequences. Recognizing this situation, the United States has taken a methodical, problem-solving approach towards achieving compliance in this case, including after Defendants' progress slowed in 2019. *See* Monitor's Corrected 12th Rep., ECF No. 174-1 at 3. For instance, the United States' pursuit of implementation plans in January 2021 was a deliberate attempt to spur compliance through less intrusive and more collaborative means. *See* United States' Response to Monitor's Twelfth Rep. & Request for a Status Conf., ECF No. 166 at 3. Against this backdrop, one can hardly view the United States as "rushing" Defendants to "meet arbitrary benchmarks" that could place the health and safety of incarcerated persons at risk, as Defendants assert. *See* ECF No. 230 at 10-11. On the contrary, holding Defendants accountable for carrying out their initial implementation plans will lessen the harm that individuals face when they are unable to access needed care and treatment under current conditions at the Jails.

Accordingly, the Court should use its authority to set enforceable benchmarks and deadlines without any further delay by Defendants. The United States will meet-and-confer with Defendants to attempt to reach agreement on a proposed order, as instructed

---

[1] As stated at the November 14, 2022, status conference, the United States is willing to adjust the benchmarks and deadlines it is seeking from the Court, even when they came directly from Defendants' implementation plans, if they are no longer feasible or if they pose unreasonable risks to health or safety. To date, however, Defendants have neither responded to the United States' invitation to meet and confer regarding proposed benchmarks and deadlines, nor have Defendants countered the United States' proposed benchmarks and deadlines.

by the Court. *See* Min. Order, ECF No. 229. If the parties are unable to agree on appropriate benchmarks and deadlines before the December 19, 2022, hearing date, the United States requests that the Court enter its proposed order as lodged on November 10, 2022. ECF No. 227-2.

## II.   ARGUMENT

### A.   The United States Remains Committed to Phased, Coordinated Efforts Towards Compliance for Provisions 63, 64, and 80.

The parties agree that Defendants will need to develop supplemental or "second phase" implementation plans for provisions 63, 64, and 80. *See* United States' Statement Relating to Los Angeles County Sheriff's Motion for Declaration of Conflict and for an Order Appointing Conflict Counsel, ECF No. 211 at 2-3 (noting the parties' agreement that supplemental, second-phase implementation plans are needed to close the gap and fully implement provisions 63, 64, and 80). The United States hopes that Defendants will complete their implementation plans by devising long-term and durable solutions to augment the commitments in their "first phase" plans within agreed-upon timeframes. For this reason, the United States included already agreed-upon deadlines in its proposed order: a February 2023 deadline to complete the implementation plan for provision 80 regarding out-of-cell time, and a May 2023 deadline to complete the implementation plans for provisions 63 and 64 on the availability of specialized mental health housing. Proposed Order ¶ 2.h., ECF No. 227-2 at 6.

The United States understands that a coordinated, multi-faceted approach is needed to tackle the most persistent compliance barriers in the case. Specifically, the United States recognizes that securing adequate staffing, space, and other resources to prevent harmful isolation of individuals with mental illness and provide them with proper care, as required by the out-of-cell-time requirements in provision 80, will take time, especially in light of the increased population of incarcerated individuals with serious mental illness. Similarly, the United States understands that expanding alternative placements in the community and promoting wellness and recovery through

3

various programs and therapeutic settings at the Jails to ensure that the limited numbers of specialized mental health beds are available to those who need them, as required by provisions 63 and 64, is a significant undertaking. Meeting these challenges will require coordination, funding, and external support, and we commend Defendants for their recent actions to secure needed resources, compile data, and coordinate with other criminal justice partners to move these compliance initiatives forward in a way that considers and protects public safety.

Holding Defendants accountable to specific, court-ordered deadlines for the initial steps that Defendants have already agreed to will move them closer to substantial compliance, which is only possible if Defendants now follow through with their initial commitments. To the extent Defendants believe that a benchmark or deadline in the United States' proposed order is inconsistent with either the February or May 2023 timeframes for provisions 63, 64, and 80, the United States is willing to make reasonable adjustments, but it is hardly a reason for Defendants to evade all responsibility for keeping their commitments.

## B.    Defendants' Reasons for Delaying the Setting of Benchmarks and Deadlines Are Unconvincing.

Defendants do not dispute the utility of benchmarks and deadlines as a general matter, agreeing that they "could be useful in helping to drive this case toward compliance." ECF No. 230 at 12. Instead, they take issue with the timing of the United States' request, advancing four reasons for why benchmarks and deadlines are "unworkable at this time" and should be delayed. *Id.* at 8. These reasons are unconvincing, and characterizing them as "prerequisites" to setting deadlines does not make them so. *See id.* at 13. The United States addresses each of these reasons in turn.

Defendants' first argument is that deadlines and benchmarks should be set based on current data, pointing out that the United States is relying on verified information from the Monitor's last report, which is between six and nine months old. *Id.* at 8-9. Defendants are correct that verified information presented by the Monitor in his semi-

annual reports has a lag time of about six to nine months. During this time, the Monitor independently audits Defendants' data, conducts fact-finding activities, considers Defendants' self-assessments, drafts a report, and evaluates the parties' comments before a final report is published. But this six to nine month "delay" in obtaining verified data always exists, and Defendants are well aware that this is true for all of the Monitor's reports because it is inherently part of the verification process. Thus, the Monitor's next report will also contain verified information that is six to nine months old, which makes the notion that the parties can obtain more current *verified* data illusive.

Defendants' proposal that the parties wait until Defendants produce "more current data" in their self-assessment in December 2022, *id.* at 9, is essentially a pitch to rely on Defendants' *unverified* data. While the United States is not opposed to considering Defendants' self-reported data, it is not a substitute for the Monitor's independent assessments. Indeed, it would be a mistake to set aside or ignore the Monitor's independent assessments when both sets of data have value and when there is always a tension in the case between *verified* data from the Monitor and "more current," but *unverified* data from Defendants.

It would also be a mistake to wait for some unspecified time in the future to set deadlines and benchmarks based on the timing of the Monitor's reports when the United States already adopted many of Defendants' timeframes as part of its proposed order. The parties and Monitor carefully considered these timeframes when Defendants presented them in their draft implementation plans alongside their rationale for why certain steps were necessary to overcome barriers to compliance. Defendants described these initial implementation plans to the Court on May 13, 2022, as follows: "Defendants have aimed to create plans for these provisions [63, 64, and 80] that focus on achievable, practical steps they believe can meaningfully move Defendants toward compliance with what these three provisions require . . .."). Jt. Status Rep. on Unresolved Disagreements Regarding Implementation Plans, ECF No. 190 at 21. As stated earlier, if Defendants establish that their own timeframes and compliance initiatives are no longer

feasible, the United States is willing to discuss reasonable adjustments to the benchmarks and deadlines in its proposed order.

Defendants' second argument is that the United States is seeking benchmarks and deadlines that are: (a) inconsistent with agreed-upon dates for Defendants to develop supplemental implementation plans for provision 63, 64, and 80, and (b) "untethered to the substantive work Defendants are doing to move toward compliance with provisions like Provisions 63, 64, and 80." ECF No. 230 at 10. This is not the case. As noted earlier, the United States' proposed order includes the agreed-upon February and May 2023 timeframes for supplemental implementation plans for provisions 63, 64, and 80. Proposed Order ¶ 2.h., ECF No. 227-2 at 6. Nothing in the United States' proposed order is intended to impede Defendants from supplementing their implementation plans by these dates. To the contrary, the deadlines are designed to enable Defendants to produce meaningful supplemental plans by February and May 2023. For instance, the proposed order provides that Defendants will collect and analyze data on the implementation of short-term solutions and their impact on the demand for specialized mental health housing by January 31, 2023, to assist Defendants in developing supplemental, second-phase plans by May 2023. Proposed Order ¶ 2f, ECF No. 227-2 at 5.

All of the substantive measures in the United States' proposed order are also tied directly to commitments the Defendants made in their initial, or "first phase" implementation plans. These include expanding the number of step-down units, establishing a psychiatric urgent care unit, transferring incarcerated persons who need Moderate Observation Housing to more appropriate settings at the Pitchess Detention Center, and increasing the number of providers for group programming in specialized mental health housing. Jt. Status Rep., ECF No. 190 at 23-25. Without firm deadlines, it is unclear when Defendants anticipate completing or implementing the measures they describe as "interim steps that will move them closer to compliance with the requirements of provisions 63, 64, and 80." ECF No. 230 at 2-7.

Defendants' third argument is that setting benchmarks and deadlines will "rush"

Defendants in a way that may compromise the health and safety of incarcerated persons at the Jails. ECF No. 230 at 10-11. The United States disagrees. Incarcerated persons in Defendants' custody currently face unreasonable risks to their health and well-being due to Defendants' persistent non-compliance with the settlement agreement. Defendants have acknowledged that many individuals with serious mental illness do not receive out-of-cell time as required by provision 80 because there is insufficient capacity to provide programming at the Jails or is not offered in overflow units that must be used when High Observation Housing units are full. ECF No. 190 at 27-28. These individuals spend prolonged periods of time locked in their cells or handcuffed to tables in common areas. *See* Monitor's Corrected 12th Rep., ECF No. 174-1 at 13-14.

Defendants also acknowledge that many incarcerated persons who require higher levels of care in specialized mental health units do not receive such care because there are insufficient beds. ECF No. 190 at 26-27. The United States' proposed order is intended to remedy these harmful conditions and is based on measures Defendants admit will move them closer to compliance. ECF No. 230 at 2-7.[2]

Defendants' final argument is that the Court should delay setting benchmarks and deadlines for commitments they have already made to give the sheriff-elect, who takes office on the date of this filing, time to provide input. The United States agrees that the sheriff plays an important role in the successful implementation of the settlement agreement as a whole. However, as Defendants describe in their Response, all of the short-term measures are underway, such as expanding the MAT program and establishing a psychiatric urgent care unit. *Id.* at 3-4. These measures are driven by decisions the County Board of Supervisors made recently, including allocating over $100 million for new and expanded programs and directing agency heads to collaborate

---

[2] For instance, it was Defendants, not the United States, that determined that the Jails should provide long-acting, medication-based substance abuse treatment for up to 1,500 individuals as part of an expanded Medication Assisted Treatment (MAT) program to reduce the demand for scarce mental health beds. *Id.* at 3; *see also* ECF No. 190 at 35.

on alternative community placements that will alleviate the growing demand for mental health housing at the Jails. ECF No. 230 at 3-7. Because the United States has not abandoned its agreement to permit Defendants to supplement their implementation plans for provisions 63, 64, and 80 by February and May 2023, the new sheriff will have ample opportunity to shape the supplemental, second-phase solutions that will lead to substantial compliance and the conclusion of this case. As a result, there is no need to delay the setting of benchmarks and deadlines for commitments Defendants have already made following many months of discussions with the United States and the Monitor.

## III.    CONCLUSION

For the reasons stated above and in the United States' Motion for Court Order Setting Deadlines for Substantial Compliance, an Order is warranted that: (1) requires Defendants to demonstrate quarterly progress toward substantial compliance with respect to provisions 63, 64, and 80 by setting intermediate benchmarks; (2) requires compliance with agreed-upon implementation measures according to a defined schedule; (3) requires Defendants to achieve substantial compliance with outstanding settlement provisions by specific deadlines; and (4) requires Defendants to achieve substantial compliance with the entire agreement no later than June 30, 2024.

As instructed by the Court in its Minute Order of November 14, 2022, ECF No. 229, the United States will meet-and-confer with Defendants to attempt to reach agreement on the specific details of the Order to ensure that continued progress is made to remedy Defendants' non-compliance. Should these efforts prove unsuccessful before the hearing date on December 19, 2022, the United States requests that the Court approve and enter the proposed order the United States lodged on November 10, 2022. ECF No. 227-2.

Respectfully submitted,

Dated: December 5, 2022          FOR THE UNITED STATES:

8

| | | |
|---|---|---|
| 1 | STEPHANIE S. CHRISTENSEN<br>Attorney for the United States<br>Acting Under Authority Conferred by<br>28 U.S.C. § 515 | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
| 2 | | |
| 3 | | STEVEN H. ROSENBAUM<br>Chief, Special Litigation Section<br>Civil Rights Division |
| 4 | DAVID M. HARRIS<br>Assistant United States Attorney<br>Chief, Civil Division | |
| 5 | | MAURA KLUGMAN<br>Deputy Chief, Special Litigation Section<br>Civil Rights Division |
| 6 | RICHARD M. PARK<br>Assistant United States Attorney<br>Chief, Civil Rights Section, Civil Division | |
| 7 | /s/Matthew Nickell | /s/Luis E. Saucedo<br>LUIS E. SAUCEDO<br>Trial Attorney, Special Litigation Section<br>Civil Rights Division |
| 8 | MATTHEW NICKELL<br>Assistant United States Attorney<br>Civil Rights Section, Civil Division | |
| 9 | | MAGGIE FILLER<br>Trial Attorney, Special Litigation Section<br>Civil Rights Division |
| 10 | /s/Margaret M. Chen<br>MARGARET M. CHEN<br>Assistant United States Attorney<br>Civil Rights Section, Civil Division | |
| 11 | | |
| 12 | | *Attorneys for the United States of America* |

9