KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division
STEVEN H. ROSENBAUM, Chief
MAURA KLUGMAN, Deputy Chief
LUIS E. SAUCEDO, Trial Attorney
MATTHEW NICKELL, Trial Attorney
MAGGIE FILLER, Trial Attorney
NICHOLAS SHEEHAN, Trial Attorney
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
   150 M. Street NE
   Washington, D.C.  20001
   Telephone: (202) 305-0053
   Email:  luis.e.saucedo@usdoj.gov | maggie.filler@usdoj.gov
      matthew.nickell2@usdojgov | nicholas.sheehan@usdoj.gov
JOSEPH T. MCNALLY
First Assistant United States Attorney
Attorney for the United States, Acting
Under Authority Conferred by 28 U.S.C. § 515
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
RICHARD M. PARK
Assistant United States Attorney
Chief, Civil Rights Section, Civil Division
   Federal Building, Suite 7516
   300 North Los Angeles Street
   Los Angeles, California 90012
   Telephone: (213) 894-3275, Facsimile: (213) 894-7819
   Email: richard.park@usdoj.gov
Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF LOS ANGELES et al.,<br><br>    Defendants. | Case No. 2:15-cv-5903-DDP-JEM<br><br>**STIPULATION TO MODIFY COURT ORDER SETTING DEADLINES FOR SUBSTANTIAL COMPLIANCE; EXHIBIT A; [PROPOSED] ORDER**<br><br>Hon. Dean D. Pregerson<br>United States District Judge |

Plaintiff United States of America (the "United States") and Defendants County of Los Angeles and Los Angeles County Sheriff (collectively, the "County") (hereinafter, the United States and the County are referred to collectively as the "Parties") hereby agree to modify certain previously agreed-upon, court-ordered deadlines for substantial compliance and other requirements identified in this Court's December 27, 2022 Order (ECF No. 234). Submitted with this stipulation is a proposed order as well as a marked-up version of the December 27, 2022 order showing the parties' proposed modifications in redlines (Exhibit A). The parties submit that good cause for the requested modifications exists for the following reasons:

1. On November 10, 2022, the United States filed a motion seeking a court order to compel the County to bring the remaining provisions of the Parties' settlement agreement into substantial compliance by various dates. ECF No. 227.

2. On December 23, 2022, the parties filed a Stipulation for Order Setting Substantial Compliance Deadlines with a proposed order. ECF No. 233. The stipulation partially resolved the United States' motion by setting deadlines for many, but not all, of the outstanding provisions of the settlement agreement. It also required the County to take certain steps to bring various of the remaining settlement provisions into substantial compliance.

3. On December 27, 2022, this Court signed and filed an Order Setting Deadlines for Substantial Compliance, adopting the agreed-upon dates from the parties' December 23, 2022 stipulation. ECF No. 234.

4. On April 20, 2023, this Court entered a separate order setting deadlines for substantial compliance for three remaining settlement provisions—Provisions 63, 64, and 80—as well as quarterly benchmarks leading to substantial compliance that the

County also has to meet for those three provisions. ECF No. 248.[1]

5. For reasons that have been discussed between the Parties and the Monitor appointed to oversee this case, Nicholas Mitchell (the "Monitor"), and that are more fully set forth below, the County has not met several deadlines set in the December 2022 Order.

6. In July 2023, the United States sent the County a letter regarding the County's failure to comply with certain deadlines from the December 2022 Order. The letter sought explanations for the missed deadlines and asked the County to explain the steps it would take to cure the missed deadlines. Between August and December 2023, the Parties exchanged letters and other correspondence and held numerous meetings together with the Monitor to discuss these issues.

7. The County has proposed revisions to the deadlines or required actions set out in paragraphs 2(a), 2(b)(ii), 2(c)(i)-(iv), 2(e)(iii), and 2(g) of the December 2022 order. The County did not comply with these paragraphs' requirements, either because it did not take a required action, or was found not to be in substantial compliance by the Monitor with a particular settlement agreement provision, by a date set forth in the December 2022 order. However, the County has now either fulfilled these obligations, albeit at a later date than set forth in that order, or has committed to new, achievable deadlines that are, in all cases, within a few months after the date of this stipulation. In some instances, the County has also committed to alternative or additional remedial actions to ensure that relevant settlement provisions remain on track to reach substantial compliance in a timely manner.

8. In addition, certain actions included in the December 2022 order that the

---

[1] The April 20, 2023 order directed the County to reach the first set of quarterly benchmarks related to Provisions 63, 64, and 80 by the end of the second quarter of 2023. The County is in the process of providing self-assessments for the second quarter of 2023 for these provisions, and the Monitor will assign compliance ratings for that quarter as part of his next monitoring report.

1 Parties previously believed were necessary for the County to reach substantial
2 compliance with its obligations under the settlement agreement may no longer be
3 critical, because the County appears to be improving compliance without undertaking
4 those steps.  For example, according to the County, there has been a reduction in the
5 mental health population in the Los Angeles County Jail system (the "Jails") which
6 appears to have led to reduced wait times for permanent High Observation Housing
7 ("HOH") beds, as required under Provision 63, and a decreased demand for inpatient
8 housing, as required under Provision 64.

9.   Because of such changes in circumstances, the reasonableness of the County's requested extensions, the apparent success of certain alternative actions taken by the County, and the County's commitment to take additional remedial actions, the Parties agree that modifications to several provisions of the December 2022 order are warranted.[2]

10.   The Proposed Modified Order filed concurrently with this Stipulation details the modifications to the December 2022 Order to which the parties have agreed. Below we briefly describe those proposed changes and the circumstances that justify them.

---

[2] The County now operates a psychiatric urgent care unit with 10 beds. Accordingly, the County proposed revising down paragraph 2(b)(i)'s "at-least-20-beds" requirement to match its current capacity.  The County maintains this revision is appropriate because the new psychiatric urgent care unit has been more successful than anticipated at reducing the P4 population under paragraph 64, such that additional beds no longer appear necessary.  The United States has not agreed to the County's proposed revision; it is awaiting updated data concerning the P4 population to consider the County's proposal.  Paragraph 2(b)(i) is therefore not yet ripe for modification.

**I. Deadlines for Action Items to Improve Compliance with Provisions 63, 64, and 80**

    **A. Paragraph 1: Substantial Compliance Deadlines and Interim Benchmarks for Provisions 63, 64, and 80**

11. When the Court entered the December 2022 Order, the Parties were negotiating potential compliance deadlines and interim benchmarks for provisions 63, 64, and 80 of the settlement agreement. Paragraph 1 of the December 2022 Order set forth a process and timelines for the parties to try to resolve their disputes. The Order stated that the parties would meet and confer before a February 13, 2023 hearing date regarding this issue.

12. The Parties appeared for hearing twice before this Court on this issue on February 13, 2023 and April 19, 2023. On April 20, 2023, the Court issued an order setting substantial compliance deadlines and interim benchmarks for provisions 63, 64, and 80. ECF No. 248.

13. The Parties agree to modify the December 2022 Order to reflect that the Court issued an April 2023 Order setting deadlines and interim benchmarks for these three provisions.

    **B. Paragraph 2(a): Deadline to complete conversion of PDC North to an all-MOH facility**

14. Under paragraph 2(a) of the December 2022 Order, the County was required to complete the expansion of Moderate Observation Housing ("MOH") units at the Pitchess Detention Center North ("PDC North") by July 31, 2023 to transform PDC North into a facility that exclusively houses MOH inmates. The County did not meet this deadline, as, by July 31, 2023, only three of the four buildings that PDC North comprises were being used to house MOH inmates.

15. The County has explained that it missed the July 31, 2023 deadline to fully covert PDC North into an all-MOH facility due to delays in construction and additional updates to PDC North's physical infrastructure that were needed to effectuate conversion

of general population housing units to MOH units and provide necessary clinical space to treat an additional influx of MOH inmates with serious mental health conditions effectively. The County also reported difficulty in recruiting, hiring, and onboarding sufficient healthcare staff needed to provide care for people in PDC North's newly-created MOH units.

16. In November 2023, after completing the physical renovations addressed above and onboarding new healthcare staff at PDC North, the County transferred 160 MOH inmates from the Men's Central Jail ("MCJ") into the fourth building at PDC North. By the end of January 2024, the County indicated it had transferred additional MOH inmates to PDC North from MCJ, completing the transition of PDC North into an all-MOH facility.

17. In addition, the Parties agreed that the County would meet with the United States and the Monitor no later than December 31, 2023,[3] to discuss plans to eliminate MOH units at MCJ, or otherwise improve the conditions in the MOH units that remain at MCJ. This meeting occurred on December 18, 2023. Based on these developments, the Parties agreed that the deadline to complete the expansion of MOH at PDC North set forth in paragraph 2(a) of the December 2022 order should be extended to January 31, 2024.

**C.     Paragraph 2(b)(ii): Analysis of Psychiatric Urgent Care**

18. Paragraph 2(b)(ii) of the December 2022 order required the County to provide to the United States, by May 17, 2023, an analysis of the Psychiatric Urgent Care unit's ("PUC") impact on the demand for forensic inpatient beds. (The PUC is now known as the Acute Inpatient Module ("AIM").)

19. The Parties disagreed as to the sufficiency of this analysis. Following numerous meetings and correspondence involving the Parties and the Monitor, the

---

[3] The parties met on December 18, 2023, to discuss the County's plans to eliminate MOH units at MCJ, or improve the conditions in those units. That meeting satisfies this requirement.

Parties resolved this disagreement and agreed to extend the date for compliance with this paragraph to December 8, 2023.  The County submitted the agreed-upon analysis to the United States and the Monitor on December 8, 2023.  Provided that the Court adopts the Parties' proposed modifications, the United States agrees that the analysis submitted by the County on December 8, 2023 satisfies its obligations under the December 2022 Order as modified.

20.     In exchange for the United States agreeing to extend this deadline, the County further agreed that by December 31, 2023 it would provide the United States with a supplemental analysis of the PUC/AIM's impact on demand for forensic inpatient beds, as well as a report detailing the number of people discharged from the PUC/AIM who returned to that unit within 30 days.  On December 29, 2023, the County supplied this supplemental analysis to the United States and the Monitor.  The United States agrees that the supplemental analysis submitted by the County on December 29, 2023 satisfies the December 2022 order as modified, once the County provides clarifying information requested by the United States on January 4, 2024.

### D.     Paragraph 2(c): Expanding Operational Stepdown Units

21.     Paragraph 2(c) of the December 2022 order required the County to expand the number of Stepdown Units operating in the Jails according to an agreed upon schedule that obligated the County to operate 12 Stepdown pods by March 2023, and further obligates it to operate 20 Stepdown pods by March 2024, 28 Stepdown pods by March 2025, and 30 Stepdown pods by June 2025.  The County has begun expanding Stepdown units and currently operates 17 such units in the Jails.

22.     The County has also expanded its use of High Observation Housing dorms ("HOH Dorms") since the December 2022 order was entered.  The County maintains that HOH Dorms are functionally equivalent to Stepdown units.  According to the County, both unit types possess the same essential elements, including enhanced, unrestrained out-of-cell time; a therapeutic physical space with games, soft furniture, decorative art or plants, and other pro-social environmental features; consistent and

specially trained custody and Correctional Health Services ("CHS") staff; and tailored treatment plans and programming. The County also maintains that HOH Dorms are easier to expand and can safely house more people than Stepdown units. On this basis, the County has asked the United States to agree to modify the December 2022 Order to allow the operational HOH Dorms to be credited toward the Stepdown unit requirement.

23. The United States agrees that HOH Dorms may be credited toward the Stepdown requirement under paragraph 2(c) so long as:

    a. The County maintains its existing Stepdown units and continues their expansion such that there are at least 18 such Stepdown units in operation by June 2025;

    b. The County memorializes in policy or other directive the essential shared features of Stepdown Units and HOH dorms, which must include:

        i. Enhanced, unrestrained out-of-cell time with access to out-of-pod recreation areas;

        ii. A therapeutic physical space with games, soft furniture, decorative art or plants, and other pro-social environmental features similar to those in existing Stepdown units in Twin Towers Correctional Facility ("TTCF");

        iii. Consistent and specially trained custody and CHS staff; and

        iv. Tailored treatment plans and programming;

    c. The County will, to the maximum extent possible, maintain merit masters/mental health assistants ("MHAs") in existing Stepdown units and expand them to other Stepdown units and HOH dorms where clinically appropriate and depending on MHA availability;

    d. The County will hold recruitment and training initiatives at least two times per year;

    e. By March 31, 2024, and quarterly thereafter, the County will report to the United States and the Monitor what incentives the County is offering

to recruit MHAs and increase their numbers and how it is structuring its program to recruit and train MHAs, and will provide data on the number of active MHAs and the number of Stepdown units and HOH dorms that have and do not have MHAs;

f. The Monitor and the Mental Health Subject Matter Expert will assess as part of the Monitor's semi-annual reports the mix of therapeutic features in the Stepdown units and HOH dorms; and[4]

g. The County provides the United States and Monitor, on a semi-annual basis, comparative data about decompensation, safety, and security in both Stepdown units and HOH dorms, such as self-directed violence, assaults among incarcerated persons, and assaults on staff.

### E. Paragraph 2(d): Medication Assisted Treatment

24. Paragraph 2(d) of the December 2022 order required Defendants to provide proof by June 30, 2023 that at least 750 individuals in custody were receiving treatment through the Jails' new Medication Assisted Treatment ("MAT") program or that they declined such treatment after it had been offered. It also required that Defendants provide proof by June 30, 2024 that at least 1,500 individuals in custody were receiving this treatment by that date.

25. The Parties have agreed to modify this paragraph to reflect Defendants' report that, as of August 10, 2023, 1,950 people had received treatment through the MAT program.

---

[4] The United States recognizes the significant contributions that mental health assistants/merit masters make to the therapeutic nature of Stepdown units by providing mutually beneficial peer support to other incarcerated persons. Although the County has taken the position that mental health assistants/merit masters are not an essential feature of Stepdown units or HOH dorms, the United States strongly supports the County's efforts to recruit, train, and assign these volunteer workers.

### F. Paragraph 2(e)(iii): Group Programming Analysis

26. Under Paragraph 2(e)(iii) of the December 2022 order, the County was required to provide the United States, by February 28, 2023, with an analysis of a pilot program to hire outside service providers to provide group programming within the jails, and detailed plans for expanding the pilot program throughout HOH housing. However, the County reported that it encountered difficulty in initiating this pilot program, which consists of graduate students in a clinical program providing weekly group programming hours to HOH inmates at TTCF, with the school where these graduate students are enrolled. As a result, the pilot program did not begin operating until September 2023, and the parties agreed to extend the deadline to provide an analysis of this pilot program until November 30, 2023, which is the date when the County provided the required analysis. Since the December 2022 order, the County has also entered into additional agreements with third-party contractors to provide structured out-of-cell group programming to this population. Accordingly, the County has agreed to provide ongoing updates about the gap between the need for group programming hours and the number of group programming hours the County is actually providing during regular meetings between the Parties.

### G. Paragraph 2(f): Data Regarding Steps Described Elsewhere in Order

27. Paragraph 2(f) of the December 2022 order required Defendants to provide data regarding various steps it was taking to improve compliance with the settlement agreement. It also required them to provide analyses by January 31, 2023 and June 30, 2023 regarding the impact of these steps on HOH and MOH demand and HOH out-of-cell time.

28. The Parties agree that the analysis that Defendants have already provided and that they have agreed to provide elsewhere in this stipulation will suffice to illustrate the impact of these steps on HOH and MOH demand and HOH out-of-cell time, and agree to modify this paragraph to reflect that.

**H.     Paragraph 2(g): Impact of Office of Diversion and Reentry (ODR) Housing Program on Mental Health Housing in LA Jails**

29.     Paragraph 2(g) of the December 2022 order required the County to provide the United States with an analysis of the impact of the planned expansion of the Office of Diversion and Reentry ("ODR") Housing program on the demand for inpatient, HOH and MOH beds by January 31, 2023.  The County believed that it had complied with this requirement by referring to documentation in this case and reports it filed in *Rutherford v. Block*, Case No. 2:75cv04111, regarding its planned expansion of ODR and other community-based placements.  The United States had disagreed because neither of those submissions specifically analyzed how the ODR expansion would affect demand for HOH and MOH beds in custody.

30.     The Parties have agreed that, beginning January 15, 2024, and on a quarterly basis going forward, the County will provide the United States and Monitor with the Quarterly Report filed in *Rutherford v. Luna*, Case No. 75-4111-DDP (the "Quarterly Report"), which Quarterly Report, in part, discusses the status of the expansion of ODR housing and includes an analysis of the impact of the expansion of ODR housing on the demand for inpatient, HOH, and MOH beds in custody.  The County filed the first such report in the *Rutherford* case on January 12, 2024.  ODR is currently working on enhancing its ability to track data showing the impacts of the expansion of ODR housing.  As a result, by June 17, 2024, the Quarterly Report provided to the United States and Monitor, will include, at minimum, (i) the number of new ODR beds or program slots added in the community for the ODR Housing, ODR MIST, and ODR FIST programs; (ii) changes in the P2, P3, and P4 populations in the Jails during the quarter; and (iii) releases to those ODR programs listed above in (i) of those who were P2s, P3s, P4s, broken down by P-level at or about the time they were identified by ODR as a possible candidate for an ODR diversion or community-based restoration program and by P-level as of the time of release.

11

**I. Paragraph 2(h): Development and Implementation of Long-Term Solutions to Improve Out-of-Cell Time and Close the Gap Between Mental Health Housing Demand and Supply**

31. Paragraph 2(h) of the December 2022 Order required Defendants to have developed and begun implementing by February 17, 2023 long-term solutions to ensure all individuals in HOH received sufficient group programming and out-of-cell time, and by May 17, 2023 to have developed and begun implementing long-term solutions to close the remaining gap between mental health housing demand and supply.

32. The Parties agree that Defendants satisfied these requirements by providing a supplemental implementation plan for provision 80 on February 17, 2023 and supplemental implementation plans for provisions 63 and 64 on May 17, 2023. Accordingly, the Parties agree to modify the December 2022 Order to reflect this.

**II. Substantial Compliance Deadlines for Provisions 25, 26, 66, and 67.**

33. The Parties have agreed to modify the deadlines for substantial compliance for Settlement Agreement Provisions 25, 26, 66, and 67.

34. The County represents that it was one noncompliant record away from meeting the June 30, 2023 substantial compliance deadline for Provision 25 and, since that time, its results have similarly been on the cusp of reaching substantial compliance. The County has also shown noteworthy improvement with this provision in each of the last several quarters. The United States agrees to extend the substantial compliance deadline for the provision from June 30, 2023, to March 31, 2024.

35. The December 2022 order noted that Provision 26 had been rated in substantial compliance between June 2021 and March 2022, and stated that the County needed to maintain the provision in substantial compliance one additional quarter. ECF No. 234 at 5. However, the provision subsequently fell out of substantial compliance, and as of the Monitor's most recent report remains in partial compliance. ECF No. 259 at 27. The Parties agree to extend the substantial compliance deadline for the provision

1 until June 30, 2024.

2 36. The United States agrees to extend the substantial compliance deadline for Provision 66—which concerns medication support services for individuals with mental illness who live in non-mental health housing—to June 30, 2024. The County reports that it has struggled to comply with this provision due to its decision to prioritize mental health staffing and medication support for patients receiving psychotropic medications in mental health housing rather than non-mental health housing areas. In exchange for the deadline extension, the County agreed that no later than December 28, 2023, it would provide the United States a supplemental list of corrective actions it would take to bring itself into substantial compliance with this provision. On December 28, 2023, the County provided such a list to the United States and the Monitor, and the United States agrees that this submission complies with the County's requirements with the December 2022 order as modified.

37. The deadline for the County to bring Provision 67 into substantial compliance was June 30, 2023. ECF No. 234 at 5. The parties have been in negotiations for many months concerning changes the County has been implementing to its system for flagging individuals who refuse medications. Because of these pending negotiations, the Monitor did not rate Provision 67 in the 16th monitoring report. The Monitor noted, however, that the County needed to seek modifications to the provision itself and to its compliance measures to resolve discrepancies between the County's new auditing methodology and the Provision 67's original requirements. ECF No. 259 at 113. The Parties agreed to extend the substantial compliance deadline for Provision 67 to March 31, 2024, as long as the County provided the United States with its proposed revisions to the provision and the associated compliance measures. The County did so on December 7, 2023. The Parties shall meet and confer regarding these proposed revisions and, by March 31, 2024, propose to the Court any modifications to the provision as appropriate.

In light of the foregoing, the United States and the County agree that the concurrently filed Proposed Order should be entered as an Order of the Court, subject to the Court's approval.

Dated: February 21, 2024

FOR THE UNITED STATES:

JOSEPH T. MCNALLY
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division

STEVEN H. ROSENBAUM
Chief, Special Litigation Section
Civil Rights Division

MAURA KLUGMAN
Deputy Chief, Special Litigation Section
Civil Rights Division

/s/ Richard M. Park
RICHARD M. PARK
Assistant United States Attorney
Chief, Civil Rights Section, Civil Division

/s/ Matthew Nickell
LUIS E. SAUCEDO
MAGGIE FILLER
MATTHEW NICKELL*
NICHOLAS SHEEHAN
Trial Attorneys, Special Litigation Section
Civil Rights Division

*Attorneys for the United States of America*

Dated: February 21, 2024

FOR DEFENDANTS:

/s/ Robert E. Dugdale
ROBERT E. DUGDALE
Kendall Brill & Kelly LLP

*Attorneys for the County of Los Angeles and Los Angeles County Sheriff*

\* I hereby attest that all signatories listed, and on whose behalf this filing is submitted, concur in this filing's content and have authorized its filing.

14